1

HOLLAND & KNIGHT LLP
James H. Power *pro hac vice (forthcoming)*
2   Daniel P. Kappes (SBN 303454)
50 California Street, 28th Floor
3   San Francisco, CA 94001
T 415.743.6900 | F 415.743.6951
4   E-mail: james.power@hklaw.com
E-mail: daniel.kappes@hklaw.com
5
Attorneys for Applicant
6   *Tatiana Akhmedova*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN JOSE DIVISION**

11

IN RE APPLICATION OF TATIANA          )
12   AKHMEDOVA,                             )   ***EX PARTE* APPLICATION**
                                        )   **FOR DISCOVERY PURSUANT**
13                        Applicant,   )   **TO 28 U.S.C. § 1782**
                                        )
14   REQUEST FOR DISCOVERY              )
PURSUANT TO 28 U.S.C. § 1782.          )
15                                     )
                                        )
16

17

18

19

20

21

22

23

24

25

26

27

28

---

EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Case No. CV-20 80156MISC VKD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicant, Tatiana Akhmedova ("Applicant"), by and through her undersigned counsel, applies for an Order pursuant to 28 U.S.C. § 1782 to obtain discovery in the form of a subpoena to be served on Google, LLC ("Google") for the production of relevant information in the possession, custody, and/or control of Google for the use in a pending foreign adjudicative proceeding, all for the reasons set forth in this Application; the Declaration of Anthony J. Riem, dated September 14, 2020 (the "Riem Declaration"); as well as the exhibits thereto; and the Memorandum of Law; submitted contemporaneously with this Application.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving the production of information located within the Northern District of California, discovery relevant and important to assist Applicant in her pending foreign court proceeding.

Venue in the Northern District of California is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from a third party, who is located within this Judicial District, along with the information being presently in this jurisdiction.  Specifically Google has its headquarters at 1600 Amphitheatre Parkway, Mountain View, California, 94043, and requests service of all civil subpoenas in the United States to be made at its registered agent, Corporation Services Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California, 95833.

## THE FOREIGN PROCEEDING

Applicant seeks discovery with respect to documents located in the United States and in this Judicial District for use in a foreign proceeding pending in the United Kingdom.  Specifically, the pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340) (the "English Proceeding"), which is continuing as the judgment debt awarded in December 2016 (described further below) remains almost entirely unsatisfied.   The English Proceeding now also concerns fraudulent transfers by judgment debtor Farkhad Akhmedov and his alter ego entities, Cotor Investment, S.A., Qubo 1 Establishment, Qubo 2 Establishment, Straight

1

Establishment, and Avenger Assets Corporation, including through the transfer of assets to Temur and a number of Liechtenstein trusts in the fraudulent evasion of the English Judgments entered in Applicant's favor. Ms. Akhmedova has now brought claims within these proceedings against Temur and the Liechtenstein trustee entities Counselor Trust Reg. ("Counselor") and Sobaldo Establishment ("Sobaldo") (which provide trust services to a number of trusts established in Liechtenstein in furtherance of Farkhad Akhmedov's scheme) to *inter alia* set aside transfers of assets made by Farkhad Akhmedov to those parties in furtherance of his scheme of evasion.  Freezing injunctions were granted by the English court against the Liechtenstein trustees (who are also subject to criminal restraint orders in Liechtenstein in aid of a money laundering investigation) in August 2019.  As of July 2020, freezing injunctions and ancillary orders for disclosure (including a turnover order) were also issued by the English Court against Temur.   The discovery obtained here will be used to supplement discovery sought in the English Proceeding relating to Temur's role (and the role of the Liechtenstein trustees, with whom Temur communicated) in the ongoing fraud, as more information is gathered to demonstrate that Farkhad has continued to use various third parties to transfer, hide, secrete assets.  Applicant seeks to obtain substantive judgments against those who have previously received assets from the UK judgment debtors as part of Farkhad's fraud.  Specifically, a three-week trial against Temur and the Liechtenstein trusts used to receive and hold Farkhad's assets is currently scheduled to commence on November 30, 2020, at which the information sought from Google is intended to be used.

