

HOLLAND & KNIGHT LLP
James H. Power *pro hac vice (forthcoming)*
Daniel P. Kappes (SBN 303454)
50 California Street, 28th Floor
San Francisco, CA 94001
T 415.743.6900 | F 415.743.6951
E-mail: james.power@hklaw.com
E-mail: daniel.kappes@hklaw.com

Attorneys for Applicant
*Tatiana Akhmedova*

FILED BY FAX

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IN RE APPLICATION OF TATIANA AKHMEDOVA,

Applicant,

REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782.

Case No. CV-20 80156 MISC VKD

**MEMORANDUM OF LAW IN SUPPORT OF TATIANA AKHMEDOVA'S *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

---

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY

## MEMORANDUM OF LAW

Applicant, Tatiana Akhmedova, a resident of England and British citizen. ("Ms. Akhmedova" or "Applicant"), by and through its undersigned counsel, Holland & Knight LLP, and for its memorandum of law (this "Memorandum") in support of an application for discovery pursuant to 28 U.S.C. § 1782 from Google, LLC ("Google"), states as follows:

## PRELIMINARY STATEMENT

This memorandum is offered in support of Ms. Akhmedova's 1782 Application seeking discovery with respect to documents located in the United States and in this Judicial District for use in a foreign proceeding pending in the United Kingdom. Specifically, the pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340) (the "English Proceeding"), which is continuing as the judgment debt awarded in December 2016 (described further below) remains almost entirely unsatisfied. The English Proceeding now also concerns fraudulent transfers by judgment debtor Farkhad Akhmedov and his alter ego entities, Cotor Investment, S.A., Qubo 1 Establishment, Qubo 2 Establishment, Straight Establishment, and Avenger Assets Corporation, including through the transfer of assets to Temur and a number of Liechtenstein trusts in the fraudulent evasion of the English Judgments entered in Applicant's favor. Ms. Akhmedova has now brought claims within these proceedings against Temur and the Liechtenstein trustee entities Counselor Trust Reg. ("Counselor") and Sobaldo Establishment ("Sobaldo") (which provide trust services to a number of trusts established in Liechtenstein in furtherance of Farkhad Akhmedov's scheme) to *inter alia* set aside transfers of assets made by Farkhad Akhmedov to those parties in furtherance of his scheme of evasion. Freezing injunctions were granted by the English court against the Liechtenstein trustees (who are also subject to criminal restraint orders in Liechtenstein in aid of a money laundering investigation) in August 2019. As of July 2020, freezing injunctions and ancillary orders for disclosure (including a turnover order) were also issued by the English Court against Temur. The discovery obtained here will be used to supplement discovery sought in the English Proceeding relating to Temur's role (and the role of the Liechtenstein trustees, with whom Temur communicated) in the ongoing fraud, as more information is gathered to demonstrate that Farkhad has continued to use various third parties to transfer, hide, secrete and otherwise violate

numerous court orders including a disclosure order and turnover order issued by the High Court of England and Wales.

As set forth in the Application and the Declaration of Anthony J. Riem, dated September 14, 2020 ("Riem Decl."), in support thereof, this dispute originally arises out of two English Money Judgments which Applicant is seeking to enforce against her ex-husband and various alter ego entities which he has used to fraudulently transfer and conceal assets to avoid payment to Applicant. On December 15, 2016, following an eight-day financial remedy hearing between Applicant and ex-husband Farkhad to establish the value of the couple's assets and to decide how to divide that value and provide maintenance for Ms. Akhmedova in a final distribution, the English Court awarded Ms. Akhmedova a cash award of GBP £350,000,000 (approximately US $466.6 million) (the "Cash Award"). The English Court has also declared that Applicant is the legal and beneficial owner of a mega-yacht, the M/Y Luna (the "Vessel"), and ordered Farkhad and Straight Establishment (the Vessel's registered-owner and alter ego of Farkhad) to transfer title to Ms. Akhmedova within seven days. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000 (the "Straight Money Judgment"). The English Court also extended a Freezing Order to apply to Straight Establishment and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, Applicant has filed various foreign proceedings in her efforts to obtain recognition and enforcement of the English Judgments, including the English action against Temur Akhmedov, the judgment debtor's son, noted above. Under the circumstances, the following categories of evidence will be relevant, important and useful for Applicant to obtain for use in the foreign proceedings, all of which evidence is located in the United States:

    a)     All non-content electronically stored information ("ESI"), including but not limited to all metadata and subscriber information for the following email accounts:

        i)     temur@akhmedov.net;

        ii)     temur@stecapital.net;

   iii) khyshen@gmail.com;

   iv) temur.akhmedov@gmail.com;

   v) any other email address where Temur Akhmedov is determined to be the subscriber or account holder.

 b) All emails, documents or information regarding the above-listed accounts which would ordinarily be recoverable to a subscriber or account holder through the account recovery process with Google or based on the consent of the subscriber or account holder.

