Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Steven E. Bledsoe (SBN 157811)
*sbledsoe@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
**LARSON O'BRIEN LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:  (213) 436-4888
Facsimile:   (213) 623-2000

Attorneys for Proposed Intervenor
TEMUR AKHMEDOV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLICATION OF TATIANA AKHMEDOVA,<br><br>Applicant, | Case No. 5:20-mc-80156-VKD<br><br>**PROPOSED INTERVENOR TEMUR AKHMEDOV'S NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE TO OPPOSE TATIANA AKHMEDOVA'S *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with [Proposed] Order]<br><br>Judge:        Hon. Virginia K. DeMarchi<br>Date:         October 27, 2020<br>Time:         10:00 a.m.<br>Courtroom:  2 |

**TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 27, 2020 at 10:00 a.m. PST, or as soon thereafter as this matter may be heard, in Courtroom 2, of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Virginia K. DeMarchi, Proposed Intervenor Temur Akhmedov, by his undersigned counsel, will and hereby does move, under Federal Rule of Civil Procedure 24, to intervene in this proceeding so that he may oppose Applicant Tatiana Akhmedova's application under 28 U.S.C. §1782 for discovery. The Motion is based on this Notice of Motion and Motion, the attached memorandum of points and authorities, the papers and records on file in this Action, and upon such other additional documents as are properly before this Court at the time of the hearing on this application.

Dated:  September 21, 2020              LARSON O'BRIEN LLP

                                        By: /s/ Stephen G. Larson
                                            Stephen G. Larson
                                            Steven E. Bledsoe
                                            Paul A. Rigali
                                        Attorneys for Proposed Intevenor
                                        TEMUR AKHMEDOV

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Application arises from bitter divorce proceedings—litigated entirely in the United Kingdom and Russia—between the Applicant Tatiana Akhmedova ("Applicant") and her ex-husband Farkhad Akhmedov. Applicant's efforts to collect money from her ex-husband are financed by Burford Capital, a global litigation financing firm. With the backing of Burford Capital, Applicant has engaged in a scorched-earth collection effort that has ensnared her 26-year old son, Temur Akhmedov ("Temur"). Although she does not have any independent claims against her son, Applicant has sought to freeze—and seize—the assets that Temur's father provided him before the divorce judgment was even entered.

Burford Capital and Applicant's efforts now include Applicant's request to conduct nearly limitless discovery regarding electronically-stored information and data regarding Temur from Google, including all of his emails, account metadata, and subscriber information. Applicant's request, however, lacks any legitimate use in a foreign proceeding because the High Court of England and Wales has already issued discovery orders and set in place a procedure that contemplates Temur's production of relevant information.

Under these circumstances, Applicant's request is an unfortunate but blatant attempt to harass and intimidate Temur with the disclosure of all of his private, personal communications and information from Google. For the reasons set forth below, the Court should allow Temur to intervene into this matter, and deny Applicant's improper and unbounded discovery request.

## II. STATEMENT OF FACTS

Mr. Akhmedov and Applicant were both born in the Soviet Union. They met in Moscow, Russia, and married in Russia in 1993. *AAZ v. BBZ & Ors*, [2016] EWHC 3234 ¶ 11 (Fam); ECF No. 2-1 ¶ 11. Mr. Akhmedov was an oil and gas trader and traveled frequently. He spent extended periods of time away from his family in Siberia building his business and the family became very international. *Id*. Temur, the couple's oldest son, and the object of this dispute, was born in 1993 in London. The couple's younger son, Edgar, was born in 1996 in Monaco. *Id*.

A.  **Initial Divorce Proceedings**

In 1993, Mr. Akhmedov became a minority shareholder in ZAO Northgas, a Siberian gas company. *Id*. Following Applicant's affair with the brother of one of Temur's childhood friends, the marriage broke down in 1999. *Id*. ¶ 39. In 2003, Applicant petitioned to divorce Mr. Akhmedov in London, United Kingdom. *Id*. Mr. Akhmedov moved to strike the divorce petition on the grounds that he had already divorced Applicant in Russia. *Id*. The parties subsequently reconciled and Applicant's United Kingdom divorce petition was dismissed with the consent of the parties. *Id*.

