Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: 650.838.4300
Facsimile: 650.838.4350

*Attorney for Respondent Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF TATIANA AKHMEDOVA,<br><br>Applicant. | Case No. 20-mc-80156-VKD<br><br>**RESPONDENT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY SUBPOENA AND TO AMEND THE COURT'S ORDER DATED OCTOBER 6, 2020**<br><br>Date:     December 15, 2020<br>Time:    10:00 a.m.<br>Judge:   Hon. Virginia M. DeMarchi<br>             Courtroom 2, 5th Floor |

## NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY

**PLEASE TAKE NOTICE** that on December 15, 2020, at 10:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 2, Fifth Floor, of the United States District Court for the Northern District of California, located at 280 S. First Street, San Jose, CA 95113, Respondent Google LLC ("Google") will, and hereby does, move to quash or modify the subpoena issued by Applicant Tatiana Akhmedova ("Applicant") which seeks, among other things, the contents of four Google email accounts (the "Accounts") in connection with litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340) (the "Subpoena"). In addition, Google moves to amend the preservation portion of the Court's Order dated October 6, 2020 (the "Order") to require only preservation of the Accounts.

Google brings this motion under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires the court for the district where compliance is required (the Northern District of California for Google, which is headquartered in Mountain View) to quash a subpoena that requires disclosure of protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Julie E. Schwartz, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Google respectfully requests that the Court quash or modify the Subpoena to exclude Request No. 2, which seeks the content of the Accounts, on the grounds that the request runs afoul of the federal Stored Communications Act, 18 U.S.C. § 2701 *et seq*. and on the grounds that the discovery at issue should be sought from Temur Akhmedov. Google additionally requests that the Court narrow the Order to require only preservation of the Accounts, as Google is unable to discern its obligations under the Order. Applicant consents to the amendment of the preservation portion of the Order.

DATED: November 6, 2020

PERKINS COIE LLP

By: */s/ Julie E. Schwartz*
   Julie E. Schwartz

**TABLE OF AUTHORITIES**

Page

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND .................................................................................................................. 3
    A. Applicant Obtained Leave to Serve the Subpoena .................................................. 3
    B. Google Attempted to Help Applicant and Mr. Akhmedov Access the Accounts .................................................................................................................. 4
    C. Google Timely Objected to the Subpoena and Met and Conferred ........................ 4
    D. Google Produced Non-Content Information to Attempt to Resolve this Dispute ..................................................................................................................... 5
III. ARGUMENT ........................................................................................................................ 6
    A. The SCA Prohibits Google from Disclosing the Contents of the Accounts ........... 6
        1. Applicant has not established that the lawful consent exception to the SCA applies ............................................................................................ 7
        2. Applicant must attempt to obtain the content of the Accounts from Mr. Akhmedov ............................................................................................... 8
        3. The Preservation Order Should be Narrowed ........................................... 10
IV. CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Artec Grp., Inc. v. Klimov*,
   No. 15-CV-03449-RMW, 2016 WL 4474614 (N.D. Cal. Aug. 25, 2016) ...............................10

*Asset Value Fund Ltd. P'Ship v. Care Grp., Inc.*,
   No. 97Civ.1487 (DLC)(JCF), 1997 WL 706320 (S.D.N.Y. Nov. 12, 1997)...........................10

*Ball v. Cnty. of Riverside*,
   No. CV 14-80081-MISC-JST (KAW), 2014 WL 12607805 (N.D. Cal. Apr. 25, 2014) .................................................................................................................................9

*Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*,
   293 F.R.D. 112 (E.D.N.Y. 2013) ............................................................................................9

*In re CareSource Mgmt. Grp. Co.*,
   289 F.R.D. 251 (S.D. Ohio 2013) ...........................................................................................9

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................................................................8

*In re Subpoena Duces Tecum to AOL, LLC*,
   550 F. Supp. 2d 606 (E.D. Va. 2008).................................................................................6, 8

