1  Julie E. Schwartz, Bar No. 260624
   JSchwartz@perkinscoie.com
2  PERKINS COIE LLP
   3150 Porter Drive
3  Palo Alto, CA 94304
   Telephone: 650.838.4300
4  Facsimile: 650.838.4350

5  *Attorney for Respondent Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF TATIANA AKHMEDOVA,<br><br>Applicant. | Case No. 20-mc-80156-VKD<br><br>**DECLARATION OF JULIE E. SCHWARTZ IN SUPPORT OF RESPONDENT GOOGLE LLC'S MOTION TO QUASH OR MODIFY SUBPOENA AND TO AMEND THE COURT'S ORDER DATED OCTOBER 6, 2020**<br><br>Date:     December 15, 2020<br>Time:    10:00 a.m.<br>Judge:   Hon. Virginia M. DeMarchi<br>Courtroom 2, 5th Floor |

1   I, Julie E. Schwartz, hereby declare as follows:

2   1.   I am a partner at the law firm of Perkins Coie LLP.  I have been retained as outside counsel for Respondent Google, LLC ("Google") in connection with the subpoena issued to it by Applicant Tatiana Akhmedova ("Applicant").  I make this declaration based upon personal knowledge, and if called upon to do so, I could and would testify competently to the facts set forth herein.

2.   I am informed of the following.  In August, before Applicant applied to the Court for this discovery, her American and English counsel met with Google to discuss whether they could obtain the contents of the Accounts if Mr. Akhmedov did not have access to them.  Google made it clear that a production of content would require Mr. Akhmedov to be able to log into the Accounts to verify his account ownership and provide consent pursuant to Google's verified-consent process.  Google also advised on ways Mr. Akhmedov could potentially regain access to the Accounts.  In particular, Google explained that even if Mr. Akhmedov had lost the mobile devices associated with the Accounts two-factor authentication settings, he could regain access by purchasing new SIM cards for the same phone numbers.  As a first step, Google told Applicant's counsel that Mr. Akhmedov should obtain new SIM card(s) to at least attempt account recovery via two-factor authentication.  Google never learned from Applicant regarding whether Mr. Akhmedov ever tried to do this.  Google also advised Applicant's counsel that if Applicant pursued a 28 U.S.C. § 1782 application to obtain the contents of the Accounts, Google would still require verified consent.  In other words, Mr. Akhmedov would still need to be able to access the Accounts even if Applicant used a Section 1782 request to seek the Accounts' contents.

3.   Pursuant to an agreement with Applicant's counsel, Applicant served Google with a subpoena by emailing the subpoena to me.  A true and correct copy of the subpoena is attached hereto as Exhibit A.  Applicant's counsel also agreed that the subpoena's effective service date would be October 9, 2020.  A true and correct copy of my email correspondence with Applicant's counsel, reflecting this agreement, is attached hereto as Exhibit B.

4.   On October 9, 2020, my colleague, Michael Bleicher, and I met and conferred with Applicant's counsel about the Subpoena.  Applicant's counsel agreed to withdraw Subsection (v)

of Request No. 1, which seeks "any other email address where Temur Akhmedov is determined to be the subscriber or account holder," such that the Subpoena covers only the four identified accounts. Applicant's counsel also represented that Google was to direct its production to a third party. According to counsel, that third party would review all documents for relevance and only share with Applicant's counsel those documents determined to be germane to Applicant's underlying dispute. Applicant's counsel suggested this approach might ameliorate Google's privacy concerns.

5. On October 15, 2020, Google served its objections to the Subpoena on Applicant's counsel. A true and correct copy of Google's objections is attached as Exhibit C.

6. Google notified the account holders that were included in the Court's Order and advised that pursuant to Google's policies, they had until October 29, 2020 to object to Google's production of non-content in response to the Subpoena.

7. On October 20, 2020, Michael Bleicher and I met and conferred a second time. The parties discussed (1) extending Google's deadline to move to quash the Subpoena and (2) producing responsive non-content information first, after the user notice period expired on October 29, 2020, which Applicant could potentially use to help Mr. Akhmedov recover access to the Accounts, to attempt to avoid litigating the SCA issues.

8. On October 29, 2020, Google produced responsive non-content information for the Accounts to Aon, a third-party data analytics service tasked with reviewing the production for privileged information before sharing it with Applicant, as Applicant had instructed.

9. On October 28, 2020 and November 2, 2020, before it had received Google's non-content production from Aon, Applicant's counsel sent me additional email, arguing that Google must produce the Accounts' content. I replied to these emails on November 2, 2020, seeking confirmation that Applicant would review the non-content production before the parties discussed the matter again (as previously agreed to) and on November 3, 2020, explaining Google's position as to cases Applicant's counsel identified. A true and correct copy of this correspondence is attached hereto as Exhibit D.

10.     Applicant's counsel at first refused to review the non-content production, but then indicated that they would not receive Google's non-content production from Aon until November 6, 2020—Google's deadline to move to quash the Subpoena. Applicant declined to extend Google's deadline to respond, even though this schedule allowed no time for Applicant to determine whether the non-content could help Temur Akhmedov regain access to the Accounts and provide verified consent. On November 4, 2020, Applicant's counsel agreed to limit its preservation request to only the four Accounts which were identified in the Subpoena. A true and correct copy of this email correspondence is attached hereto as Exhibit E.

11.     Two of the Accounts identified in the Subpoena, temur@akhmedov.net and temur@stecapital.net, have been deleted and purged.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of November, 2020, in Seattle, Washington.

By: */s/ Julie E. Schwartz*
    Julie E. Schwartz