1
2
3
4
5
6

HOLLAND & KNIGHT LLP
James H. Power *(pro hac vice)*
Daniel P. Kappes (SBN 303454)
50 California Street, 28th Floor
San Francisco, CA 94001
T 415.743.6900 | F 415.743.6951
E-mail: james.power@hklaw.com
E-mail: daniel.kappes@hklaw.com

Attorneys for Applicant
*Tatiana Akhmedova*

7
8
9
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN RE APPLICATION OF TATIANA
AKHMEDOVA,

                          Applicant,

REQUEST FOR DISCOVERY
PURSUANT TO 28 U.S.C. § 1782.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 20-mc-80156

**OPPOSITION TO GOOGLE LLC'S
MOTION TO QUASH SUBPOENA ISSUED
PURSUANT TO 28 U.S.C. § 1782**

Date: December 15, 2020
Time: 10:00 a.m.
Judge: Hon. Virginia M. DeMarchi
Courtroom 2, 5th Floor

## OPPOSITION TO GOOGLE LLC'S MOTION TO QUASH SUBPOENA

Applicant Tatiana Akhmedova ("Ms. Akhmedova" or "Applicant") submits this memorandum of law in opposition to Google, LLC's ("Google") motion to quash or modify the subpoena served on it pursuant to this Court's Order Granting Discovery in Aid of a Foreign Proceeding pursuant to 28 U.S.C. § 1782.  For the reasons set forth below, this Court should deny Google's motion, and direct it to immediately produce the requested information on the basis of the account holder's lawful consent under the federal Stored Communications Act, 18 U.S.C. § 2701, *et seq.*

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On September 16, 2020, Applicant filed an Application in this Court under 28 U.S.C. § 1782 (the "1782 Application") seeking discovery with respect to documents located in this judicial district in the possession or control of Google, LLC ("Google") for use in pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340) (the "English Proceeding").  Dkt. 1.  As this Court determined, this Application satisfies the statutory requirements of 28 U.S.C. § 1782: 1) the entity from which discovery is sought must reside in or be found in the district of the district court to which the application is made; 2) the discovery must be "for use in a proceeding in a foreign or international tribunal"; and 3) the application must be made "by a foreign or international tribunal" or by "any interested person."

In support of the 1782 Application, Applicant submitted the Declaration of Anthony J. Riem, which evidenced that in the English Proceedings Temur Akhmedov ("Temur") has identified ownership in four Google-hosted email accounts.  Dkt. 2 (Riem Decl.) ¶ 28.  As further set forth in Mr. Riem's declaration, Temur has alleged in the English Proceedings that he is unable to produce certain documents and information from his email accounts based on his inability to access the accounts, as a result of lost passwords and/or SIM cards necessary for recovery of the accounts.  Whether or not Temur's statements concerning his access are true, Applicant cannot obtain disclosure directly from Temur even with the assistance of a Court-appointed forensic IT expert, Aon.  Declaration of James H. Power ("Power Decl.") ¶ 2.  The English Court has therefore sanctioned and facilitated Applicant obtaining this information directly from Google.  In the English Proceeding, Temur has expressly consented to the disclosure of information related to these email accounts by

execution of four mandates, one for each of his email accounts, which include: temur.akhmedov1993@gmail.com; khyshen@gmail.com; temur@stecapital.net; and temur@akhmedov.net. Dkt. 2-8 (Riem Ex. 9) at 4-8. Specifically, in the four mandates (one for each of his email accounts) Temur states:

> "I consent to the disclosure of all data contained on or relating to my account of whatever nature (including, but not limited to, emails and documents (including deleted items), account/subscriber information and metadata) being produced to Stroz Freiberg Limited of The Aon Centre… I withdraw and waive any objection that I have made or could make to the production by Google of any data which is the subject of this consent and instruction pursuant to a subpoena or other court order in any jurisdiction, provided that the subpoena or other court order is consistent with this consent and instruction."

*Id.* The foregoing consent was later confirmed in this proceeding in the agreed Stipulation of the parties, wherein Temur states that he "consents to Applicant's Ex Parte Application (ECF No. 1) without qualification." Dkt. 9.

Based on the above showings, the Court granted the Application for an order authorizing her to obtain discovery in this District against Google, specifically, by serving a subpoena *duces tecum* for 1) non-content electronically-stored information ("ESI"), and 2) the content of the accounts, such as emails, documents and other information which would otherwise be available to the account holder. Dkt. 12, as amended at Dkt. 18. The Court directed that "Google shall produce the requested documents and information by the November 6, 2020 deadline previously stipulated by Ms. Akhmedova and entered as an order of the Court. Google shall produce the documents directly to the independent IT forensic expert appointed by the English Court, Aon…" Dkt. 18 at 2.

