Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: 650.838.4300
Facsimile: 650.838.4350

*Attorney for Respondent Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF TATIANA AKHMEDOVA,<br><br>Applicant. | Case No. 20-mc-80156-VKD<br><br>**REPLY IN SUPPORT OF RESPONDENT GOOGLE LLC'S MOTION TO QUASH OR MODIFY SUBPOENA AND TO AMEND THE COURT'S ORDER DATED OCTOBER 6, 2020**<br><br>Date:   November 24, 2020<br>Time:   10:00 a.m.<br>Judge:  Hon. Virginia M. DeMarchi<br>        Courtroom 2, 5th Floor |

# I.   INTRODUCTION

Respondent Google LLC's ("Google") motion to quash the subpoena (the "Subpoena") issued by Applicant Tatiana Akhmedova ("Applicant") should be granted, as Google cannot produce the content of the two accounts[1] at issue consistent with the federal Stored Communications Act, 18 U.S.C. § 2701 *et seq*. (the "SCA").

Applicant claims that Temur Akhmedov is the subscriber of the Accounts. Mr. Akhmedov is accused in the underlying English action of assisting with the fraudulent transfer of assets. According to Applicant, Mr. Akhmedov engaged in a pattern of misconduct in the English action. He has made misrepresentations to the English Court; concealed certain facts; destroyed evidence; and failed to cooperate in facilitating access to the Accounts. Yet Applicant would like Google to rely on Mr. Akhmedov's declaration that he is in fact the subscriber of the Accounts.

Furthermore, in Applicant's solicitors' words, Mr. Akhmedov has not "taken the most basic and obvious of steps to recover access to the relevant numbers" to recover the Accounts. ECF No. 21-2 at 4(vi). Instead of asking the English Court to compel Mr. Akhmedov to recover access to the Accounts, on the eve of trial, Applicant asks the Court to compel Google to produce the content of the Accounts. This is improper for at least the following reasons:

First, Mr. Akhmedov's representations that he is the subscriber of the Account, sworn or otherwise, are insufficient to demonstrate lawful consent. *See* 18 U.S.C. § 2702(b)(3). Google has over 1.5 billion Gmail users and does not verify the information that is used to create an account. As a result, the only way for Google to confirm that Mr. Akhmedov is in fact the subscriber of the Accounts and lawfully consents to production is to provide that consent using the Accounts. Google has developed a verified-consent process to establish lawful consent that has been endorsed by courts, and it should be utilized here.

Second, even without account verification, Mr. Akhmedov has not, as Applicant argues, provided express consent to production from the Accounts. Applicant paints Mr. Akhmedov as

---

[1] As explained in Google's moving papers, the accounts involved are (1) temur@akhmedov.net; (2) temur@stecapital.net; (3) khyshen@gmail.com; and (4) temur.akhmedov1993@gmail.com. The first two accounts have been deleted and purged, so only the latter two accounts are at issue. They are referred to herein as the "Accounts." *See* ECF No. 20 at 1.

inherently untrustworthy and obstructionist, but Applicant nonetheless urges the Court to deem that Mr. Akhmedov is the subscriber of the Accounts and can consent. In fact, Mr. Akhmedov's representations that he is the current subscriber of the Accounts are highly suspect and weigh against disclosure:

- Mr. Akhmedov does not have valid passwords to the Accounts;
- He cannot access any recovery options for the Accounts;
- He cannot locate any of the mobile devices associated with the Accounts;
- He claims not to know which phone numbers are associated with the Accounts; and
- He has not obtained new SIM cards to regain access to the Accounts using the associated mobile devices.

Under the circumstances, Google should not be and cannot be required to rely on Mr. Akhmedov's word.

Third, setting the SCA issues aside, Applicant argues that Mr. Akhmedov is capable of recovering access to the Accounts, but he is refusing to cooperate. Applicant must exhaust her efforts to obtain discovery from Mr. Akhmedov, and the English court is best suited to assist Applicant. Applicant does not maintain that she has sought relief from the English court to require Mr. Akhmedov to comply, and if he still fails to do so, the remedy should be to sanction him—not to have Google rely on untrustworthy representations that may expose it to liability under the SCA.