**RELEVANT FACTS**

The facts giving rise to this Application are set forth in detail in the Riem Declaration, as well as the exhibits thereto.  According to the declaration, the dispute and pending foreign litigations can be briefly summarized as follows:

**I.      The English Money Judgments and the Debtors' Fraudulent Transfer of Assets**

Applicant has obtained two English money judgments rendered by English Court in favor of the Applicant.  One against Farkhad, Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2 Establishment ("Qubo 2"), jointly and severally, in the amount of GBP 350,000,000 plus interest and certain running adjustments (the "Cash Award"), of which £224,430,508 was designated

EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

by the English court as maintenance (the remaining GBP £125,569,492 hereinafter referred to as the "Initial Money Judgment"); and the second against Straight Establishment in the amount of $478,278,000 plus interest and certain running adjustments (the "Straight Money Judgment"). The Cash Award (including the Initial Money Judgment) was awarded in December 2016 following an eight-day Financial Remedy Hearing conducted in the Family Division of the English High Court in connection with the divorce of Applicant Ms. Akhmedova and Farkhad Akhmedov. The Straight Money Judgment was awarded by the English Court in March 2018 following Ms. Akhmedova's applications against Straight Establishment and Avenger Assets Corporation ("Avenger Assets").

Applicant issued a divorce petition in London on October 24, 2013. Ms. Akhmedova was granted a *decree nisi*, stating that the English Court saw no reason why the couple could not divorce, on December 2, 2015. The *decree nisi* was made absolute on December 15, 2016. An eight-day financial remedy hearing was heard in the Family Division of the English High Court in November and December 2016. The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value and provide maintenance for Ms. Akhmedova in a final distribution.

However, on November 30, 2016 (the second day of the trial in England) a luxury yacht, the M/Y LUNA, beneficially owned by Farkhad via corporate shell (the "Vessel"), was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation at the instruction of Farkhad and facilitated by his agents some of which are located in this District. One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to Qubo 2 with the assistance of Farkhad's agents located within this District. Later, Qubo 2 was found by the English Court to be the alter ego of Farkhad.

At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova an amount equal to £453,576,152 against Farkhad, including the Cash Award of GBP £350,000,000 (approximately US $466.6 million). Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017. Riem Decl. Exs. 1 & 2.

EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

On December 20, 2016 the English Court also found that transfers of a 1) modern art collection and 2) the assets of Cotor,[1] to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult." The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" and made the Qubo entities liable for the judgment debt together with Farkhad. Riem Decl. Ex. 2 ¶¶ 11(g)-(h), 12.

Farkhad has not voluntarily satisfied any portion of the Judgment Debt or Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order. He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as an English judgment creditor.

On March 8, 2017, in disregard of the English Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad) and pending proceedings in the Liechtenstein Court, Qubo 2 transferred the Vessel to Straight Establishment. Straight Establishment is another Liechtenstein entity, which is operated from the same address as Qubo 2. Straight Establishment is the current registered owner of the LUNA and as of August 8, 2018 Straight Establishment and its agents have been permanently enjoined from further transferring ownership, control or possession of the LUNA by the High Court of the Marshall Islands.

On March 21, 2018, the English Court issued an order against Defendants Straight Establishment and Avenger Assets (the "March 21 Order"). The English Court found that Straight Establishment was an alter ego of Farkhad and served as his nominee. The English Court found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings.

---

[1] In 2012, Farkhad sold his interest in ZAO Northgas, a Russian oil company, for US $1.375 billion. Following the sale, Farkhad transferred the sale proceeds to Cotor. Riem Decl. Ex. 1 ¶ 77.