Ms. Akhmedova's Application seeking discovery in aid of the foreign proceeding satisfies all of the requirements of § 1782 and the Supreme Court's discretionary factors. Under 28 U.S.C. § 1782, an applicant may be granted discovery in the United States in aid of a pending foreign proceeding if the applicant is an interested party to the proceeding and if the information sought is located within the District.

It is clear that discovery concerning U.S.-located Google's storage and possession of Google-hosted email accounts including information concerning recent actions taken by Temur Akhmedov in transfer of assets is both relevant and crucial to Applicant in order for her to obtain relief in the foreign proceedings by obtaining substantive judgments against those who have previously received assets from the UK judgment debtors as part of the Farkhad's fraud. Specifically, a three-week trial against Temur and the Liechtenstein trusts used to receive and hold Farkhad's assets is currently scheduled to commence on November 30, 2020, at which the information sought from Google is intended to be used.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving documents located within the Northern District of California, necessary to assist Applicant in its foreign court proceeding. At all times material herein, Applicant is and was a resident of England and British citizen. Venue in the Northern District of California is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from

Google, which is present within this Judicial District, along with the documents and information presently located in this jurisdiction in Google's possession or control.

## FACTUAL BACKGROUND

The facts giving rise to this Application are set forth in detail in the Riem Declaration, as well as the exhibits thereto. According to the declaration, the dispute and pending foreign litigations can be briefly summarized as follows:

### I. The English Money Judgments and the Debtors' Fraudulent Transfer of Assets

Applicant has obtained two English money judgments rendered by English Court in favor of the Applicant. One against Farkhad, Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2 Establishment ("Qubo 2"), jointly and severally, in the amount of GBP 350,000,000 plus interest and certain running adjustments (the "Cash Award"), of which £224,430,508 was designated by the English court as maintenance (the remaining GBP £125,569,492 hereinafter referred to as the "Initial Money Judgment"); and the second against Straight Establishment in the amount of $478,278,000 plus interest and certain running adjustments (the "Straight Money Judgment"). The Cash Award (including the Initial Money Judgment) was awarded in December 2016 following an eight-day Financial Remedy Hearing conducted in the Family Division of the English High Court in connection with the divorce of Applicant Ms. Akhmedova and Farkhad Akhmedov. The Straight Money Judgment was awarded by the English Court in March 2018 following Ms. Akhmedova's applications against Straight Establishment and Avenger Assets Corporation ("Avenger Assets").

Applicant issued a divorce petition in London on October 24, 2013. Ms. Akhmedova was granted a *decree nisi*, stating that the English Court saw no reason why the couple could not divorce, on December 2, 2015. The *decree nisi* was made absolute on December 15, 2016. An eight-day financial remedy hearing was heard in the Family Division of the English High Court in November and December 2016. The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value and provide maintenance for Ms. Akhmedova in a final distribution.

However, on November 30, 2016 (the second day of the trial in England) a luxury yacht, the M/Y LUNA, beneficially owned by Farkhad via corporate shell (the "Vessel"), was transferred from

its corporate owner, Avenger Assets, to another entity, Stern Management Corporation at the instruction of Farkhad and facilitated by his agents some of which are located in this District. One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to Qubo 2 with the assistance of Farkhad's agents located within this District. Later, Qubo 2 was found by the English Court to be the alter ego of Farkhad.

At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova an amount equal to £453,576,152 against Farkhad, including the Cash Award of GBP £350,000,000 (approximately US $466.6 million). Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017. Riem Decl. Exs. 1 & 2.

On December 20, 2016 the English Court also found that transfers of a 1) modern art collection and 2) the assets of Cotor,[1] to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult." The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" and made the Qubo entities liable for the judgment debt together with Farkhad. Riem Decl. Ex. 2 ¶¶ 11(g)-(h), 12.

Farkhad has not voluntarily satisfied any portion of the Judgment Debt or Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order. He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as an English judgment creditor.