In 2012, Mr. Akhmedov sold his stake in ZAO Northgas for approximately $1.4 billion. *Id*. ¶ 41. Shortly thereafter, in 2013, Applicant served a second divorce petition in London, United Kingdom and requested a substantial sum from Mr. Akhmedov. *Id*.

On December 15, 2016, the Family Division of the High Court of England and Wales issued an order and found that Mr. Akhmedov and Applicant were married in the United Kingdom, the marital estate was £1,093,334,626 (approximately $1,400,000,000), and that Applicant was entitled to £453,576,152 (approximately $580,000,000). *Id*. ¶¶ 136-138. The judgment included an order of £39,268,750 (approximately $50,000,000) for Applicant to purchase an English property to be near their sons; £27,885,630 (approximately $35,000,000) to purchase a French property in order to be able to vacation close to their sons; and £157,101,608 (approximately $200,000,000) to meet her "living needs" of £5,359,354 *per annum* (approximately $6,850,000.) *Id*. ¶ 134. Temur, of course, was not a party to his parents' divorce proceedings.

Burford Capital, a publicly-traded global litigation fund with a market capitalization of more than $1 billion, seized on the opportunity to profit from the enormous family law judgment, and it aggressively pursued judgment enforcement proceedings against Mr. Akhmedov. Burford Capital, known for closely managing the litigation it finances, has been accused of shocking litigation tactics and employing disreputable private intelligence firms. Burford Capital also owns a significant equity stake in the law firm Applicant uses as her UK solicitors, enabling them to self-deal. Here, Burford Capital and has initiated many actions in Applicant's name around the

globe, including in Liechtenstein, the Republic of the Marshall Islands, Dubai, Switzerland, New York, and now, the Northern District of California.

Given the international nature of the couple's lifestyle, and the dispute regarding whether the couple had already divorced in Russia in 2000, Burford Capital has not succeeded in collecting its judgment from Mr. Akhmedov.[1]  Sensing a lackluster investment, Burford Capital has directed its litigation efforts toward a barrage of proceedings to collect money from eight other targets, including Temur.

### B.    Burford Capital Drags the Couple's Son, Temur, Into Litigation

With its eye constantly on the bottom line, Burford Capital, is attempting to use the instant proceeding to do an end-run around the High Court of England and Wales in order to eventually, and improperly, enforce the divorce judgment against Temur, a young man caught in the cross-fire of his parents' contentious divorce.  On November 15, 2019, Burford Capital and Applicant initiated proceedings to have Temur, seeking to freeze his assets, alleging that Temur acted as a "lieutenant" devising "schemes" to help Mr. Akhmedov.  *Akhmedova v. Akhmedov & Ors*, [2020] EWHC 2235 ¶ 102 (Fam).  This marked a ruthless change of position, as Applicant previously argued in the divorce proceedings that her relationship with Temur justified an award of money to purchase property in London.

Accordingly, Mr. Akhmedov's generosity towards his sons was fully set forth and tacitly approved by the High Court's initial December 15, 2016 judgment.  In fact, the High Court justified its £453m judgment by ruling that Applicant needed £39,268,750 to buy property to be close to Temur, who lived in a £29,000,000 property purchased and gifted to him by his father. *See AAZ*, [2016] EWHC 3234 ¶¶ 14, 132.  Applicant was also awarded £27,885,630 in order to purchase property in France *to also be close to Temur on vacation*. *Id.* ¶ 132.  In other words, Applicant and the High Court were not just aware of the gifts Mr. Akhmedov gave Temur, *they were part of the justification for High Court's ruling*.  Demonstrating its complete lack of regard

---

[1] For example, Burford Capital attempted to seize a yacht in Dubai, United Arab Emirates, which the Dubai Court of Cassation rejected on August 20, 2020.  See Lisa Barrington, Dubai's Highest Court Rejects Superyacht Seizure Appeal in Mammoth Divorce Battle, Reuters (Aug. 20, 2020), https://www.reuters.com/article/us-dubai-russia-divorce-yacht-idUSKBN25G1Z5.

for the sensitive nature of family law matters and the Akhmedov family, Burford Capital now targets Temur in the hope of collecting return for its shareholders.