*In re White Tail Oilfield Servs., L.L.C.*,
   No. 11–0009, 2012 WL 4857777 (E.D. La. Oct. 11, 2012).....................................................9

*Kessler v. Palstar, Inc.*,
   No. 3:11-cv-35, 2011 WL 4036689 (S.D. Ohio Sept. 9, 2011) .............................................10

*Negro v. Superior Court*,
   230 Cal. App. 4th 879 (2014), *as modified* (Nov. 18, 2014) ..........................................2, 7, 8

*O'Grady v. Superior Court*,
   139 Cal. App. 4th 1423 (2006) ...........................................................................................6, 9

*Recycled Paper Greetings, Inc. v. Davis*,
   No. 1:08-MC-13, 2008 WL 440458 (N.D. Ohio Feb. 13, 2008) .............................................9

*StoneEagle Srvs., Inc. v. Pay-Plus Sols., Inc.*,
   No. 1:15-MC-00010, 2015 WL 1022083 (N.D. Ohio Mar. 9, 2015) .....................................10

*Suzlon Energy Ltd. v. Microsoft Corp.*,
   671 F.3d 726 (9th Cir. 2011)...............................................................................................6, 8

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004)..................................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

18 U.S.C. § 2701 .................................................................................................................. passim

18 U.S.C. § 2702 .................................................................................................................... 1, 6, 7

28 U.S.C. § 1782 .................................................................................................................... 1, 3, 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 9

Google Takeout (https://takeout.google.com/settings/takeout) ...................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Respondent Google LLC ("Google") respectfully requests that the Court quash the subpoena (the "Subpoena") issued by Applicant Tatiana Akhmedova ("Applicant") in this proceeding under 28 U.S.C. § 1782.

The Subpoena seeks the content of four accounts[1] (the "Accounts") that Applicant believes to be associated with her son Temur Akhmedov. Mr. Akhmedov has provided declarations in the underlying English proceeding that he is the subscriber of the Accounts, but these declarations are insufficient to verify that fact. For one, Mr. Akhmedov does not have passwords to any of the Accounts. He also cannot access any recovery options for the Accounts, locate any of the mobile devices associated with the Accounts, or identify any phone numbers associated with the Accounts; nor has he followed Google's instructions to obtain new SIM cards to regain access to the Accounts using the associated mobile devices. Moreover, Applicant claims that Mr. Akhmedov has a pattern of deceptive behavior and has allegedly misrepresented facts to the English court.

Based on these facts, Google cannot comply with the Subpoena consistent with the federal Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (the "SCA"). The SCA generally bars Google from producing the content of an account, subject to certain exceptions. One exception permits production pursuant to *lawful* consent from the account holder. *See* 18 U.S.C. § 2702(b)(3). But Google cannot verify that Mr. Akhmedov is the account holder because he cannot access any of the four Accounts and does not possess even basic account recovery information. These facts, especially when considering Applicant's claims of Mr. Akhmedov's previous pattern of deceptive behavior raises serious doubts about whether he is the legitimate

---

[1] The accounts involved are (1) temur@akhmedov.net; (2) temur@stecapital.net; (3) khyshen@gmail.com; and (4) temur.akhmedov1993@gmail.com. Two of the accounts, temur@stecapital.net and temur@akhmedov.net, have been deleted and purged. *See* Declaration of Julie E. Schwartz, ¶ 11. Therefore, only the khyshen@gmail.com and temur.akhmedov1993@gmail.com accounts are at issue in this Motion.

-1-

subscriber to these Accounts, and disclosing content to an unauthorized third party could expose Google to liability under the SCA.

To ensure that consent is lawful, Google has developed a verified-consent process that requires the account holder to obtain a court order (or entered stipulation) directing the account holder to (1) log into the account at issue; (2) prepare and send an email to Google from the relevant email account that attaches the court order; and (3) provide express consent to disclosure. In *Negro v. Superior Court*, 230 Cal. App. 4th 879 (2014), *as modified* (Nov. 18, 2014), the Court found this exact process sufficient to demonstrate lawful consent.