Google's counsel accepted service of the subpoena by email requesting information as authorized by this Court's order, effective on October 9, 2020. The parties agreed by stipulation that Google would produce the non-content information requested by October 30, 2020, allowing for expiration of Google's 14-day notice period following email notice to the account holder of the subpoena (which was sent by Google to the account on October 15, 2020). The non-content information was produced by Google on October 29, 2020 in accordance with this agreement and is

not the subject of the current motion.  Although Applicant agreed that she would review the non-content production to determine if any of the information contained therein would be of assistance in recovery of the email accounts through Google's account verification process (thus mooting any motion practice), such alternative means of obtaining the information is not relevant to Google's motion to quash the properly-issued Court order and subpoena directing Google to produce the information based on Temur's lawful consent.  In any event, to-date, no information has been gleaned from the non-content production as being helpful for the purposes of account recovery (Power Decl. ¶ 7), and Google does not point to any information it believes would assist.[1]

On October 15, 2020, Google served an objection letter setting forth objections to the requested productions, specifically, arguing that the request for production of the content of the four email accounts would be a violation of the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*  Google stated that the only form of lawful consent it would accept for the accounts was for Temur to execute Google's verification process, which requires access by the user to the account.  Dkt. 20-4.  The parties held several calls between October 9 and November 4, 2020, to meet and confer to resolve Google's objections, wherein counsel for Applicant explained that Temur has made sworn statements to the English Court concerning his loss of the recovery passwords, and telephone numbers (or the SIM cards connected to the recovery telephone numbers), and his inability to access the accounts.[2]  Applicant also advised on applicable caselaw governing "lawful consent" under the SCA, arguing that the written consent provided by Temur was sufficient under the SCA, and offering to provide any additional information Google might request in order to confirm the identity of Temur as the account holder or subscriber.

Notwithstanding the express consent provided by Temur as the subscriber to the accounts, Google seeks to quash the subpoena because it argues that producing the requested information may constitute a violation of the federal SCA.  Specifically, Google argues that 1) the SCA prohibits it from producing the contents of an account holder's information in response to a civil subpoena; 2)

---

[1] It is unclear how Applicant's review of non-content information would facilitate Temur gaining access to SIM cards, or assist him in remembering passwords.

[2] Google's argument that Temur should simply purchase new SIM cards (Dkt. 20 at 9) in order to facilitate account recovery has already been addressed in the English Proceeding, where Temur has been largely uncooperative.  Power Decl. Ex. 2.

the "lawful consent" exception under 18 U.S.C. § 2702(b)(3) is not met here; and 3) the information requested may not be relevant in the English Proceedings, and that Applicant must seek production of the emails from the account holder, Temur, directly, as opposed to from Google as the provider.

As set forth below, Google's objections under the SCA are overstated and misapply the current caselaw interpreting the statute to requests such as the one made here. Although Google has referenced one case where Google's account verification process was ***sufficient*** to establish lawful consent, Google fails to show that this process is ***necessary*** (or indeed the only way) to establish lawful consent. It is clear on the record that Google's requested method of verification is not possible in the present instance. Secondly, Google's argument that Applicant must first examine the non-content information produced by it for clues to assist in account recovery is incorrect. The non-content production is irrelevant to whether Applicant's request for information is authorized under the "lawful consent" exception of the SCA. Additionally, the objection raised by Google as to the relevance of information requested has already been resolved by this Court's determination under 28 U.S.C. § 1782 in that such documents and information have been specifically requested by the English Court, who has further stated that the information is relevant. Power Decl. Ex. 3. Finally, the record is clear why the documents have not been and cannot be obtained directly from Temur Akhmedov, and in light of his practical inability (or refusal) to access his account directly, Applicant is entitled to seek disclosure from Google on the basis of Temur's lawful consent.

## **ARGUMENT**

### **I.     GOOGLE HAS NOT MET ITS BURDEN OF PERSUASION ON ITS MOTION TO QUASH**

Fed. R. Civ. P. 45 governs the issuance of third-party subpoenas and motions to quash. Under Rule 45(d)(3), "the court must quash or modify a subpoena that:… (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies. "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales v. Google*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citation omitted). The party who moves to quash a subpoena bears the "burden of persuasion" under Rule 45(d)(3), but the party issuing the subpoena must demonstrate the discovery sought is relevant. *E.g., Loop Al Labs v. Gatti*, No. 15-798, 2016 WL 787924 (N.D. Cal.