In addition, Applicant does not address amendment of the preservation obligation of the Court's order, but she has consented to this relief. Therefore, to the extent preservation remains necessary following resolution of this dispute, Google respectfully requests that the Court narrow the order to only include preservation of the four accounts identified in the Subpoena.

Accordingly, Google requests that its Motion be granted.

1

## II.    ARGUMENT

2

**A.    Google's Motion to Quash Should Be Granted, as No Exception Applies Here.**

3

**1.    The SCA applies in this action.**

4
5
6
7
8
9
10

There is no dispute that the SCA applies in this action.  ECF No. 22 ("Opp.") at 6. Indeed, as Google explained in its Motion, the SCA prohibits private parties in civil actions from compelling production of the content of an account holder's electronic communications from service providers such as Google by service of a subpoena or court order, subject to limited exceptions, including the lawful consent exception.  ECF No. 20 ("Motion") at 6 (citing 18 U.S.C. § 2702(a)(1), (2); 18 U.S.C. § 2702(b)(1)-(9); *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073-74 (9th Cir. 2004)).

11
12
13
14
15
16
17

Applicant appears to have misapprehended Google's recitation of the law as argument that Google may choose whether to comply with the subpoena, even if an exception to the SCA applies.  Opp. at 6.  Google nowhere raised this argument in its Motion, although this argument was available.[2]  Applicant's arguments on this point are therefore irrelevant to this dispute.  *Id.* at 6-7 (citing *Facebook, Inc. v. Superior Court*, 4 Cal. 5th 1245, 1282-86 (2018); *Negro v. Superior Court*, 230 Cal. App. 4th 879 (2014), *as modified* (Nov. 18, 2014) ("*Negro*"); *Facebook. Inc. v. Pepe,* --- A.3d ---, 2020 WL 1870591, at *6, n. 34 & 35 (D.C. Ct. App. Jan. 14, 2020).

18
19
20
21
22
23
24
25
26
27
28

---

[2] There is case law that supports the proposition that the SCA does not require production, even when an exception applies.  *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) ("[u]nder the plain language of Section 2702, while consent may *permit* production by a provider, it may not *require* such a production.") (emphasis in original); *see also United States v. Wenk*, Case No. 3:17CR85-HEH, 2017 WL 9989882, at *1 (E.D. Va. Nov. 29, 2017) ("Based upon the plain language of the SCA, service providers such as Google are not required to disclose communications covered by the Act, even when the relevant consent is properly given.  Instead, the SCA vests service providers with discretionary authority to disclose once consent is properly given."); *PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*, 273 F. Supp. 3d 558, 561 (W.D. Pa. 2017) ("according to the language of the SCA, it is within the providers' discretion whether to disclose e-mails even in cases where there is lawful consent."); *Schweickert v. Hunts Point Ventures, Inc.*, No. 13–cv–675RSM, 2014 WL 6886630, at *13 (same).  Google does not raise this argument here, but it also reserves the right to raise the argument in future actions.

1

2

**2.     Account verification is necessary in this matter to establish lawful consent under the SCA.**

3       The parties also agree that Google may disclose the contents of a communication with the

4  lawful consent of the account holder, an exception to the SCA. Opp. at 7. Lawful consent

5  requires a showing of actual consent from the user and "is not satisfied by consent that is merely

6  constructive, implied in law, or otherwise imputed to the user by a court." 18 U.S.C. §

7  2702(b)(3); *Negro*, 230 Cal. App. 4th at 889. The parties disagree whether lawful consent has

8  been established here.

9       Both parties point to *Negro*, as the case is most directly on point. There, the appellate

10  court held that the trial court abused its discretion in finding, without more, that the petitioner

11  consented or was "deemed to have consented" to production of his emails, and in ordering

12  Google to produce emails based on that conclusion. *Negro*, 230 Cal. App. 4th at 883, 892-93

13  ("Since his consent cannot be imputed in law, the trial court had no basis on which to conclude

14  that he had given consent to disclosure").