4

1   Also on March 21, 2108, the English Court declared "with immediate effect that [the

2   Applicant] is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight

3   Establishment to transfer title to Ms. Akhmedova within seven days. The English Court ordered that

4   if the title transfer was not effected within seven days, Straight Establishment would be concurrently

5   liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000 (the "Straight Money Judgment,"

6   Riem Decl. Exhibit 3). The English Court also extended the Freezing Order to apply to Straight

7   Establishment and Avenger Assets, and specifically applied to prohibit the "removal, disposal,

8   charging and/or diminution in value" of the Vessel.

9   **II.     The English Proceedings Against Temur Akhmedov**

10   On November 15, 2019, Applicant filed in the ongoing English Proceeding, an application

11   seeking to add as an additional, tenth respondent, Temur Akhmedov to the English Proceeding.

12   Temur was joined to the proceedings by the order of Mrs. Justice Knowles dated January 20, 2020.

13   By joining Temur as a respondent to the English Proceeding, Applicant ultimately seeks judgment

14   against Temur in connection with certain transfers of assets made to him by Farkhad and the alter ego

15   respondents, including but not limited to, 1) a claim for receiving over USD $100 million of Farkhad's

16   monetary assets via fraudulent transfer, and 2) a claim for receiving the shares in a company which

17   owned  substantial commercial property in Moscow.

18   By order of Justice Knowles dated June 19, 2020, as amended by consent (the "Disclosure

19   Order"), Temur was required to provide standard disclosure and inspection of documents by July 17,

20   2020 and was also required to provide responses to Applicant's Request for Further Information

21   ("RFI").

22   On July 17, 2020, the Applicant sought and obtained against an *ex parte* without notice

23   Worldwide Freezing Order with ancillary asset disclosure against Temur (the "WFO"). Also on July

24   17, 2020, the Temur provided disclosure and responses to the RFI pursuant to the Disclosure Order.

25   Inspection of a limited number of documents was provided on July 17, 2020, with inspection of the

26   majority of documents being provided on July 20, 2020.

27   Temur's disclosure statement reveals that he has previously held a wide variety of relevant

28   documents but (on his own case) has systematically destroyed his documents since January 2018. In

fact, aside from his UBS bank statements, Temur had disclosed only two documents created between April 2016 and July 20, 2020. Although Temur seeks to justify this destruction as justified by "security reasons", it appears likely that such destruction has in fact taken place in order to frustrate Applicant's claims against him.

Based on Temur's acts, on July 20, 2020, Applicant applied for an order for delivery up of Temur's Electronic Devices, Mobile Communication Services and Cloud Accounts and for such Electronic Devices, Mobile Communication Services and Cloud Accounts to be imaged by an independent forensic IT expert with a view to such images being reviewed by Temur's solicitors for the purposes of verifying and, if appropriate, securing compliance with Temur's obligation to give disclosure in accordance with the Disclosure Order. Riem Decl. Ex. 4.

As further set forth in the Riem Declaration, submitted herewith, Temur's disclosure gives rise to serious concerns that he has failed to comply with his disclosure obligations and/or has destroyed relevant documents in the English Proceeding. Riem Decl. ¶¶ 22-44. However, as represented to the English Court, it remains implausible that all of Temur's documents from March 2016 have, on a regular basis, been completely obliterated (which appears to follow from the disclosure Temur has given). This would mean, amongst other things, that Temur has permanently deleted all such documents (without keeping any record, even in a secure environment) and that he cannot retrieve them even for his own legitimate purposes. It is not credible that any person could operate in a way that means that they have no access to any documents or information relating to past dealings. Ex. 5 ¶ 10(d).