On March 8, 2017, in disregard of the English Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad) and pending proceedings in the Liechtenstein Court, Qubo 2 transferred the Vessel to Straight Establishment. Straight Establishment is another Liechtenstein entity, which is operated from the same address as Qubo 2. Straight Establishment is the current registered owner of the LUNA and as of August 8, 2018 Straight Establishment and its agents have

---

[1] In 2012, Farkhad sold his interest in ZAO Northgas, a Russian oil company, for US $1.375 billion. Following the sale, Farkhad transferred the sale proceeds to Cotor. Riem Decl. Ex. 1 ¶ 77.

been permanently enjoined from further transferring ownership, control or possession of the LUNA by the High Court of the Marshall Islands.

On March 21, 2018, the English Court issued an order against Defendants Straight Establishment and Avenger Assets (the "March 21 Order"). The English Court found that Straight Establishment was an alter ego of Farkhad and served as his nominee. The English Court found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings.

Also on March 21, 2018, the English Court declared "with immediate effect that [the Applicant] is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be concurrently liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000 (the "Straight Money Judgment," Riem Decl. Exhibit 3). The English Court also extended the Freezing Order to apply to Straight Establishment and Avenger Assets, and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

**II.   The English Proceedings Against Temur Akhmedov**

On November 15, 2019, Applicant filed in the ongoing English Proceeding, an application seeking to add as an additional, tenth respondent, Temur Akhmedov to the English Proceeding. Temur was joined to the proceedings by the order of Mrs. Justice Knowles dated January 20, 2020. By joining Temur as a respondent to the English Proceeding, Applicant ultimately seeks judgment against Temur in connection with certain transfers of assets made to him by Farkhad and the alter ego respondents, including but not limited to, 1) a claim for receiving over USD $100 million of Farkhad's monetary assets via fraudulent transfer, and 2) a claim for receiving the shares in a company which owned substantial commercial property in Moscow.

By order of Justice Knowles dated June 19, 2020, as amended by consent (the "Disclosure Order"), Temur was required to provide standard disclosure and inspection of documents by July 17,

2020 and was also required to provide responses to Applicant's Request for Further Information ("RFI").

On July 17, 2020, the Applicant sought and obtained against an *ex parte* without notice Worldwide Freezing Order with ancillary asset disclosure against Temur (the "WFO"). Also on July 17, 2020, the Temur provided disclosure and responses to the RFI pursuant to the Disclosure Order. Inspection of a limited number of documents was provided on July 17, 2020, with inspection of the majority of documents being provided on July 20, 2020.

Temur's disclosure statement reveals that he has previously held a wide variety of relevant documents but (on his own case) has systematically destroyed his documents since January 2018. In fact, aside from his UBS bank statements, Temur had disclosed only two documents created between April 2016 and July 20, 2020. Although Temur seeks to justify this destruction as justified by "security reasons", it appears likely that such destruction has in fact taken place in order to frustrate Applicant's claims against him.

Based on Temur's acts, on July 20, 2020, Applicant applied for an order for delivery up of Temur's Electronic Devices, Mobile Communication Services and Cloud Accounts and for such Electronic Devices, Mobile Communication Services and Cloud Accounts to be imaged by an independent forensic IT expert with a view to such images being reviewed by Temur's solicitors for the purposes of verifying and, if appropriate, securing compliance with Temur's obligation to give disclosure in accordance with the Disclosure Order. Riem Decl. Ex. 4.

As further set forth in the Riem Declaration, submitted herewith, Temur's disclosure gives rise to serious concerns that he has failed to comply with his disclosure obligations and/or has destroyed relevant documents in the English Proceeding. Riem Decl. ¶¶ 22-44. However, as represented to the English Court, it remains implausible that all of Temur's documents from March 2016 have, on a regular basis, been completely obliterated (which appears to follow from the disclosure Temur has given). This would mean, amongst other things, that Temur has permanently deleted all such documents (without keeping any record, even in a secure environment) and that he cannot retrieve them even for his own legitimate purposes. It is not credible that any person could

operate in a way that means that they have no access to any documents or information relating to past dealings. Ex. 5 ¶ 10(d).