Since Burford Capital and Applicant have focused their efforts on Temur, Temur has already responded to expansive discovery in the United Kingdom. On July 19, 2020, Temur disclosed 819 emails from 2014 to 2016, redacted bank account statements, and a number of other documents. (*See* Temur's Standard Disclosure, ECF No. 2-5 at 13–27.) Temur's disclosure statement explained that in 2018, based on professional advice that he received long before he was party to a judgment enforcement action, Temur had implemented a policy of deleting emails for security reasons. The letter from Temur's security company, Team Fusion, specified that it advised Temur and the Akhmedov family for over five years on security issues, that Temur and his family were susceptible to targeted cyber-attacks due to the family's high profile, and Temur's email policy was designed to prevent such attacks.

On July 23, 2020, the High Court of England and Wales ordered Temur to give his electronic devices to a forensic IT review, including all of his user-names and passwords. (July 23, 2020 High Court Order, ECF No. 2-5.) Temur consented to The Aon Centre receiving the data for a first review and production to *his* solicitors to be reviewed for relevance. Disregarding the process ordered by the High Court of England and Wales, Applicant now seeks to re-litigate discovery issues in the United States and to compel Google to produce an unlimited amount of data regarding Temur's accounts and private communications.

## III.  ARGUMENT

### A.  Temur Has Standing and a Right to Intervene

"[I]t is well-settled that a party against whom the requested information will be used has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." *In re Ambercroft Trading Ltd.*, No. 18-MC-80074-KAW, 2018 WL 4773187, at *4 (N.D. Cal. Oct. 3, 2018) (citation omitted); *see also In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("The precedent in point is uniform and we adhere to it. A person situated . . . against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the

section provides is being abused.").

Temur also satisfies the requirements to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). Under that rule, a court must grant a request to intervene if: (1) the motion is timely; (2) the movant "claims an interest relating to the property or transaction which is the subject of the underlying action"; (3) the movant "is so situated that the disposing of the action may as a practical matter impair or impede his ability to protect that interest"; and (4) the existing parties to the action do not adequately represent the movant's interest. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citing Fed. R. Civ. P. 24(a)(2)). Courts should broadly interpret these requirements in favor of intervention. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted). Because Temur satisfies each requirement, this Court should permit him to intervene.

*1. Timeliness.* Temur's motion is timely. Applicant filed her Section 1782 application on September 16, 2020, and Temur promptly responded with this motion. *See In re Application of Applicant Akhmedova*, Case No. 2:20-mc-00158-JLS, Dkt. No. 1 (N.D. Cal. Sept. 16, 2020).

*2. Interest in intervening.* Temur has a strong interest in protecting his private communications and metadata. Applicant's extremely broad request seeks production of every email that Temur has ever sent and received using Google. (*See* ECF No. 1 at 10.) Further, Applicant requests "all metadata and subscriber information" associated with Temur's accounts. (ECF No. 1 at 9.) Because Google collects location metadata, granting unrestrained access to that information would divulge a wealth of private detail that has no bearing on the English court proceeding.

*3. Interest impaired absent intervention.* Without intervening, Temur has no way of protecting his privacy interests. And if Temur cannot be heard in this Court, his interest would be impaired because Applicant could obtain discovery without the Court being informed of her Section 1782 abuses.

*4. Existing parties.* Last, neither Applicant nor Google is in a position to protect Temur's interests. Applicant's interest lies in pursuing her suit against Temur in England, and nothing suggests that Google would mount a defense of Temur's privacy interests of its own accord.