Applicant should work with Mr. Akhmedov to undertake this process.  Separately, Applicant agreed to review a non-content production before Google's deadline to move to quash to attempt to resolve this dispute.  Per that agreement, Google produced basic subscriber information and, where available, non-content headers from the Accounts (which includes the "to" and "from" fields of any email communications).[2]  Basic subscriber information may include information regarding what phone numbers, for example, are associated with the Accounts. Using this information, Mr. Akhmedov may attempt to recover access and, if successful, use Google's verified-consent process to produce the content of the Accounts or produce any content himself.[3]  Although the law requires Applicant to exhaust all options for obtaining content from the account holder, Applicant reneged on her agreement to review the production in advance of Google's deadline to move to quash, necessitating this Motion.

In addition, Google also respectfully requests that the Court modify the following portion of its October 6, 2020 Order: "Google shall preserve documents, information and evidence, electronic or otherwise, in its possession, custody or control that contain information potentially relevant to the subject matter of the Ms. Akhmedova's request." ECF No. 12 at 2.  Google is unable to identify all potentially responsive evidence in its possession, custody, or control, as it is

---

[2] Google made this production in response to Request No. 1.  That Request is not in dispute.

[3] If Mr. Akhmedov has access to the Accounts, he may download his own content using Google Takeout (https://takeout.google.com/settings/takeout).

a stranger to the underlying litigation. Google requests that the Court limit the Preservation Order to require preservation only of the Accounts. Applicant has agreed to this narrowing.

Accordingly, Google respectfully requests that the Court grant its Motion in its entirety.

## II. BACKGROUND

### A. Applicant Obtained Leave to Serve the Subpoena.

Applicant filed an *ex parte* application for discovery pursuant to 28 U.S.C. § 1782 on September 16, 2020. ECF No. 1 (the "Application"). The Application sought the Court's authorization to subpoena Google for information about email accounts that Applicant asserts belong to her son, Temur Akhmedov, but which Mr. Akhmedov allegedly cannot access. *See generally id.* The Application contains an extensive summary of Applicant's underlying foreign litigation and explains that Applicant believes the Accounts belong to her son. *See generally id.*

As support for this claim, Applicant points to Mr. Akhmedova's declarations in the underlying English proceeding that he is the subscriber of the Accounts. Application at 5. However, Mr. Akhmedov does not have passwords to the Accounts. *See id.* at 7. He also cannot access any recovery options for the Accounts, and he claims that he cannot recall what phone numbers are associated with the Accounts. *See id.* at 7-8. Applicant also claims that Mr. Akhmedov has a pattern of deceptive and unethical behavior, and alleges that he misrepresented facts to the English court. *See id.* at 6-7 (alleging that Mr. Akhmedov is lying about no longer having access to documents and emails, or has improperly destroyed them since that date); *id.* at 8 (alleging that Mr. Akhmedov has been deleting emails after the English court ordered him to deliver his electronic devices to Applicant for inspection).[4]

On October 6, 2020, the Court granted the Application and authorized Applicant to seek discovery from Google—(1) non-content information regarding the Accounts (Request No.1),

---

[4] On September 21, 2020, Mr. Akhmedov filed a motion seeking leave to intervene, including for the purpose of opposing the Application. *See* ECF No. 5. Pursuant to a stipulation by the parties, Mr. Akhmedov subsequently withdrew his motion to the extent it sought leave to oppose the Application. *See* ECF No. 10 at 2. The Court granted the remainder of Mr. Akhmedov's motion to intervene "for the limited purpose of receiving notice of filings, orders, and other docket entries in this action, and in order to protect his interests in the event he believes that Applicant is seeking discovery that is broader than previously agreed or set forth in the Application." *Id.*

1  and (2) the content of the Accounts (Request No.2).  ECF No. 12.  On October 27, 2020, the

2  Court amended this order "to correct an email address," from temur.akhmedov@gmail.com in the

3  original Order, to temur.akhmedov1993@gmail.com.  ECF No. 18.