1  Feb. 29, 2016).   Here, Applicant has already shown that the discovery sought is relevant for its

2  intended purpose in the English Proceeding.  Google bears the burden to show that no exception under

3  the SCA applies, namely that lawful consent under the SCA has not been established.   Google's

4  motion fails to make the required showing.

5  **II.       THE SUBPOENA WAS PROPERLY ISSUED IN THIS CIVIL ACTION**

6         Google argues in its motion to quash that that "[t]here is no exception under the SCA for civil

7  discovery demands" and therefore the SCA does not permit civil litigants to compel service providers

8  such as Google to produce the content of electronic communications in response to civil discovery

9  demands.  Dkt. 20 at 11 (citing *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir.

10  2011); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073-74 (9th Cir. 2004)).   But Google misstates the

11  holdings of these cases.  While *Suzlon* and *Theofel* hold that the SCA applies to civil litigations, it is

12  also true that the exception contained within the SCA also apply in the context of civil litigation,

13  namely the "lawful consent" exception.   Google may not hide behind the civil nature of this dispute

14  to escape its obligation to produce documents in response to a valid subpoena issued pursuant to a

15  discovery order of this Court.  As discussed in *Negro v. Super Ct.*, 230 Cal. App. 4th 879, 899-903

16  (2014), where a similar argument was made in the face of a civil subpoena served with the consent

17  of an account holder, the Court explicitly stated that "Google construes the Act to confer a blanket

18  exemption or immunity on service providers against compulsory civil discovery process. The Act

19  cannot properly be so construed." *Id.* at 899.  The Court clarified that in *O'Grady v. Superior Court*,

20  139 Cal. App. 4th 1423 (2006), it stated only that where no exception applies to disclosure, such as

21  where there is no consent of the user, the SCA does not contain an exception for civil discovery

22  subpoenas.  *Id.* at 899-900.  Ultimately, the *Negro* Court held that "we find no sound basis for the

23  proposition that the Act empowers service providers to defy civil subpoenas seeking discovery of

24  materials that are excepted from the Act's prohibitions on disclosure." *Id.* at 903.

25         This interpretation is further confirmed in the more recent case *Facebook, Inc v. Superior*

26  *Court*, 4 Cal. 5th 1245, 1282-1286 (2018) (discussing and accepting the *Negro* reasoning as

27  persuasive and rejecting Google's argument regarding its refusal to comply with a civil subpoena

28  once lawful consent is provided under the SCA).  Most recently, in *Facebook, Inc. v. Pepe*, --- A.3d

--- ---, 2020 WL 1870591, at *6, n. 34 & 35 (D.C. Ct. App. Jan. 14, 2020), a court again rejected such

1  an argument, noting that "the requisite indication of Congressional intent to preclude compulsory

2  process is absent."  *Id.* at *6.  The Court went on to list the "substantial weight of authority" (a total

3  of 16 cases) which reject the idea that a provider may refuse to comply with a civil subpoena where

4  there is lawful consent.  *Id.* at n. 34.  The Court also noted, and rejected, the "dicta" contained in

5  certain other cases which suggest otherwise.  *Id.* at n. 35.

6        Google's requirement to make the production requested here originates from this Court's

7  discovery Order, and from the subpoena issued pursuant to that Order.  Contrary to Google's

8  argument, Congress did not grant Google the authority to refuse such disclosure by its passage of the

9  SCA.  The ability of a civil litigant to seek disclosure from an email service provider is further evident

10  from the abundant caselaw in this District and others litigating the disclosure of information where

11  an exception under the SCA does apply, many of which instances are cited throughout this

12  memorandum.

13  **III.    LAWFUL CONSENT HAS BEEN PROVIDED UNDER THE SCA**

14        Generally, the SCA, 18 U.S.C. § 2701, *et seq.*, prohibits electronic communication service

15  providers from "knowingly divulg[ing] to any person or entity the contents of a communication while

16  in electronic storage by that service".  18 U.S.C. § 2702(a)(1).  The Act provides exceptions for the

17  disclosure of communications "with the lawful consent of the originator or an addressee or intended

18  recipient of such communication, or the subscriber in the case of a remote computing service."  §

19  2702(b)(3).  The information requested by the subpoena served in this action falls into the Act's

20  exception from disclosure under Section 2702(b)(3) based on Temur's lawful consent, as reflected in

21  the documents executed in the English Proceeding, referred to herein as the "Google Mandates" (Dkt.