15       However, the appellate court found that, when subsequently ordered by the trial court, the

16  petitioner expressly consented to disclosure of his emails by emailing Google ***from the account***

17  ***at issue*** and consenting to its production of the emails sought. *Id*. at 883-84, 93-94. "In light of

18  Negro's valid express consent to disclosure," the court held, the SCA "poses no impediment to a

19  subpoena compelling Google to produce the messages." *Id*. at 884. The appellate court in *Negro*

20  thus endorsed Google's verified consent process requiring account access and consent to be

21  emailed from the account. This is the same process Google is proposing here.

22       Google did not argue, as Applicant suggests, that its verification procedure is "the ***sole***

23  mechanism to obtain lawful consent." Opp. at 9 (emphasis in original). Of course, depending on

24  the nature of the service at issue, lawful consent may look different. However, the verified-

25  consent process endorsed by *Negro* is the proper procedure ***for Google*** to verify consent because

26  of the nature of Google's service. Google does not verify the information that is used to initially

27  register accounts, so it has no way of determining the identity of an account holder without access

28

-4-

1   to the account at issue. If Google were required to produce the contents of a user's inbox based

2   on a written consent alone, it would be at risk of wrongful disclosure.

3       That risk is real in this case.[3] Opp. at 8. Applicant is asking the Court to conclude, based

4   on written representations and other evidence (consent forms and a court filing)[4], that Mr.

5   Akhmedov is the subscriber for the Accounts and consented to the production. However,

6   Applicant also informs the Court that Mr. Akhmedov cannot be trusted. For example, Mr.

7   Akhmedov is accused of assisting in the fraudulent transfer of assets. Opp. at 11. Mr. Akhmedov

8   does not have valid passwords to the Accounts; he cannot access any recovery options for the

9   Accounts; he cannot locate any of the mobile devices associated with the Accounts; he apparently

10  does not know which phone numbers are associated with the Accounts; and he has not followed

11  Google's instructions to obtain new SIM cards to regain access to the Accounts using the

12  associated mobile devices. *See* ECF No. 20-1, ¶ 2; ECF No. 1 at 5-8.

13      At bottom, Mr. Akhmedov may have misrepresented to the Court that he is the account

14  holder, consistent with his alleged pattern of misbehavior. Because Google has the burden to

15  defend against SCA liability, Google should not be required to accept untrustworthy

16  representations or anything short of verification through the Accounts. *See, e.g., In re Google*

17  *Assistant Privacy Litig.*, No. 19-CV-04286-BLF, 2020 WL 2219022, at *13 (N.D. Cal. May 6,

18  2020) ("[T]he party seeking the benefit of an exception" has "the burden to establish the existence

19  of consent.").

20

21

22

23

---

24      [3] Applicant takes issue with Google statement that Applicant seeks information related to the
    accounts that she "believes to be associated with her son Temur Akhmedov," calling the

25  statement "patently false and misleading." Opp. at 7. However, Google was referring to
    language in the Court's Order, which states "Ms. Akhmedova will use the subpoena to obtain

26  information regarding Google accounts believed to be associated with her son Temur
    Akhmedov." ECF No. 12 at 1. Therefore, Google appropriately used that phrasing.

27      [4] Applicant also contends that emails have been produced, but those emails are not before the

28  Court.

1

2

        **3.**      **Applicant's argument that Mr. Akhmedov has expressly consented to disclosure is unsupported.**

3

4

5

      Applicant maintains that Mr. Akhmedov has expressly consented absent account verification, but Applicant does not cite any case law that directly supports that position.   Opp. at 8.   Instead, Applicant points to case law that is not germane to this dispute.

6

7

8

9

10

11

12

13

14

15

16

      First, Applicant's citation to *Ajemian v. Yahoo!, Inc.*, 84 N.E.3d 766 (2017), a non-binding Massachusetts decision, is unhelpful.   Opp. at 9-10.   The question before that court was "the novel question whether lawful consent for purposes of access to stored communications properly is limited to actual consent, such that it would exclude a personal representative from consenting on a decedent's behalf."   *Id.* at 773.   The court concluded that lawful consent included consent by a personal representative on a decedent's behalf.   *Id.* at 181.   The court did not address what constitutes lawful consent where an account holder is alive and simply unable to access their accounts.   In any event, other courts have determined that a representative may not consent to account access.   *See, e.g., In re Toft*, 453 B.R. 186, 189 (Bankr. S.D.N.Y. 2011) (denying insolvency administrator's request to "gain[] access to [the debtor's] email accounts" because the request would "contravene the protection against disclosure of e-mails" under the SCA).