As noted in the English Proceedings (Ex. 5 ¶ 11(d)), Temur disclosed two emails sent to him (at his personal Gmail account) dated October 2013. Temur has since produced the native copies of these emails as forwarded by him to his solicitors. It is now apparent that these were forwarded from Temur's khyshen@gmail.com account to Mr. Harper of HFC in January 2020. On Temur's case, these emails ought not to exist because they would have been the subject of routine destruction. But they undeniably did exist as of January 19, 2020. Temur is now forced into the absurd position that "he had expected to find [those emails] on his PC, and believes that they are stored on it, but so far has not found them". There is an overwhelming inference that Temur did hold his emails as of

EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

1   January 19, 2020 but either (a) is lying about no longer holding them, or (b) has destroyed them since
2   that date.
3       Based on the submission made to the English Court, the Court issued an Order on July 23,
4   2020 directing that Temur shall by July 27, 2020 deliver up his electronic devices including all
5   usernames, passwords and pin numbers for access to Temur's electronic devices, cloud accounts and
6   mobile communications services.  Temur was also directed to cooperate with the independent IT
7   forensic expert (Stroz Freiberg Limited, a subsidiary of Aon ("Aon")) to access, decrypt and examine
8   the relevant data.  Riem Decl. Ex. 6.  However, Temur failed to provide access to any of his Cloud
9   Accounts or Mobile Communication Services (as defined by the order) and failed to deliver up any
10  of his Electronic Devices.  Riem Decl. ¶¶ 28-44.
11      On July 28, 2020, Temur provided a statement identifying the following email accounts used
12  since January 1, 2013:
13          a) temur@akhmedov.net;
14          b) temur@stecapital.net;
15          c) khyshen@gmail.com;
16          d) temur.akhmedov1993@gmail.com.
17  Temur was then required by paragraph 8(b) to provide Aon with "all PIN numbers, user-names, email
18  addresses, combinations, passwords, security verification codes and any other item or piece of
19  information (including, without limitation, authorizations to third party service providers) which may
20  be necessary to give access to the Electronic Devices, Cloud Accounts or Mobile Communication
21  Services".  However, Aon was unable to access any of the accounts listed above using the credentials
22  provided by Temur.  In particular, for three of the four email accounts Aon received messages from
23  the service providers reporting that the password provided was incorrect.
24      On August 14, 2020, Alex Campbell (of Aon) contacted Temur to undertake Google's account
25  recovery process with him for each of his four Google accounts. This was unsuccessful for each
26  account due *inter alia* to Temur claiming not to be in possession of back-up passcodes or devices
27  registered for authentication, or even to be able to identify his mobile phone number registered with
28  Google for recovery purposes when provided with part of the phone number.  In particular, when the

1  independent forensic experts, Aon, appointed by the English Court attempted to access Temur's email

2  account, hosted by Google, at temur@stecapital.net on 14 August 2020, Google presented a message

3  advising that the account had been "*recently deleted*". This message had not appeared when attempts

4  were made to access the account less than 2 weeks earlier. It therefore appears that Temur has been

5  setting about deleting his email accounts in response to the orders of the English Court.

6       Aon advised that this email account and its data might still be recoverable if steps were taken

7  promptly and so Mr. Campbell has sought further assistance from Temur. However, Temur has stated

8  that he is unable to cooperate, as he is unable to remember any details which would enable his

9  accounts to be recovered (including passwords, and the phone number provided to Google for account

10  verification purposes). Aon is concerned that the continued delay in accessing the

11  temur@stecapital.net account risks the account becoming unrecoverable and the data lost.

12       The terms of the Order of Mrs. Justice Knowles dated August 10, 2020 also provided that

13  Temur would "forthwith execute by hand and deliver to the Applicant's solicitors a mandate for each

14  of his email accounts in the form attached in the Schedule to this Order authorizing and directing

15  Google (and associated companies) to provide Aon with access to and/or with copies of the Tenth

16  Respondent's accounts and any emails, documents, other electronic data and metadata held on those

17  accounts. The Tenth Respondent shall provide such further assistance and execute such further

18  documents as may reasonably be required to give effect to the mandates." Riem Ex. 7.