As noted in the English Proceedings (Ex. 5 ¶ 11(d)), Temur disclosed two emails sent to him (at his personal Gmail account) dated October 2013. Temur has since produced the native copies of these emails as forwarded by him to his solicitors. It is now apparent that these were forwarded from Temur's khyshen@gmail.com account to Mr. Harper of HFC in January 2020. On Temur's case, these emails ought not to exist because they would have been the subject of routine destruction. But they undeniably did exist as of January 19, 2020. Temur is now forced into the absurd position that "he had expected to find [those emails] on his PC, and believes that they are stored on it, but so far has not found them". There is an overwhelming inference that Temur did hold his emails as of January 19, 2020 but either (a) is lying about no longer holding them, or (b) has destroyed them since that date.

Based on the submission made to the English Court, the Court issued an Order on July 23, 2020 directing that Temur shall by July 27, 2020 deliver up his electronic devices including all usernames, passwords and pin numbers for access to Temur's electronic devices, cloud accounts and mobile communications services. Temur was also directed to cooperate with the independent IT forensic expert (Stroz Freiberg Limited, a subsidiary of Aon ("Aon")) to access, decrypt and examine the relevant data. Riem Decl. Ex. 6. However, Temur failed to provide access to any of his Cloud Accounts or Mobile Communication Services (as defined by the order) and failed to deliver up any of his Electronic Devices. Riem Decl. ¶¶ 28-44.

On July 28, 2020, Temur provided a statement identifying the following email accounts used since January 1, 2013:

        a) temur@akhmedov.net;

        b) temur@stecapital.net;

        c) khyshen@gmail.com;

        d) temur.akhmedov1993@gmail.com.

Temur was then required by paragraph 8(b) to provide Aon with "all PIN numbers, user-names, email addresses, combinations, passwords, security verification codes and any other item or piece of

information (including, without limitation, authorizations to third party service providers) which may be necessary to give access to the Electronic Devices, Cloud Accounts or Mobile Communication Services". However, Aon was unable to access any of the accounts listed above using the credentials provided by Temur. In particular, for three of the four email accounts Aon received messages from the service providers reporting that the password provided was incorrect.

On August 14, 2020, Alex Campbell (of Aon) contacted Temur to undertake Google's account recovery process with him for each of his four Google accounts. This was unsuccessful for each account due *inter alia* to Temur claiming not to be in possession of back-up passcodes or devices registered for authentication, or even to be able to identify his mobile phone number registered with Google for recovery purposes when provided with part of the phone number. In particular, when the independent forensic experts, Aon, appointed by the English Court attempted to access Temur's email account, hosted by Google, at temur@stecapital.net on 14 August 2020, Google presented a message advising that the account had been *"recently deleted"*. This message had not appeared when attempts were made to access the account less than 2 weeks earlier. It therefore appears that Temur has been setting about deleting his email accounts in response to the orders of the English Court.

Aon advised that this email account and its data might still be recoverable if steps were taken promptly and so Mr. Campbell has sought further assistance from Temur. However, Temur has stated that he is unable to cooperate, as he is unable to remember any details which would enable his accounts to be recovered (including passwords, and the phone number provided to Google for account verification purposes). Aon is concerned that the continued delay in accessing the temur@stecapital.net account risks the account becoming unrecoverable and the data lost.

The terms of the Order of Mrs. Justice Knowles dated August 10, 2020 also provided that Temur would "forthwith execute by hand and deliver to the Applicant's solicitors a mandate for each of his email accounts in the form attached in the Schedule to this Order authorizing and directing Google (and associated companies) to provide Aon with access to and/or with copies of the Tenth Respondent's accounts and any emails, documents, other electronic data and metadata held on those accounts. The Tenth Respondent shall provide such further assistance and execute such further documents as may reasonably be required to give effect to the mandates." Riem Ex. 7.

As Temur failed to execute the mandates provided and on August 24, 2020, Ms. Akhmedova applied for an order that the mandates be provided by 4pm on August 26, 2020. That order was granted by Mrs. Justice Knowles on August 26, 2020. Riem Decl. Ex. 8. Temur did not comply with that order. Copies of the mandates signed by Temur were eventually provided on September 3, 2020. Riem Decl. Ex. 9. However, Temur remains in breach of his obligations at paragraphs 8(b) and (c) of the English Order dated August 26, 2020 requiring him to (i) provide complete answers to Aon's outstanding questions dated August 14, 2020, and (ii) to produce his unredacted UBS bank statements for January 2014 to December 31, 2018. On September 7, 2020, Justice Knowles ruled that Temur had provided no good reason for his non-compliance with those orders and set a further deadline for compliance of 10am on Thursday September 10, 2020.