For these reasons, Temur has standing and a right to intervene to protect his interests in this matter.

### B. Applicant Fails to Satisfy the Requirements of 28 U.S.C. § 1782

Section 1782 provides for "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see* 28 U.S.C. § 1782. The statute imposes three mandatory requirements for a Section 1782 application:

(1) The person (or entity) from whom discovery is sought must reside in the district of the court entertaining the application;

(2) The discovery must be "for use in" a foreign proceeding before a foreign tribunal; and

(3) The application must be made by a foreign tribunal or "an interested person."

*See* 28 U.S.C. § 1782(a).

When an applicant fails to meet any of these requirements, the court must deny the application. *See In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 380 (S.D.N.Y. 2019).

Here, the Application does not satisfy the second requirement because Applicant cannot establish that her requested discovery is "for use in" foreign proceedings. 28 U.S.C. § 1782(a). Applicant's discovery request is all-encompassing. "The key question . . . is not simply whether the information sought is relevant [which it is not], but whether [the applicant] will actually be able to use the information in the proceeding." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 120 (2d Cir. 2015). An applicant must be in a position to have the foreign tribunal consider the evidence or to be able to submit it in the foreign action. *In re Accent Delight Int'l Ltd.*, 869 F.3d at 131. Thus, "even if discovery is 'useful' to an applicant," the discovery is not "for use in a [foreign] proceeding" unless the applicant can "introduce th[e] information as evidence in that proceeding." *In re Sargeant*, 278 F. Supp. 3d 814, 821-22 (S.D.N.Y. 2017).

In this proceeding, Applicant has requested vast amounts of data that has no bearing on the English court proceeding. Applicant requests *all* of Temur's emails, metadata, and subscriber information hosted by Google. (ECF No. 1 at 9–10.) This request encompasses reams of private, personal emails, documents, photos and metadata that do not pertain to the foreign proceeding.

Applicant has no legitimate interest in the totality of Temur's emails and metadata, let alone a "practical ability to place [those materials] before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869F.3d 121, 131 (2d Cir. 2017)). Because Applicant is seeking troves of discovery wholly unrelated to the foreign proceeding, the discovery fails to meet the threshold requirement that it be "for use in a foreign proceeding" and her request should be denied. 28 U.S.C. § 1782(a).

Further, Section 1782 may issue only to aid a "foreign proceeding [that] is *adjudicative* in nature." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998) (emphasis added). "Adjudicative" here means discovery that will move the needle "with respect to the merits" of the foreign dispute. *Id.* at 28. Section 1782 bars discovery when an "already extant judgment is merely being enforced." *Id.* That restriction prohibits out using Section 1782 to identify and collect assets. *Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14 CIV. 9997 CM, 2015 WL 518567, at *2 (S.D.N.Y. Feb. 5, 2015); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015) ("[N]either pre-judgment attachment nor post-judgment proceedings . . . are 'adjudicative' in nature.").

The English courts resolved the merits question at issue—Applicant's entitlement to her and Mr. Akhmedov's marital assets—back in 2016. An unrestrained inquiry into Temur's emails in hopes of tracing the history of specific assets does not touch on the merits. Because the proceeding launched by Applicant after her divorce serve as a vehicle to enforce an "already extant judgment," Section 1782 is not available to Applicant. *Euromepa*, 154 F.3d at 27.

### C.   Discretionary Factors Also Weigh Against Applicant's Request

Even assuming the Application met Section 1782's requirements, the Court is not required to grant a Section 1782 application merely because it has authority to do so. *Intel*, 542 U.S. at 264. The Supreme Court has identified several factors to guide that discretion. *See id.* at 264-65. Courts consider whether:

(1) The person from whom discovery is sought is a participant in the foreign proceeding;

(2) The foreign court is receptive to U.S. judicial assistance, which includes considering "the nature of the foreign tribunal, [and] the character of the proceedings underway abroad";

(3) The Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions;

(4) The requested discovery is "unduly intrusive or burdensome."