### B. Google Attempted to Help Applicant and Mr. Akhmedov Access the Accounts.

In August, before Applicant applied to the Court for this discovery, her American and English counsel met with Google to discuss whether they could obtain the contents of the Accounts if Mr. Akhmedov did not have access to them.  *See* Declaration of Julie E. Schwartz ("Schwartz Decl."), ¶ 2.  Google made it clear that a production of content would require Mr. Akhmedov to be able to log into the Accounts to verify his account ownership and provide consent pursuant to Google's verified-consent process.  *Id*.  Google also advised on ways Mr. Akhmedov could potentially regain access to the Accounts.  In particular, Google explained that even if Mr. Akhmedov had lost the mobile devices associated with the Accounts two-factor authentication settings, he could regain access by purchasing new SIM cards for the same phone numbers.  *Id*.  As a first step, Google told Applicant's counsel that Mr. Akhmedov should obtain new SIM card(s) to at least attempt account recovery via two-factor authentication.  *Id*.  Google never learned from Applicant regarding whether Mr. Akhmedov ever tried to do this.  *Id*.  Google also advised Applicant's counsel that if Applicant pursued a 28 U.S.C. § 1782 application to obtain the contents of the Accounts, Google would still require verified consent.  *Id*.  In other words, Mr. Akhmedov would still need to be able to access the Accounts even if Applicant used a Section 1782 request to seek the Accounts' contents.  *Id*.

### C. Google Timely Objected to the Subpoena and Met and Conferred.

Pursuant to an agreement between the parties, Applicant served Google via email with the Subpoena.  Schwartz Decl., ¶ 3, Ex. A ("Subpoena").  The parties agreed that the Subpoena's effective service date would be October 9, 2020 to allow the parties a full two weeks to meet and confer.  *Id*., ¶ 3, Ex. B.  Google notified the account holders that were included in the Court's Order and advised that pursuant to Google's policies, they had until October 29, 2020 to object to Google's production of non-content in response to the Subpoena.  *Id*., ¶ 6.

On October 9, 2020, Google's outside counsel and Applicant's counsel met and conferred about the Subpoena. Schwartz Decl., ¶ 4. Applicant's counsel agreed to withdraw Subsection (v) of Request No. 1, which seeks "any other email address where Temur Akhmedov is determined to be the subscriber or account holder," such that the Subpoena covers only the four identified Accounts. Schwartz Decl., ¶ 4; *see* Subpoena. Applicant's counsel also represented that Google was to direct its production to a third party. *Id*. On October 15, 2020, Google served its objections to the Subpoena on Applicant's counsel. *See id.*, ¶ 5, Ex. C.

On October 20, 2020, Google's and Applicant's outside counsel met and conferred a second time. *See id.*, ¶ 7. The parties discussed (1) extending Google's deadline to move to quash the Subpoena and (2) producing responsive non-content information first, after the user notice period expired on October 29, 2020, which Applicant could potentially use to help Mr. Akhmedov recover access to the Accounts, to attempt to avoid litigating the SCA issues. *Id*.

Consistent with this, the parties filed a stipulation to extend Google's deadline to respond to the Subpoena by two weeks, to November 6, 2020, which the Court granted on October 22, 2020. *See* ECF No. 16. On November 4, 2020, Applicant's counsel agreed to limit its preservation request to only the four Accounts which were identified in the Subpoena. *See* Schwartz Decl., ¶ 10, Ex. E.