22  2-8 at 4-8), and as further confirmed by Temur's appearance and stipulation in this action confirming

23  that he does not object to the disclosure of the content of his email accounts (at Dkt. 9).

24        Google's statement that Applicant seeks information related to accounts that she "believes to

25  be associated with her son Temur Akhmedov" (Dkt. 20 at 6, 8) is patently false and misleading.

26  Discovery in this action is not premised on Applicant's "belief".  Rather, Temur himself has sworn

27  to the English Court to be the account holder for these accounts, and in fact has used these accounts

28  to communicate with various third parties, such as his English solicitors, regarding assets known to

1   belong to him.[3]   Temur has disclosed and produced a number of native format emails from

2   khyshen@gmail.com, temur@akhmedov.net and temur.akhmedov1993@gmail.com in the English

3   Proceedings (not "hard copies of emails" as stated by Google at Dkt. 20 at 12), which were previously

4   received by his English solicitors.  Power Decl. Ex. 1.  Applicant is amenable to providing the native

5   files to Google if it would assist in establishing Temur's ownership of the accounts.

6           Google argues that ownership of an account can only be demonstrated through verification,

7   and that it cannot rely on the sworn statements submitted to an English Court that the accounts belong

8   to him.  *See* Dkt. 20 at 6 ("Mr. Akhmedov's declarations that he is the account holder are legally

9   insufficient because they cannot be verified")).  But as Google's own caselaw indicates, the SCA's

10  concept of consent was designed to "limit[] the burdens placed on service providers by the Act… If

11  the provider is given satisfactory proof of the user's consent, it should be entitled to rely on it."  *Negro*,

12  supra at 896.  Additionally, Google states that it provided notice to the accounts on October 15, 2020

13  of the subpoena served in this action (Dkt. 20 at 9; Dkt. 20-1 ¶ 6), and no other alleged user has

14  responded or appeared to claim ownership or interest in the accounts.  Accordingly, Google is

15  entitled, and even compelled, to rely on the substantial weight of evidence supporting Temur's

16  ownership of the account.

17          Google suggests that the consent provided by Temur is not sufficient or lawful because it is

18  "merely constructive, implied in law, or otherwise imputed to the user by a court."  Dkt. 20 at 12

19  (citing *Negro v. Super Ct.*, 230 Cal. App. 4th 879 (2014)).  However, Temur's consent is NOT

20  implied, but is express, and is therefore consistent with the consent provided by the user in *Negro,*

21  *supra* and upheld by that Court.  Specifically, the Court noted that where there is no express consent

22  provided but that a court merely infers consent by a party's silence, such "implied" consent is not

23  lawful or valid under the SCA.  *Id.* at 889.  However, the Court distinguished this with consent which

24  is expressly given, even when compelled by a Court by threat of discovery sanctions.  *Id.* at 896-899.

25  The *Negro* Court specifically noted that court-ordered, express consent has also been upheld in other

26  cases.  *Id.*  at 899 (citing *Romano v. Steelcase, Inc.*,  907 N.Y.S.2d 650, 657 (2010); *Al Noaimi v.*

27  *Zaid*, 2012 WL 4758048 (D. Kan. 2012) (ordering plaintiff to execute consent to be attached to

28

---

[3] Temur has even used at least one of the accounts at issue, khyshen@gmail.com, to communicate with Applicant, his mother.  To suggest that the accounts do not belong to him strains credulity.

subpoena directed to e-mail provider); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 613, fn. 5 (E.D. Va. 2008) (court in underlying action "could order the Rigsbys to consent to AOL's disclosing the contents of their e-mails under the pain of sanctions"); *Glazer v. Fireman's Fund Ins. Co.*, 2012 WL 1197167, at *3 (S.D.N.Y. 2012) (court "need not determine" whether party's communications were protected under Act because it could "simply direct that she consent to disclosure".))   The *Negro* Court "h[e]ld that the consent expressly given by him pursuant to court order constituted 'lawful consent' under the SCA."   230 Cal. App. 4th at 899.   Although Google is correct that the Court in the *Negro* case stated that implied consent is improper where there is no evidence of such consent before the Court (*id.* at 898), the Court held that where consent was provided, as here, to facilitate discovery through third party providers, the consent is lawful under the SCA exception.