17

18

19

20

21

22

23

24

25

26

      Second, Applicant mischaracterizes *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015) ("*Intermarine*") as holding that written consent is sufficient to compel production of documents.   Opp. at 10.   To the contrary, *Intermarine* did not address what constitutes written consent or apply the SCA at all.   Applicant is, instead, referring to the procedural background of the case, and the record reflects that Dropbox produced content pursuant to *a written consent sent through the account at issue*.   *See Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, Case 3:15-mc-80211-MEJ, ECF No. 2-1 at 7-8 (written consent form reflecting that the form must be provided to Dropbox from the email address associated with the account).   That is akin to the process that Google follows to verify express and lawful consent, as it involves account verification.

27

28

1    Finally, Applicant also argues that a court may order consent. *See, e.g., Romano v.*

2   *Steelcase Inc.*, 30 Misc. 3d 426, 434 (Sup. Ct. 2010) (ordering plaintiff to grant access to her

3   social media accounts, which were previously public, without discussing what processes may

4   constitute lawful consent); *Al Noaimi v. Zaid*, No. 11-1156-EFM, 2012 WL 4758048, at *3 (D.

5   Kan. Oct. 5, 2012) (addressing court-ordered consent but silent as to contours of consent); *Glazer*

6   *v. Fireman's Fund Ins. Co.*, No. 11 CIV. 4374 PGG FM, 2012 WL 1197167, at *3 (S.D.N.Y. Apr.

7   5, 2012) (noting that a court may order consent to disclosure but not addressing the form of

8   consent); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 614, n.5 (E.D. Va.

9   2008) (acknowledging in passing that the court could order consent without addressing the form

10   consent must take). These cases do not discuss what constitutes lawful consent, and neither party

11   is asking the Court to order consent. Accordingly, this line of cases is inapt.

12   **B.      Mr. Akhmedov is Obligated to Produce his Emails.**

13   Applicant is also incorrect that she may seek discovery from Google without further

14   pursuing discovery from Mr. Akhmedov. Opp. at 12. In fact, both in the SCA context and

15   otherwise, courts have held that non-parties should not be burdened with requests where the

16   information is available to parties to the litigation.[5]  *See, e.g., Suzlon.*, 671 F.3d at 730; *O'Grady*

17   *v. Super. Ct.*, 139 Cal. App. 4th 1423, 1447 (2006); *see also Giacchetto v. Patchogue-Medford*

18   *Union Free Sch. Dist.*, 293 F.R.D. 112, 117 (E.D.N.Y. 2013); *In re White Tail Oilfield Servs.,*

19   *LLC*, No. 11–0009, 2012 WL 4857777, at *3 (E.D. La. Oct. 11, 2012).

20   Applicant's argument does not appear to be that Mr. Akhmedov ***cannot*** obtain the emails

21   himself—it is that he ***will not*** do so. As Applicant's solicitors in the English proceeding noted,

22   "there is no evidence that [Mr. Akhmedov] has taken the most basic and obvious of steps to

---

23   [5] Applicant also concedes that the Subpoena is unbounded by relevance considerations. *See*

24   Opp. at 11 (acknowledging that Applicant seeks a document dump to be reviewed by Aon, a third
   party). Despite receiving non-content headers for the Accounts' emails, which should enable her

25   to narrow the Subpoena to seek only relevant information, Applicant still has not pared down her
   outstanding requests. But regardless of Aon's review, those requests must seek only relevant

26   information *in the first instance. See, e.g.*, Fed. R. Civ. P. 26(b)(1); *Beaver Cty. Employees' Ret.*

27   *Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80076-JSC, 2016 WL 7212308, at *4 (N.D. Cal.
   Dec. 13, 2016) (sanctioning defendants for issuing an overbroad subpoena to a non-party that

28   sought a large volume of documents of dubious value to the case).