19       As Temur failed to execute the mandates provided and on August 24, 2020, Ms. Akhmedova

20  applied for an order that the mandates be provided by 4pm on August 26, 2020. That order was

21  granted by Mrs. Justice Knowles on August 26, 2020. Riem Decl. Ex. 8. Temur did not comply with

22  that order. Copies of the mandates signed by Temur were eventually provided on September 3, 2020.

23  Riem Decl. Ex. 9. However, Temur remains in breach of his obligations at paragraphs 8(b) and (c)

24  of the English Order dated August 26, 2020 requiring him to (i) provide complete answers to Aon's

25  questions dated August 14, 2020, and (ii) to produce his unredacted UBS bank statements for January

26  2014 to December 31, 2018. On September 7, 2020, Justice Knowles ruled that Temur had provided

27  no good reason for his non-compliance with those orders and set a further deadline for compliance of

28  10am on Thursday September 10, 2020.

On September 10, 2020, Temur (through his solicitors) provided a partial response to these questions, noting (relevantly) that his solicitors had been "unable to make any progress in recovering the account as our client does not have the google authenticator app, he does not have an 8-digit back up code, he did not know which phone number he provided in his security settings and he does not know the recover email address that he added to his account".

## REQUEST FOR DISCOVERY ASSISTANCE

Applicant respectfully requests that the Court provide discovery assistance with respect to the foreign proceeding in the United Kingdom.  Applicant requests that Google, the discovery subject, who is present in the Northern District of California, be directed to provide discovery, described below, directly to Aon, the independent forensic expert appointed by the English Court, for use in the pending foreign proceeding.  As more specifically described in Applicant's Memorandum of Law in Support of an Application for Discovery Pursuant to 28 U.S.C. § 1782, assistance is appropriate here because: (i) the discovery subject "resides" at or is "found" in this District; (ii) Applicant is an "interested person" (as a party to the foreign proceeding); and (iii) the foreign proceeding is pending before a "foreign or international tribunal," and the information obtained will be for use in and in support of further adjudication in the foreign proceeding.

WHEREFORE, pursuant to 28 U.S.C. § 1782, Applicant requests that this Court enter an Order:

1)    Authorizing Applicant to issue and serve subpoenas on Google, Inc. for the production of the following information:

     a)    All non-content electronically stored information ("ESI"), including but not limited to all metadata and subscriber information for the following email accounts:

          i)    temur@akhmedov.net;

          ii)    temur@stecapital.net;

          iii)    khyshen@gmail.com;

          iv)    temur.akhmedov@gmail.com;

          v)    any other email address where Temur Akhmedov is determined to be the subscriber or account holder.

9

1     b)   All emails, documents or information regarding the above-listed accounts which
2     would ordinarily be recoverable to a subscriber or account holder through the account
3     recovery process with Google or based on the consent of the subscriber or account
4     holder.

5 2)   Ordering Google to produce the documents and information requested in the subpoena within
6    fourteen (14) days of service of the subpoena;

7 3)   Ordering Google to produce the documents directly to the independent IT forensic expert
8    appointed by the English Court, Aon, whose contact information for such production shall be
9    provided by Applicant;

10 4)  Ordering Google to preserve documents, information and evidence, electronic or otherwise,
11    in its possession, custody or control that contain information potentially relevant to the subject
12    matter of the Applicant's request;

13 5)  Retaining jurisdiction over the matter for the purpose of enforcement and assessing any
14    supplemental request for discovery assistance that may be requested by Applicant.

15                ****

16    In summary, based on the reasons set forth in this Application; the Declaration of Anthony J.
17 Riem, dated September 14, 2020; as well as the exhibits thereto; and the Memorandum of Law;
18 Applicant clearly meets the requirements of 28 U.S.C. § 1782, and this Application for the Order
19 should be granted.

20 DATED: September 15, 2020          HOLLAND & KNIGHT LLP
21

22                   /s/ Dan Kappes
                      Attorneys for Applicant
23                   *Tatiana Akhmedova*

24
25
26
27
28

EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782