On September 10, 2020 Temur (through his solicitors) provided a partial response to these questions, noting (relevantly) that his solicitors had been "unable to make any progress in recovering the account as our client does not have the google authenticator app, he does not have an 8-digit back up code, he did not know which phone number he provided in his security settings and he does not know the recover email address that he added to his account."

## ARGUMENT

### I.  28 U.S.C. § 1782 PROVIDES FOR DISCOVERY IN AID OF PENDING FOREIGN PROCEEDINGS

The basis for this *ex parte* Application is 28 U.S.C. § 1782 ("Section 1782"). "First, it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte." *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012).

Section 1782 authorizes a United States District Court, upon the application of an interested person, to order a person residing in the district to give testimony or produce documents for use in a foreign proceeding:

> The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY

rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a); *see also In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

Whether to grant this Application for discovery pursuant to 28 U.S.C. § 1782 is within this Court's discretion. *In re Clerici*, 481 F.3d at 1331 ("Because Congress has given the district courts such broad discretion in granting judicial assistance to foreign countries, this court may overturn the district court's decision only for abuse of discretion") (internal citations omitted); *In re Application of Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993), *cert. denied*, 510 U.S. 965 (1993).

## II.     MS. AKHMEDOVA SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

The United States Supreme Court has interpreted Section 1782 as having a broad application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). In determining that Section 1782 authorizes a federal district court to provide discovery assistance, the Supreme Court specifically rejected the multiple limitations that Intel attempted to inject into the interpretation of the statute. *Intel*, 542 U.S. at 256. Instead, the Supreme Court adopted a broad and liberal interpretation of the Statute and provided guidelines for the future application of the statute by federal district courts. *Id.*

Ms. Akhmedova satisfies each of the requirements of 28 U.S.C. § 1782 and those set forth by the Second Circuit in *Aldunate*. *Id.* In *Aldunate* the Second Circuit stated of Section 1782 that:

> [T]he statutory language is unambiguous in its requirements: (1) the person from whom discovery is sought must reside in or be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person.

3 F.3d at 58 (quoting 28 U.S.C. §1782).

Thus, the Court may enter an Order allowing discovery for use in the foreign proceeding. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014). Specifically, Ms. Akhmedova is an interested person to the foreign proceeding; the entity with possession, custody and/or control of the discovery sought resides in or are found within this District; and the evidence is sought for use in the pending foreign proceeding, which are before a foreign tribunal in the United Kingdom.

### A. Ms. Akhmedova, the Applicant, is an interested person to the foreign proceeding

Ms. Akhmedova, as a judgment creditor of Farkhad and his alter egos, is the petitioner in the foreign proceeding. Accordingly, she is clearly an "interested person" as that term is used in 28 U.S.C. § 1782. *See In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992), *cert. denied*, 506 U.S. 861 (1992).

The Court's decision in *Intel* highlights the broad applicability of this standard. The Supreme Court recognized the definition of an interested party to be any person who "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256. *In re Req. for Assistance from Ministry of Legal Affairs of Trin. & Tobago*, 648 F. Supp. 464, 466 (S.D. Fla. 1986) ("An application may be made by any interested person. The legislative history supports this view"), *aff'd*, 848 F.2d 1151 (11th Cir. 1988), *abrogated in part on other grounds by Intel*, 542 U.S. 241 (2004). Here, Ms. Akhmedova seeks to recover on the English Money Judgments, and is engaged in continued litigation to prevent Farkhad, his son Temur, and his alter egos' efforts to transfer, dissipate or conceal their assets from enforcement. The English Court has ruled that she is entitled to a division of assets under English law, the place of residence of the couple during their 20-year marriage. As such, Ms. Akhmedova clearly possesses a reasonable interest in obtaining the assistance requested.

### B. The entity with possession, custody and/or control of the discovery sought resides in or is found within this District

In addition, the discovery subject, Google "resides" or is "found" in this Judicial District. For purposes of 28 U.S.C. § 1782, a company is found where it is incorporated, headquartered or where it is engaged in "systematic and continuous activities." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted). Ms. Akhmedova seeks the production of documents by Google

located at, or accessible from its Mountain View headquarters or offices. This satisfies the statutory requirements of 28 U.S.C. § 1782. Ms. Akhmedova anticipates serving Google with a subpoena *duces tecum* in this District upon the issuance of an order by the Court authorizing the discovery assistance requested.