Here, the Court should exercise its discretion to deny Applicant's request for discovery based on these factors as well.

*Intel* Factor No. 1:  Because Google is not a party to the English court proceeding, this factor weighs in favor of granting the application. *In re MoneyOnMobile, Inc.*, No. 19-MC-80128-VKD, 2019 WL 2515612, at *2.

*Intel* Factor No. 2:  "[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008).  Courts have denied requests for discovery when the foreign tribunal expressly says that it does not want the U.S. federal court's assistance. *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84-85 (2d Cir. 2004).  Nothing in the Application here suggests that the English High Court is either solicitous of assistance or disinclined to receive it, but the discovery sought is so overbroad and all-encompassing that there is no conceivable claim that the English court would make use of most, if not all, of the information. This factor thus weighs in favor of denial.

*Intel* Factor No. 3:  By immediately seeking resolution of her discovery dispute in the United States, Applicant attempts an end-run around the United Kingdom proceeding.  Google operates in the United Kingdom, and is subject to that country's robust data protection and privacy laws, yet nothing here suggests that Applicant first sought discovery of the requested materials in accordance with local law. *In re Degitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (granting a motion to quash, in part, for the failure to attempt discovery in France before filing the Section 1782 application).  Moreover, the UK Court has already made orders in relation to the information Applicant's application seeks to uncover.  There is no reason to believe the Courts of the United Kingdom lack the ability to apply their laws in respect to this disclosure, nor that they are unable to interpret the parameters and requirements of their own laws

better than Courts of foreign jurisdictions. This factor thus weighs heavily against the proposed subpoena.

*Intel* Factor No. 4: The Court should also exercise its discretion to deny the Application because it is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Applicant's request seeks to allow her to have unrestricted access to read every email Temur has ever sent and received using Google. What is more, Applicant also requests unrestrained access to all metadata associated with Temur's accounts—that means *inter alia* that Applicant would know when and where Temur was each time his phone had a cellular or Wi-Fi connection. Given how frequently people check email from their cell phones, granting Applicant's request would be tantamount to handing her a detailed log of Temur's whereabouts spanning years. Such data could reveal a wealth of private detail about Temur's familial, political, professional, religious, and personal associations.

Applicants under Section 1782 must sufficiently tailor their requests to the foreign litigation issues. *In re Degitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (denying Section 1782 request as overly broad). Because Applicant fails to tailor her request at all, the Court should decline to issue the subpoena. *See Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146 (D. Mass. 2009) (rejecting a sweeping request for "all metadata" and requiring proponents to tailor their requests to specific documents and emails).

Taking the full context into account, it is apparent that Applicant is abusing the Section 1782 process to discover vast amounts of private data irrelevant to the English proceeding. Her discovery requests are not bound by any time-frame, date range, or limitations on the persons with whom Temur is communicating. Issuing the subpoenas would necessarily and needlessly divulge a vast quantity of Temur's private communications and data. Such grossly over broad discovery is not permitted in the United States and this Court should exercise its discretion to deny it here as well.

### D. The Proposed Subpoena Is Invalid Under Rule 45

Similar to the fourth *Intel* factor, Federal Rule of Civil Procedure 45 requires a party serving a subpoena to take reasonable steps to avoid imposing "undue burden or expense on a

person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  As explained above, Applicant's over broad request fails to satisfy this requirement and places an undue burden on Google.  Rule 45 thus serves as another basis on which to decline issuing the subpoena.

## IV.     CONCLUSION

For the foregoing reasons, Proposed Intervenor Temur Akhmedov requests that this Court grant his request to intervene and deny the Ex Parte Application under 28 U.S.C. § 1782.

Dated:  September 21, 2020           LARSON O'BRIEN LLP

By:  /s/ Stephen G. Larson
Stephen G. Larson
Steven E. Bledsoe
Paul A. Rigali

Attorneys for Proposed Intervenor
TEMUR AKHMEDOV