**D.     Google Produced Non-Content Information to Attempt to Resolve this Dispute.**

On October 29, 2020, Google produced responsive non-content information for the Accounts to Aon, a third-party data analytics service tasked with reviewing the production for privileged information before sharing it with Applicant, as Applicant had instructed. *See id.*, ¶ 8. On October 28 and November 2, 2020, before it had even received Google's non-content production from Aon, Applicant sent additional emails arguing that Google must produce the Accounts' content. *See id.*, ¶ 9, Ex. D. Google replied to these emails on November 2, 2020, seeking confirmation that Applicant would review the non-content production (as previously agreed to) before the parties discussed the matter again, and on November 3, 2020, explaining Google's position as to cases Applicant's counsel identified. *See id*.

1  Applicant's counsel at first refused to review the non-content production, but then
2  indicated that they would not receive Google's non-content production from Aon until November
3  6, 2020—Google's deadline to move to quash the Subpoena. *See* Schwartz Decl., ¶ 10, Ex. E.
4  Applicant declined to extend Google's deadline to respond, even though this schedule allowed no
5  time for Applicant to determine whether the non-content could help Temur Akhmedov regain
6  access to the Accounts and provide verified consent. *See id.*, ¶ 10. This Motion follows.

### III.   ARGUMENT

**A.   The SCA Prohibits Google from Disclosing the Contents of the Accounts.**

The SCA prohibits private parties from compelling production of the content of an account holder's electronic communications from service providers such as Google by service of a subpoena or court order, subject to limited exceptions. 18 U.S.C. § 2702(a)(1), (2); 18 U.S.C. § 2702(b)(1)-(9). The purpose of the SCA is "to protect internet subscribers from having their personal information wrongfully used and publicly disclosed by 'unauthorized private parties.'" *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 610 (E.D. Va. 2008) (quoting Sen. Rep. No. 99-541, 2d Sess., p. 3 (1986), reprinted in 1986 U.S. Code Cong. & Admin. News, pp. 3555, 3557).

There is no exception under the SCA for civil discovery demands. *See, e.g.*, *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011) (non-governmental entities may not obtain the content of communications with a civil discovery demand because it would "invade[] the specific interests that the [SCA] seeks to protect.") (internal quotation marks omitted); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073-74 (9th Cir. 2004) (civil discovery demand for content is not valid legal process under the SCA). Applicant seeks email communications, which are the prototypical type of content barred by the SCA. *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1441–47 (2006).

For the reasons discussed below, Google cannot comply with the Subpoena, and it should be quashed to exclude content.

### 1. Applicant has not established that the lawful consent exception to the SCA applies.

A provider may disclose the contents of a communication with the consent of the account holder, but the consent must be lawful. 18 U.S.C. § 2702(b)(3). Lawful consent requires a showing of actual consent from the user and "is not satisfied by consent that is merely constructive, implied in law, or otherwise imputed to the user by a court." *Negro*, 230 Cal. App. 4th at 889. To that end, verification is necessary to establish lawful consent under the SCA. *Cf. Negro.*, 230 Cal. App. 4th at 897, n.3 (doubting that "implied consent—even implied in fact—can constitute the 'lawful consent' contemplated by the Act" for purposes of compelling disclosure).

Mr. Akhmedov's declarations that he is the account holder are legally insufficient because they cannot be verified. *Id.* at 896 (explaining that "satisfactory proof of the user's consent" is necessary to avoid subsequent claims that consent was ineffective). Troublingly, Mr. Akhmedov does not have valid passwords to the Accounts; he cannot access any recovery options for the Accounts; he cannot locate any of the mobile devices associated with the Accounts; he apparently does not know which phone numbers are associated with the Accounts; he has not followed Google's instructions to obtain new SIM cards to regain access to the Accounts using the associated mobile devices; and he has allegedly engaged in a pattern of deceptive and destructive behavior in the underlying English court. *See* Schwartz Decl., ¶ 2; Application at 5-8. All of this makes it unclear whether Mr. Akhmedov in fact is the user of any of the Accounts. That he has hard copies of emails from "his personal Gmail account," Application at 6, does not establish that he has access or rights to the Accounts.