In addition to arguing that Temur's consent is implied as opposed to express, lawful consent, Google also argues that "Google has developed a verified-consent based process that ensures that any production of content is pursuant to 'lawful consent' and consistent with the SCA."   Dkt. 20 at 12. Google goes on to describe that this process involves the account holder logging into the account at issue, preparing and sending an email from that account to Google that attaches the applicable Court order, and providing their express consent to disclosure in the email.   *Id.*   Google has provided no support for its argument that the account verification process described is the ***sole*** mechanism to obtain lawful consent, and the available caselaw directly contradicts Google's argument.

In *Ajemian v. Yahoo!*, Inc., 478 Mass. 169 (2017), the Court considered the meaning of the term "lawful consent" as intended by Congress, when considering whether personal representative of an e-mail account holder's estate could lawfully consent on the account holders' behalf.   In reviewing the legislative history of the statute, the Court noted that according to the House committee report, "'lawful consent' 'need not take the form of a formal written document of consent."   478 Mass. at 183-184 (citing H.R. Rep. No. 647, 99th Cong., 2d Sess. at 66).   The legislative history goes on:

"[i]nstead, such consent 'might be inferred to have arisen from a course of dealing…
- e.g., where a history of transactions between the parties offers a basis for reasonable understanding that a consent to disclosure attaches to a particular class of communications.'   Moreover, lawful consent could 'flow from a user having had a

1    reasonable basis for knowing that disclosure or use may be made with respect to a

2    communication, and having taken action that evidences acquiescence to such

3    disclosure or use – e.g, continued use of such an electronic communication."

4    *Id.* The Court concludes that "Congress did not intend to place stringent limitations on lawful consent

5    even for living users." *Id.* at 184. Based on its holding regarding the permissive nature of the form

6    of consent, the Court allowed a deceased account holder's personal representative to consent (in

7    writing) to the disclosure of the email content by Yahoo!.

8        In another case, *Al Noaimi v. Zaid*, 2012 WL 4758048 (D. Kan. 2012), in response to a motion

9    to quash filed by one of the parties, the defendant requested that the Court order the account holder

10   of an email account to execute a written consent form authorizing the disclosure of email

11   communications and other information (*See* Civil Action No. 6:11-cv-1156 (D. Kansas) (Dkt. 73)

12   with form consent appended as an exhibit). The Court granted this request, noting that the consent

13   in that form satisfied the requirements of 18 USC 2702(b)(3). 2012 WL 4758048 at *3 ("Nader's

14   consent, when attached to the subpoena, alleviates any concern that production might violate the

15   ECPA" (citing 18 U.S.C. § 2702(b)(3)).

16       In another action, *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d

17   1215 (N.D. Cal. 2015) this Court noted an underlying dispute wherein non-party Dropbox, Inc.

18   objected to a subpoena served upon it which was accompanied by a written consent form on behalf

19   of the account holder. *Id.* at 1216. Dropbox objected to the subpoena under the SCA, arguing that

20   the written consent form was insufficient to establish ownership of the account. *Id.* When plaintiff

21   filed a motion to compel based on Dropbox's failure to respond to the subpoena, the Southern District

22   of Texas Court directed Dropbox to respond on the basis of the written consent provided. *Id.* (citing

23   Civil Action No. 4:14-cv-145 (S.D. Tex.) (Dkts. 58, 92)).

24       Contrary to Google's objection, there is no support for its argument that its policy of email

25   verification is the sole process which establishes lawful consent under the SCA statute. Inferring

26   such a requirement would go beyond the plain language of the statute as well as the legislative intent

27   as reflected in the statutory language. Based on the foregoing it is clear that the written consent of

28   Temur Akhmedov, who has made a sworn statement before the English court that he is the user or

     owner of the four Google accounts at issue, along with the notice provided by Google to those

1   accounts on or about October 15, 2020 in response to being served with this subpoena (to which no

2   alternate user has responded), is sufficient to establish that Temur Akhmedov has provided express,

3   lawful consent for the requested production of the content of his four email accounts.  The subpoena

4   request therefore falls into the exceptions set forth in the SCA, compelling Google to make the

5   production pursuant to this Court's order and the subpoena served on it.