1   recover access to the relevant numbers." ECF No. 21-2 at 4(vi). They go on to say that, for

2   example, Mr. Akhmedov "does not suggest that he has contacted his mobile phone provider(s) to

3   request copy SIM cards for any of the required numbers." *Id.* Mr. Akhmedov never attempted

4   this recovery option[6], and Applicant does not explain why she did not ask the English court to

5   compel him to do so. *See* ECF No. 21, ¶ 9. Instead, Applicant states only that she cannot make

6   Mr. Akhmedov obtain new SIM cards because he has been "uncooperative." *Id.*

7          Additionally, it is unclear how thoroughly Applicant has reviewed Google's October 29,

8   2020, non-content production. Applicant's counsel told Google that they would not review this

9   production until November 6, 2020, the date Google filed its Motion. *See* ECF No. 20-6.

10  Applicant filed its Opposition on the next business day, November 9, 2020. *See generally* Opp.

11  In it, Applicant states only that "to date" the non-content production apparently does not include

12  information Mr. Akhmedov could use. Opp. at 4. This language and timing raises questions

13  about whether Applicant has exhausted the production's utility.[7]

14         Therefore, the data remains available to Mr. Akhmedov, and he is responsible for

15  producing his own emails. *See, e.g.*, *Herrera v. Ahlin*, No. 1:14-CV-00164-LJO-BAM-PC, 2016

16  WL 6648630, at *2 (E.D. Cal. Nov. 9, 2016) (denying motion to compel non-party discovery

17  because plaintiff had not exhausted other avenues for obtaining the information.). If Mr.

18  Akhmedov will not take the steps necessary to recover his account, then the English Court should

19  require him to do so. If he nonetheless fails to cooperate, the English Court may remedy that

20  situation how it sees fit. The remedy should not be to require Google to do the work for Mr.

21  Akhmedov, and potentially take on SCA liability as a result.

---

22         [6] Google explained to Applicant in August that even if Mr. Akhmedov had lost the mobile
23  devices associated with the Accounts two-factor authentication settings, he should obtain new
     SIM card(s) to at least attempt account recovery via two-factor authentication. *See* ECF No. 20-1,
24  ¶ 2.
            [7] Moreover, Applicant's complaint that Google has not identified potentially helpful
25  information in the production is misplaced. *See* Opp. at 4. Applicant has already received
26  extensive assistance from Google explaining its account recovery process and never asked
     Google for any assistance interpreting the information in the noncontent production. *See* ECF
27  No. 20-1, ¶ 2. Indeed, Applicant never responded to Google's offer to meet and confer after the
     October 29 production, but before Google moved to quash, during which the parties could have
28  discussed any questions about using the information in that production. *See* ECF No. 20-6.

1

**C.      Applicant assents to narrowing of the Court's preservation order.**

2      Finally, Applicant does not address narrowing of the preservation portion of the Court's

3    Order, but Applicant has consented to this relief. *See* ECF No 20-6. Google is not capable of

4    complying with the preservation obligation because it cannot discern what might be potentially

5    relevant to the subject matter of the Applicant's case. *Artec Grp., Inc. v. Klimov*, No. 15-CV-

6    03449-RMW, 2016 WL 4474614, at *2 (N.D. Cal. Aug. 25, 2016) (capability of complying with

7    a preservation order is a consideration in entering an order) (citations omitted). Accordingly, if

8    the remainder of the Subpoena is not fully quashed, and if the Court desires for the preservation

9    order to stay in effect, Google respectfully requests that the Court modify the Order to require

10   preservation only of data for the Accounts.

11                            **III.      CONCLUSION**

12      For the reasons set forth herein, and in its moving papers, Google respectfully requests

13   that this Court quash or modify the Subpoena consistent with the SCA's requirements.

14

15   DATED: November 16, 2020                    PERKINS COIE LLP

16                                    By: */s/ Julie E. Schwartz*
                                      Julie E. Schwartz
17                                    JSchwartz@perkinscoie.com
                                      PERKINS COIE LLP
18                                    3150 Porter Drive
                                      Palo Alto, CA 94304
19                                    Telephone: 650.838.4300
                                      Facsimile: 650.838.4350
20
                                      Attorney for Respondent
21                                    Google LLC

22

23

24

25

26

27

28