### C. Discovery is sought for use in the pending foreign proceeding, which is being held before a foreign tribunal

Ms. Akhmedova seeks discovery "for use in a proceeding in a foreign or international tribunal". *Aldunate*, 3 F.3d at 58 (quoting 28 U.S.C. §1782). As the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) explained, the proceeding for which discovery is sought under §1782(a) may be within reasonable contemplation, pending or imminent. *Id* at 243.

*See Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) ("Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite, Section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure… The Magistrate Judge did not err by granting discovery 'for context,' when such discovery is allowed under Rule 26(b)(1)"), *cert. denied*, 130 S.Ct. 59 (2009). As Anthony J. Riem, English counsel to Ms. Akhmedova, explains in his accompanying declaration, Ms. Akhmedova is in need of the requested discovery to determine the actions taken by Farkhad and those on his behalf including his son, Temur Akhmedov, to assist with fraudulently transferring assets, thereby allowing the English Court to fairly determine Applicant's claims that Temur and the Liechtenstein trustees have been involved in fraudulent transfers and that judgments in the amount of several hundreds of millions of US dollars should be entered against them.

In *Intel*, the Supreme Court confirmed a low threshold for satisfying the "foreign or international tribunal" requirement by concluding that the Directorate General (i.e., a governmental investigative body and not a court) is a "tribunal" for the purposes of satisfying the requirements of § 1782. The Court also stated that "[t]he term 'tribunal'… includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Intel*, 542 U.S. at 248. In light of the expansive

definition of the term "tribunal," the English Court proceeding clearly constitute "proceedings in a foreign or international tribunal."

### D. No other factors weigh against allowing discovery

In addition to satisfying the requirements of *Aldunate*, 3 F.3d at 58, there are no factors which would argue against allowing the discovery. In *Malev*, the Second Circuit emphasized that the goals of Section 1782 should be considered in deciding motions brought under the statute. *Malev*, 964 F.2d at 100. These goals of Section 1782 are:

> [T]win aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign courts by example to provide similar means of assistance to our courts.

*Id.* Both these aims will be fulfilled by granting the requested discovery. The discovery sought will assist Ms. Akhmedova and the English Court in the English Proceeding, by obtaining information which it has repeatedly sought to obtain through the previously-issued Disclosure Order, Forensic Examination Order, and the Mandate Order (*see* Riem Decl.). According to her English counsel, Anthony J. Riem, "there is no English rule of evidence that would prevent discovery obtained under 28 U.S.C. § 1782 being used in the English proceedings." Riem Decl. ¶ 50.

Thus, the goals of the statute will be accomplished through granting this application. Given the holdings in *Aldunate* and *Malev*, it must be concluded that a Section 1782 application should be granted where, as here, an applicant has met the express requirements of the statute and where the discovery will achieve the goals set by the statute's enactment. *Aldunate*, 3 F.3d at 58; *Malev*, 964 F.2d at 100.

### III. MS. AKHMEDOVA ALSO SATISFIES *INTEL*'S DISCRETIONARY FACTORS

In *Intel*, the Court identified four factors that bear consideration in ruling on a Section 1782 request. While the factors are not exhaustive, the Court stated that a court ruling on a Section 1782 request should consider: 1) whether the person from whom discovery is sought is a participant in the foreign proceeding; 2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; 3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-

gathering limits or other policies of a foreign country or the United States; 4) whether the discovery requests are unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65; *In re Clerici*, 481 F.3d at 1334.

A District Court may grant an application without consulting the discretionary factors, but the discretionary factors should be considered if the statutory requirements are met. *See In re Xavier*, No. 05-12218, 2006 WL 858489, at *1 (11th Cir. Apr. 4, 2006) (*per curiam*) (holding that district court had the authority to grant the § 1782 application for assistance in obtaining discovery from a bank in Miami as the statutory requirements were satisfied); *Chubbs Ins. Co. of Europe SE v. Zurich American Ins. Co.*, No. 1:09-mc-011, 2010 WL 411323 *6 (N.D. Ohio, Jan. 28, 2010).