Google has developed a verified-consent process that is consistent with the SCA to ensure that consent to production of content is lawful. This process involves Applicant obtaining a court order or entered stipulation directing (1) the account holder to log in to the account at issue; (2) prepare and send an email from the account at issue to Google that attaches the court order; and (3) provide their express consent to disclosure. Indeed, the California Court of Appeal found lawful consent based on this process. *Negro*, 230 Cal. App. 4th at 893-94 (describing Google's verified-consent process). The account holder in that action was required to enter into an order

1    with the findings that Google has requested here, log into the email account at issue, and send that
2    order to Google via the account. *Negro*, 230 Cal. App. 4th at 893-94. The Court concluded that
3    this process was sufficient to demonstrate lawful consent. *Id.* at 895.

4    Google made a non-content production to provide Applicant with the recovery options
5    associated with the Accounts. This would allow Mr. Akhmedov to potentially recover access to
6    the Accounts to undertake the verified-consent process (or produce any content to Applicant
7    himself). Applicant, citing timing concerns, has reneged on her agreement to review the non-
8    content production before Google's deadline to file the motion to quash. However, it still remains
9    possible that Mr. Akhmedov can use the verified-consent process based on information that
10   Applicant learns from the non-content production.

11   At bottom, producing the content of the Accounts would be inconsistent with the purpose
12   of the SCA—to protect against wrongful disclosures to unauthorized parties. *In re Subpoena*
13   *Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 610. It would also present legal risk to Google
14   because, if it is sued under the SCA for a wrongful disclosure, it will bear the burden of
15   establishing consent. *See, e.g., In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823
16   (N.D. Cal. 2020) ("[T]he party seeking the benefit of an exception" has "the burden to establish
17   the existence of consent.").

18   Accordingly, Applicant should be required to review the non-content production and see if
19   access to the Accounts can be recovered. Only then can Google verify consent and produce
20   content in response to the Subpoena.

21   **2.    Applicant must attempt to obtain the content of the Accounts from Mr.
22         Akhmedov.**

23   In addition, Applicant's subpoena is improper because she has not exhausted all account
24   recovery options with Mr. Akhmedov. Under the SCA, discovery from Google, a non-party,
25   should occur only if the information is not available through discovery from the parties to the
26   litigation themselves. *See, e.g., Suzlon Energy*, 671 F.3d at 730 (noting that the inability to obtain
27   documents from a provider does not affect the ability to obtain the documents directly from the
28   user). Indeed, email service providers are a "kind of data bailee to whom email is entrusted for

delivery and secure storage." *O'Grady*, 139 Cal. App. 4th at 1447.  While such service providers are "legally disabled" from disclosing content in response to a civil subpoena without the consent of the account holder, "[t]his does not render the data wholly unavailable; it only means that the discovery must be directed to the owner of the data, not the bailee to whom it was entrusted." *Id.*[5]

This is consistent with the general principle that non-parties should not be burdened with discovery that can be obtained from parties to the litigation. *See, e.g., Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 117 (E.D.N.Y. 2013) ("[T]he Court sees no basis at this time why Defendant should go through a third-party provider to access Plaintiff's social networking postings when Plaintiff has access to this information herself.") (collecting cases directing parties to produce social media records themselves); *In re White Tail Oilfield Servs., L.L.C.*, No. 11–0009, 2012 WL 4857777, at *3 (E.D. La. Oct. 11, 2012) (ordering parties to cooperate regarding use of provider's self-service tool and defendant to produce the contents of his account to plaintiff's counsel on his own).

Indeed, a party "must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party." *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013).  It is not Google's "obligation to determine which documents have, or have not, been produced to" parties to the litigation.  *Id.*  Thus, motions to quash are routinely granted when parties attempt to seek documents from non-parties that are either available to or in possession of a party. *See e.g., Recycled Paper Greetings, Inc. v. Davis,* No. 1:08-MC-13, 2008 WL 440458, at *4–5 (N.D. Ohio Feb. 13, 2008) (granting a motion to quash subpoena, in part, because "the vast majority of the

---

[5] The Court should also quash or modify the Subpoena because it is overbroad.  All discovery requests must seek relevant information and be proportional to the needs of the case. *See, e.g.*, Fed. R. Civ. P. 26(b)(1); *Ball v. Cnty. of Riverside*, No. CV 14-80081-MISC-JST (KAW), 2014 WL 12607805, at *1 (N.D. Cal. Apr. 25, 2014). (subpoena asking non-party Google to identify and produce "any and all [street view] photos" posted "at any time" along a one-mile stretch of road is overbroad and unduly burdensome).  Applicant seeks "all" data so that a third party can review Google's production for relevance, but these requests are not tailored to seek relevant information in the first instance. *See* Schwartz Decl., ¶ 4.  The Subpoena is also overbroad because it defines "you" and "your" to include not only Google, but also its attorneys, such that Request No. 2 calls for information covered by the attorney-client and work product privileges. *See* Subpoena.

relevant documents" could have or had been produced by a party to the litigation); *Asset Value Fund Ltd. P'Ship v. Care Grp., Inc.*, No. 97Civ.1487 (DLC)(JCF), 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997) (quashing subpoena that bore no "substantive differences" from document request served on party).[6]

Here, Applicant has not established that Mr. Akhmedov has attempted all recovery options for the Accounts. There may be information in Google's non-content production that helps Mr. Akhmedov restore access to the Accounts — at which point he will be able to provide the content Applicant seeks himself. Accordingly, Google should not be required to comply with the Subpoena for this reason as well.

### 3. The Preservation Order Should be Narrowed.

Google also requests that the Court narrow the Preservation Order to cover only the Accounts because Google is unable to locate and preserve the evidence covered by the Order. Applicant has consented to this proposed narrowing of the Order. *See* Schwartz Decl., Ex. E. In determining whether to issue a preservation order, courts in this District typically consider three factors: "(1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved." *Artec Grp., Inc. v. Klimov*, No. 15-CV-03449-RMW, 2016 WL 4474614, at *2 (N.D. Cal. Aug. 25, 2016) (citations omitted) (collecting cases).

Here, Google cannot ascertain the evidence sought to be preserved because the Preservation Order broadly directs Google to preserve, without limitation, "documents,

---

[6] *See also Kessler v. Palstar, Inc.*, No. 3:11-cv-35, 2011 WL 4036689, at *2 (S.D. Ohio Sept. 9, 2011) (denying a plaintiff's subpoena of a non-party because it was "clearly duplicative of the document requested [from the Defendant]" on the grounds that "[r]equiring a non-party to obtain the same documents requested from the Defendant is overly burdensome"); *StoneEagle Srvs., Inc. v. Pay-Plus Sols., Inc.*, No. 1:15-MC-00010, 2015 WL 1022083, at *2 (N.D. Ohio Mar. 9, 2015) (denying Defendant's production request of a non-party where the request would require the non-party to produce documents that [Plaintiff] [was] "already required to produce").

information and evidence, electronic or otherwise, in its possession, custody or control that contain information potentially relevant to the subject matter of Ms. Akhmedova's request." ECF No. 12 at 2. Google, a non-party, does not understand what data might be "potentially relevant to the subject matter" of Applicant's request, or what data could be "evidence" in Applicant's foreign litigation. Accordingly, and given that Applicant has also consented to this narrowing, Google respectfully requests that the Court modify the Order to require preservation only of data for the Accounts.

### IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court quash the Subpoena to exclude the content of the Accounts. Google additionally requests that the Court modify the Protective Order to require only preservation of data for the Accounts.

DATED: November 6, 2020                    PERKINS COIE LLP

By: */s/ Julie E. Schwartz*
Julie E. Schwartz
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone:  650.838.4300
Facsimile:  650.838.4350

Attorney for Respondent
Google LLC