6   **IV.  THE RECORD ESTABLISHES WHY THE REQUESTED INFORMATION IS**

7   **RELEVANT AND CANNOT BE SOUGHT DIRECTLY FROM TEMUR**

8   **AKHMEDOV**

9   Lastly, Google has asserted that Applicant is not entitled to obtain the production of

10  information from Google by serving the Court-ordered subpoena because all discovery requests must

11  be relevant to a claim and proportional to the needs of the case, and that because Applicant is seeking

12  all information from the accounts, to be reviewed by Aon as directed by the English Court, that the

13  request is not sufficiently tailored to relevant information in the first instance.  Dkt. 20 at 14, n. 5.

14  Relatedly, Google objects on the basis that must be sought directly against the account holder, who

15  is a party to the foreign proceedings.  Dkt. 20 at 14 (citing *Giacchetto v. Patchogue-Medford Union*

16  *Free Sch. Dist.*, 293 F.R.D. 112, 117 (E.D.N.Y. 2013); *In re White Tail Oilfield Servs., LLC*, No. 11–

17  0009, 2012 WL 4857777, at *3 (E.D. La. Oct. 11, 2012); *In re CareSource Mgmt. Grp. Co.*, 289

18  F.R.D. 251, 254 (S.D. Ohio 2013)).

19  Google's objections fail in light of the record in this case.  Specifically, the record establishes

20  that the discovery sought here – discovery in aid of a foreign proceeding – has already been found by

21  the English Court to be relevant, or potentially relevant, to the foreign proceeding, which is sufficient

22  to grant discovery under 28 U.S.C. § 1782.  As set forth in the Memorandum of Law and in the

23  Supporting Declaration of Anthony J. Riem, the information contained in the accounts will be used

24  to determine the actions taken by Temur to assist his father, judgment debtor Farkhad Akhmedov, to

25  assist with fraudulent transfer of assets, and to determine whether judgment should be entered against

26  him and certain other defendants.  Dkt. 3 at 14.  The need to review this information is endorsed by

27  the English Court, wherein it has issued various disclosure orders aimed at obtaining production of

28  the requested information, including the very consent mandates authorizing Google to make this

1    production.  *See* Ex. 2 ¶ 41.  The Court recently emphatically confirmed that it requires this

2    information for the upcoming trial in November 2020, stating in part:

3            "For the avoidance of doubt, this court would indeed be assisted by production of

4            Temur Akhmedov's Google accounts to the independent forensic expert, Aon,

5            appointed by this court.  Careful perusal of the judge's previous orders would have

6            made clear that this material was an important, if not crucial, part of the evidential

7            landscape relating to Temur Akhmedov which this court will need to survey in

8            November and December 2020."

9    Power Decl. Ex. 3.

10           In addition, Google's own authority is inapplicable here, and does not require Applicant to

11   continue to seek disclosure from Temur.  The caselaw cited by Google merely indicates that it may

12   be inappropriate to seek disclosure directly from Google in certain circumstances.  For example, in

13   *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112 (E.D.N.Y. 2013) the Court

14   noted specifically that it "sees no basis at this time why Defendant should go through a third-party

15   provider to access Plaintiff's social networking postings **when Plaintiff has access to this**

16   **information herself**".  *Id.* at 117 (emphasis added).  Similarly, in *In re CareSource Mgmt. Grp. Co.*,

17   289 F.R.D. 251, 254 (S.D. Ohio 2013) the Court stated that a party "must first establish that it cannot

18   obtain the discoverable information from its party-opponent before subpoenaing those documents

19   from a non-party."  *Id.* at 254.  In this instance, such inability of the parties to the foreign proceeding

20   to access the information has been established.  Mr. Riem has detailed the lengthy steps taken in the

21   English Proceeding to obtain the very information sought directly from Temur, the account holder,

22   and the inability of Temur and the independent IT expert, Aon, to access the accounts through

23   Google's account recovery process.  Ex. 2 ¶¶ 29- 32.  Given the urgency of the information needed

24   no later than November 30, 2020, Applicant is entitled to immediately obtain the information directly

25   from Google, as long as an exception to the SCA has been established, namely, Temur's "lawful

26   consent."

27                                          **CONCLUSION**

28           Based on the foregoing, Applicant respectfully states that this Court should deny Google's

     Motion to Quash the subpoena served on it, hold that the consent provided by Temur constitutes

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"lawful consent" pursuant to the SCA, and direct Google to comply with the subpoena on an expedited basis in light of the upcoming trial scheduled in the United Kingdom for November 30, 2020.

DATED:  November 9, 2020                    HOLLAND & KNIGHT LLP

s/James H. Power

_____

Attorneys for Applicant
*Tatiana Akhmedova*