Granting Ms. Akhmedova's request for relief is consistent with the guidance provided by the *Intel* court since neither of the discovery subjects will be parties to or participants in the foreign proceeding. *Compare In re Application Pursuant to 28 U.S.C. § 1782*, No. 1:14-mc-44, 2014 WL 4181618 at *4 (S.D. Ohio, Aug. 21, 2014) (holding that discretionary requirements not met because subjects would be participants in the foreign proceedings). As such, Ms. Akhmedova would be unable to obtain discovery from Google in the United Kingdom. Although the documents and information were sought through disclosure by Temur in the English Proceeding, Temur has continually failed to cooperate with disclosure required by the English Court, including by the deletion of documents and inhibiting the account recovery process directly with Google. However, it is believed that Google maintains an archive of the requested information within this District, and that such information may be legally obtained from Google based upon the consent of the subscriber or account holder, Temur,[2] as reflected in the mandates entered in the English Proceedings. *See* Riem Decl. Ex. 9.

The nature of the foreign proceeding does not implicate any factor or policy that would weigh against granting Ms. Akhmedova's request. Instead, the nature of the action – litigation against Temur Akhmedov in furtherance of the foreign country money judgments – weighs in favor of her request. The United States jurisdictions including California have confirmed their interest in

---

[2] Specifically, the Electronic Communications Privacy Act provides for exceptions for the disclosure of information, which includes the lawful consent of the originator, addressee or recipient, or subscriber of a remote computing service. 18 U.S.C. § 2702(b)(3).

15
MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY

facilitating enforcement and recognition of foreign money judgments by its own codification of the Uniform Money Judgment Recognition Act (*see* Ca. Civ. Proc. Code §§ 1713-1725). This is compounded by Farkhad and Temur's suspected wrongful use of companies located within this District to assist with evading enforcement of the English judgments.

Nor would granting the assistance requested by Ms. Akhmedova offend any foreign jurisdiction or constitute a circumvention of foreign proof-gathering rules. *See* Riem Decl. ¶ 50. Additionally, the discovery subject Google is not a party in the English proceeding. *In re Application Pursuant to 28 U.S.C. § 1782*, 2014 WL 4181618 at *4 (holding that application's circumvention of foreign proof-gathering restrictions was not clear because subjects were subject to the jurisdiction of the foreign court).

Finally, the requests are neither unduly intrusive nor burdensome. As discussed above, the key information relevant to the English proceeding is located in this District. This includes documentation in the possession or control of Google. This information has not been made available to Applicant and is not available within the United Kingdom. Moreover, the documentation requested is needed to confirm whether acts believed to have been taken by Farkhad and/or Temur Akhmedov to fraudulently avoid enforcement of the English Judgments have occurred, and to obtain judgment directly against Temur and the Liechtenstein trustees of the alter ego respondents in the English Proceeding.

## IV. THIS COURT MAY GRANT DISCOVERY RELIEF ON AN *EX PARTE* BASIS

It is well-settled law that Section 1782 applications may, and in fact commonly are, granted *ex parte*. *See, e.g., Gushlack v. Gushlack*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."); *In re Letters Rogatory From Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("We do not find any of the other objections raised by the witnesses to be persuasive. Letters Rogatory [issued under § 1782] are customarily received and appropriate action taken with respect thereto ex parte."); *In re Ex Parte Application of Societe D'Etude De Realisation*, No. 13-mc-0266, 2013 WL 6164435, at *2 (E.D. Pa. Nov. 22, 2013) ("[A] survey of Intel's citing references reveals that the use of ex parte

applications is widespread and, in many cases, unremarked upon (and thus approved of sub silento).") (collecting cases).

## **CONCLUSION**

Based on the foregoing, this Court should exercise its discretion to grant foreign discovery assistance. Under the circumstances, evidence that will be relevant to Ms. Akhmedova's entitlement to relief in the foreign proceeding is not available in the United Kingdom but is located in the United States in this District. As such, Ms. Akhmedova seeks discovery pursuant to 28 U.S.C. § 1782 to obtain discovery specified in the application and as set forth above. Obtaining this information will require a subpoena requiring production of documents and communications in the possession and control of Google concerning non-content electronically-stored information ("ESI") as well as recoverable email content in connection with Gmail or Google accounts belonging to or maintained by Temur Akhmedov. All of these documents are believed to be located in the United States. Consistent with precedent cited above, the facts in the present matter clearly meet the requirements of 28 U.S.C. § 1782, and this 1782 application for discovery should be granted.

DATED: September 15, 2020              HOLLAND & KNIGHT LLP

/s/ Dan Kappes
Attorneys for Applicant
*Tatiana Akhmedova*

17
MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY