HOLLAND & KNIGHT LLP
James H. Power *(pro hac vice)*
Daniel P. Kappes (SBN 303454)
50 California Street, 28th Floor
San Francisco, CA 94001
T 415.743.6900 | F 415.743.6951
E-mail: james.power@hklaw.com
E-mail: daniel.kappes@hklaw.com

Attorneys for Applicant
*Tatiana Akhmedova*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE APPLICATION OF TATIANA AKHMEDOVA, | Case No. 20-mc-80156 |
|                                    Applicant, | **APPLICANT TATIANA AKHMEDOVA'S OPPOSITION TO GOOGLE'S MOTION FOR A STAY** |
| REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782. | |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION.................................................................................................... 1

II. RELEVANT BACKGROUND ............................................................................... 2

    A.     English Proceedings and Applicant 28 U.S.C. § Files 1782 Action .......................... 2

    B.     Judge DeMarchi Denies Google's Motion to Quash................................................. 3

III. ARGUMENT ....................................................................................................... 4

    A.     Google Has Not Met Its Burden To Prove A Stay Is Warranted .............................. 4

        (i)   Stay Pending Appeal ........................................................................................ 5

            1.     Google's Appeal to the District Court is Not Likely to Succeed .................. 5

                  (a)    The Court Did Not Commit Legal Error, it applied the correct standard under the SCA .................................................................. 6

                  (b)    The Court Properly Exercised its Discretion, Google Disputes Contested Facts ........................................................................... 6

            2.     Google Will Not Suffer Irreparable Harm, Balance of Hardships Favors Applicant .............................................................................. 7

            3.     The Public Interest Favors Denial of a Stay ................................................10

        (i)   Good Cause .....................................................................................................10

IV. CONCLUSION ....................................................................................................12

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*In re Application of Proctor & Gamble Co.*,

5
    334 F. Supp. 2d 1112 (E.D. Wisc. 2004) ...................................................................10

6

*Application Pursuant to 28 U.S.C. §1782 by Nikon Corp. v. GlobalFoundries U.S.,*
   *Inc.*,

7
    No. 17-MC-80071-BLF, 2017 WL 4224770, at *2 (N.D. Cal. Sept. 22, 2017) .........................4

8

*Blakenship v. Hearst Corp.*,

9
    519 F.2d 418 (9th Cir. 1975).........................................................................................10

10

*Boyd v. City & County of San Francisco*,
    576 F.3d 938 (9th Cir. 2009) ..........................................................................................5

11

*Gray v. First Winthrop Corp.*,

12
    133 F.R.D. 39 (N.D. Cal. 1990) ...................................................................................11

13

*Jimenez v. Menzies Aviation Inc*,
    No. 15-CV-02392-WHO, 2015 WL 5591722 (N.D. Cal. Sept. 23, 2015) ...................................7

14

15

*LeivaPerez v. Holder*,
    640 F.3d 962 (9th Cir. 2011)....................................................................................5, 8

16

*Meier v. Colvin*,

17
    727 F.3d 867 (9th Cir. 2013)..........................................................................................5

18

*National Union Fire Ins. Co. v. Resource Development Services, Inc.*,
    No. C10-01324, 2010 WL 3746290 (N.D. Cal. Sept. 18, 2010)...............................................11

19

20

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................................................5, 7, 10

21

*United States v. Hinkson*,

22
    585 F.3d 1247 (9th Cir. 2009) .....................................................................................6, 7

23

*In re Valence Tech. Sec. Litigation*,
    No. C 94-1542-SC, 1994 WL 758688 (N.D. Cal. Nov. 18, 1994) ...........................................11

24

**Other Authorities**

25

Fed.R. Civ. P. 26 ...........................................................................................................11

26

27

28

# I. INTRODUCTION

On November 24, 2020, Judge DeMarchi denied Google, LLC's ("Google") Motion to Quash (Dkt. 30). Judge DeMarchi's Order was correct. Google has nevertheless filed a motion challenging that ruling and a Motion to Stay Order Denying Motion to Quash ("Motion"). Applicant Tatiana Akhmedova ("Ms. Akhmedova" or "Applicant") hereby opposes Google's Motion.

Importantly, Google fails to satisfy any of the four requirements necessary to support its requested a stay. For the same reasons, Google's contention good cause exists to grant its requested relief also fails.

First, Google is not likely to succeed on the merits because the Court properly exercised its broad discretion in determining that consent under the Stored Communications Act was met. Google's primary argument to the contrary, that its users may *only* consent using Google's own verified consent process, lacks any support. Unsurprisingly, Google fails to cite a single case holding that its own consent process is the only way a party may properly provide consent under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (the "SCA").

Second, Google offers no persuasive arguments, let alone admissible evidence, that supports its claim that it will suffer irreparable harm absent a stay. Rather, its claimed harm is entirely speculative, and is harm that Google believes may befall its users, not Google directly. Obviously harm to third parties is not harm to Google itself.

Third, Applicant, mired in litigation for years, and now on the cusp of trial, will suffer irreparable harm if a stay is granted. In other words, each day Google impedes Applicant's efforts to obtain discovery, increases the odds that Applicant will be unable to use evidence in the very action where the evidence is needed. Applicant has incurred significant time and expense to obtain the information sought in the 1782 subpoena, information which is likely to further Applicant's investigation, and assist the trier of fact in reaching a correct ruling. Here, additional delay will also increase the chance of spoliation and loss of evidence. The English Court recognized as much and has specifically written this Court requesting assistance.

Fourth, the public interest is not furthered by a stay. Permitting Google to stay an order simply because it disagrees with Judge DeMarchi's factual findings hardly promotes judicial efficiency.

Moreover, a stay will not only delay this case, but will unquestionably impact Applicant's ability to use 1782 evidence in the English Proceeding. The public has an undeniable interest in ensuring Courts and triers of fact have the necessary information to make well informed decisions.

For each of these reasons, the Court should deny Google's Motion to Stay ("Motion").

## II. RELEVANT BACKGROUND

### A.      English Proceedings and Applicant 28 U.S.C. § Files 1782 Action

The Applicant is the former wife of Farkhad Akhmedov ("Farkhad").  In December 2016 he was ordered to pay Applicant the sum of £453,576,152 in settlement of her financial claims against him with respect to dissolution of their marriage. Dkt. 2 (Riem ¶ 2, 4). On September 16, 2020, Applicant filed an Application in this Court under 28 U.S.C. § 1782 (the "1782 Application") seeking discovery with respect to documents located in this judicial district in the possession or control of Google for use in pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340) (the "English Proceeding"). (Dkt. 1). There is no dispute that Ms. Akhmedova's Application satisfied the statutory requirements of 28 U.S.C. § 1782. (Dkt. 12).

The discovery Applicant seeks is necessary, in part, to assist Applicant in determining the transfer of assets by Farkhad, his son Temur Akhmedov ("Temur") and others in an attempt to prevent Applicant from enforcing this English Court's orders against him. Dkt. 2 (Riem ¶¶ 15-52). Specifically, at issue here, is Temur's under oath statements in the English Proceedings that he is unable to produce certain documents and information from his Google email accounts based on his alleged inability to access the accounts, as a result of lost passwords and/or SIM cards necessary for recovery of the accounts in the four mandates (one for each of his email accounts). Temur testified, with respect to the Google accounts:

> "I consent to the disclosure of all data contained on or relating to my account of whatever nature (including, but not limited to, emails and documents (including deleted items), account/subscriber information and metadata) being produced to Stroz Freiberg Limited of The Aon Centre… I withdraw and waive any objection that I have made or could make to the production by Google of any data which is the subject of this consent and instruction pursuant to a subpoena or other court order in any

jurisdiction, provided that the subpoena or other court order is consistent with this consent and instruction."

Dkt. 2-8 (Riem Ex. 9) at 4-8. The foregoing consent was later confirmed in this proceeding in the agreed Stipulation of the parties, wherein Temur states that he "consents to Applicant's Ex Parte Application (ECF No. 1) without qualification." Dkt. 9.

The English Court was just as direct soliciting this Court's assistance:

> For the avoidance of doubt, this court would indeed be assisted by the production of Temur Akhmedov's Google accounts to the independent forensic expert, Aon, appointed by this court.

> Careful perusal of the judge's previous orders would have made clear that this material was an important, if not crucial, part of the evidential landscape relating to Temur Akhmedov which this court will need to survey in November and December 2020.

> The relief sought in the US District Court does NOT go further than the substance of what the judge intended and ordered.

> Further, this court has reason to be grateful for the past assistance provide to it pursuant to title 28 U.S.C. Section 1782 . . . .

> Any perception that this court is not solicitous of assistance from the United States District Court could not be further from the truth.

Dkt. No. 21-3 at 2-3; Dkt. 30 at 3.

**B.      Judge DeMarchi Denies Google's Motion to Quash**

Google's counsel accepted service of Applicant's subpoena requesting information as authorized by this Court's order, effective on October 9, 2020. Dkt. 3 at 3. The parties agreed by stipulation that Google would produce the non-content information requested by October 30, 2020, only after expiration of Google's 14-day notice period following notice to the account holder. Power *Id*. Google offers no evidence that Temur or any other account holder objected to Google's forthcoming production. *Id*. During this period, between October 9 and November 4, 2020, Applicant met and conferred several times in an attempt to resolve Google's objections without Court

intervention. Dkt. 21 (¶ 6). Specifically, counsel for Applicant explained that Temur has made sworn statements to the English Court concerning his loss of the recovery passwords, and telephone numbers (or the SIM cards connected to the recovery telephone numbers), and his inability to access the accounts. *Id*.

Notwithstanding the express consent provided by Temur as the subscriber to the accounts, Google moved to quash the subpoena (Dkt. 20).  Following full briefing and oral argument to discuss all issues raised by the parties, on November 24, 2020, Magistrate Judge DeMarchi issued an Order denying Google's motion to quash the production of information related to the two active email accounts of Temur Akhmedov, khyshen@gmail.com and temur.akhmedov1993@gmail.com. (Dkt. 30).  In her reasoned opinion and order, Judge DeMarchi noted that nothing in the SCA, 18 USC § 2702(b)(3) requires that lawful consent to the production of a subscriber's content "be communicated in the manner Google prescribes or permits a service provider to dictate the form of acceptable consent."  Dkt. 30 at 5. Judge DeMarchi further noted that Temur's status as the account holder was not "reasonably in dispute," and that he had provided express, lawful consent in the English Proceeding, and which consent was on the record in this action.  *Id*.  The Court also rejected Google's argument that Applicant did not exhaust efforts to obtain the requested information directly from Temur in the English Proceedings. (Dkt. 30 at 5-6).

The Court directed that "Google shall produce the requested documents and information by the November 6, 2020 deadline previously stipulated by Ms. Akhmedova and entered as an order of the Court.  Google shall produce the documents directly to the independent IT forensic expert appointed by the English Court, Aon…"  (Dkt. 18 at 2; Dkt. 30 at 7).

## III. ARGUMENT

### A.    Google Has Not Met Its Burden To Prove A Stay Is Warranted

According to Google's own cited case "[i]t is unclear what legal standard governs the Motion to Stay." *Application Pursuant to 28 U.S.C. §1782 by Nikon Corp. v. GlobalFoundries U.S., Inc*., No. 17-MC-80071-BLF, 2017 WL 4224770, at *2 (N.D. Cal. Sept. 22, 2017).  Here, under any standard, Google's Motion to stay must be denied.[1]  For the convenience of the Court, Applicant first addresses

---

[1]   For the reasons articulated in Applicant's concurrently filed Opposition to Google's Motion

1   the standard this Court applies to a stay pending appeal, given this Court has discretion to consider

2   these factors under Google's preferred good cause standard.

3                           **(i)      Stay Pending Appeal**

4           To obtain a stay pending appeal, an appealing party must show (1) a likelihood of success on

5   the merits of the appeal; (2) irreparable injury in the absence of a stay; (3) lack of substantial harm to

6   the opposing party from a stay; and (4) no harm to the public interest from the stay.  *Nken v. Holder,*

7   556 U.S. 418, 434 (2009). "[T]he party requesting a stay bears the burden of showing that the

8   circumstances justify" a stay pending appeal.  *Id.* at 433-34 (citation and internal quotes omitted). If

9   any of the four factors are not present, the Court must deny the requested stay. Hence, a stay pending

10  appeal is not a matter of right, even if irreparable injury might otherwise result. *Id*. The party

11  requesting a stay has the burden of showing that circumstances justify the exercise of discretion.  *Id.*

12  As set forth below, Google fails to meet its burden.

13                  **1.      Google's Appeal to the District Court is Not Likely to Succeed**

14          Google's appeal to this Court is not likely to succeed on the merits because Judge DeMarchi

15  applied the correct legal rule. *Meier v. Colvin*, 727 F.3d 867, 869–70 (9th Cir. 2013). ("A district

16  court abuses its discretion when it fails to apply the correct legal rule or its application of the correct

17  legal rule is illogical, implausible or without support in inferences that may be drawn from the facts

18  in the record"). The reviewing court must review for an abuse of discretion and be absolutely certain

19  that "the reviewed decision lies beyond the pale of reasonable justification under the circumstances."

20  *Boyd v. City & County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009). Here, Judge DeMarchi

21  correctly denied Google's Motion to Quash because Temur Akhmedov, provided express consent,

22  under penalty of perjury, satisfying the consent requirement under the SCA.  While the first factor

23  does not necessarily require proof that it is "more likely than not" that Google will prevail, a mere

24  "possibility" of relief does not suffice.  *LeivaPerez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011),

25  *citing Nken*, 556 U.S. at 434. Rather, Google, must establish at least a "reasonable probability" of

26  success, a "substantial case on the merits" or raise "serious legal questions." Google's Motion for

27

28  for Relief, Magistrate Judge DeMarchi's Order is non-dispositive and the more stringent stay
    pending appeal standard should apply to Google's Motion for Stay.

1    Relief from the Magistrate's Order does not establish a single misapplication of the applicable legal

2    standard, or that it was factually illogical, implausible, or without support.

3              (a)    **The Court Did Not Commit Legal Error, it applied the correct standard under the SCA**

4

5              The Court applied the correct legal standard governing the SCA. First, Google insists that

6    despite Temur's lawful consent (under penalty of perjury) to Google's disclosure, and no undue

7    burden or expense by Google in producing the information, it will not produce the information

8    because it proposes (for the first time) that Temur should purchase new SIM cards for the phone

9    numbers associated with the accounts at issue.  Dkt. 31 at 16.  Magistrate Judge DeMarchi already

10   considered and rejected this argument in light of the record in this case. *See* Declaration of Anthony

11   J. Riem (Dkt. 2)). In fact, discovery has been sought directly from Temur in England, resulting in

12   various disclosure orders by the English Court, namely its statement cited in full above that: "For the

13   avoidance of doubt, this court would indeed be assisted by the production of Temur Akhmedov's

14   Google accounts to the independent forensic expert, Aon,…[a]ny perception that this court is not

15   solicitous of assistance from the United States District Court could not be further from the truth."

16   (Dkt. No. 21-3 at 2-3; Dkt. 30 at 3).

17             (b)    **The Court Properly Exercised its Discretion, Google Disputes Contested Facts**

18

19             Applying the correct test, Judge DeMarchi's decision to grant the requested discovery and

20   deny Google's Motion was not an abuse of discretion. *See United States v. Hinkson*, 585 F.3d 1247,

21   1262 (9th Cir. 2009) (discussing that if the lower court applies the correct legal rule it must give

22   deference to the lower court's factual findings).  Here, Google simply contends that the Court should

23   have found differently with respect to contested facts. Mtn. 1.

24             For example, Google contends "Applicant failed to utilize Google's non-content production,

25   which may include information to help Mr. Akhmedov recover access to the accounts." Google does

26   not explain how Applicant, who is not the account holder, would benefit from non-content

27   information designed to help the account holder recall passwords and access their account. In fact,

28   this is precisely the issue, the non-content production did not assist the third party discovery specialist

---

Applicant's Opp. to Stay                                                          Case No. 20-mc-80156

or Temur in accessing his account, hence the need for Google to produce the information. Here, all evidence points to the fact that Temur cannot or is unwilling to access to the information himself (which is why Applicant and the English Court have requested this Court's assistance).

The Court also spent significant time addressing Google's main contention that "lawful consent exception to the SCA [was] not satisfied." Mtn. 1. The Court spent the majority of its opinion addressing this very contention. Specifically, it held "neither Mr. Akhmedov's status as the account holder of the accounts nor his consent to production of their contents is reasonably in dispute… the only information in the record before the Court is that the accounts belong to Mr. Akhmedov. Google points to no evidence suggesting that Mr. Akhmedov is not the owner of the accounts, and he has clearly and expressly consented to production of their contents." Dkt. 30 at 5. Google glosses over the fact that Temur identified the exact accounts at issue and, under oath, stated:

"I consent to the disclosure of all data contained on or relating to my account of whatever nature (including, but not limited to, emails and documents (including deleted items), account/subscriber information and metadata) being produced to Stroz Freiberg Limited of The Aon Centre… I withdraw and waive any objection that I have made or could make to the production by Google of any data which is the subject of this consent and instruction pursuant to a subpoena or other court order in any jurisdiction, provided that the subpoena or other court order is consistent with this consent and instruction." (Dkt. 2-8 (Riem Ex. 9) at 4-8).

Accordingly, there is nothing "illogical," "implausible," or "without support" about Judge DeMarchi's well-reasoned conclusion finding that Applicant has exhausted every effort to avoid Google's involvement and obtained the necessary consent.  *Hinkson*, 585 F.3d at 1262.

## 2. Google Will Not Suffer Irreparable Harm, Balance of Hardships Favors Applicant

Google falls well short of showing the requisite irreparable harm justifying a stay. The second and third factors concern whether Google, as the moving party, "will be irreparably injured absent a stay," and "whether issuance of the stay will substantially injure the other parties." *Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 5591722, at *3 (N.D. Cal. Sept. 23, 2015) (quoting *Nken*, 556 U.S. at 419). These two factors are often analyzed concurrently and considered the

"balance of hardships." *Id.* at 3. The party seeking a stay must show that "irreparable harm is probable if the stay is not granted," meaning that "an irreparable injury is the more probable or likely outcome." *LeivaPerez v. Holder*, 640 F.3d at 968 (citation omitted).

Here, Applicant does not seek any substantive relief, such as damages or an injunction against Google.  No order will impact Google's commercial conduct, their ongoing practices, or weaken its ability to seek relief from other subpoenas. The only relief Applicant requests is limited to obtaining discovery for use in a foreign legal proceeding, a proceeding to which non-party Google is not even a part of. In other words, to obtain a stay, Google needs to prove that merely producing documents, to a third party forensic expert would result in irreparable harm (an expert who will then turn them over to Temur's counsel).

Google does not cite a single case that holds that providing discovery constitutes irreparable harm. Google concedes as much, but contends that  if forced to comply with this Court's Order "its *users may be irreparably harmed*[.]" Mtn. at 6. Obviously, speculative harm to its unidentified "users" is not irreparable harm to Google. Google's position strains credibility. It requires a finding from this Court that an unidentified user, in an unidentified legal proceeding, will issue a ruling finding Google liable under the SCA.

Indeed, under Google's logic, every underlying case not stayed during appeal, would constitute irreparable harm to the appellant. Importantly, Google is not producing an "unidentified user[s]" emails to Applicant, it is producing Temur's emails, to Temur. Google does not explain why its production to a third party discovery referee, then to Temur's counsel, and then of only the responsive data to Applicant irreparably harms Google. In any event, Google is simply repeating its flawed argument that complying with a Court order somehow exposes it to liability under the SCA. But the District Court's holding that express, lawful consent has been provided actually insulates Google from liability for the Court-ordered production in this instance.  Google does not cite a single case to the contrary.

In contrast, if Google does have responsive information relevant to the English Proceeding, the failure to provide that information constitutes irreparable harm—to Applicant. It is Applicant who would suffer harm if it cannot obtain and use the evidence as a result of Google's proposed stay.

Applicant will also suffer irreparable harm if the Court issues a stay in a situation, like that here, where the risk of spoliation is high. Applicant has been stymied in its attempts at obtaining discovery directly from Temur, resulting in the English Court directly soliciting the assistance of this Court. (Dkt. 30 at 3).

At the same time, the clock is already ticking on Applicant's ability to obtain evidence and identify additional parties who may possess key documents. Applicant is currently unable to direct those third parties to preserve materials or inquire into facts potentially relevant to its case. A stay will certainly increase the likelihood the probability that additional evidence is lost. The real risk of spoliation should, alone, justify denying Google's Motion.

Google is correct that its production is time sensitive. Mtn. 2. But it is time sensitive to Applicant, not Google. While it is true that the English Court may accept significant evidence from Applicant after the English trial ends, that evidence must be timely submitted before the Court issues a final order. Trial has already commenced, the English Court is proceeding promptly with witnesses, and is trial is anticipated to be complete by the end of the month. (Dkt. 37).

Although the English Court and English law leaves the door open to considering later-submitted evidence if it is deemed necessary, this by itself does not warrant a stay. Here, Google attempts to blame any delay on Applicant by noting that Applicants filed their 1782 application in October 2020. Mtn. 2. Google fails to note, however, that during the entirety of this period Applicant attempted to work amicably to avoid issuing the 1782 subpoena altogether. At the same time, counsel for Applicant in the English Proceedings were attempting to obtain the same information from Temur directly. (Dkt. 21; Dkt. 2). Therefore, Google is in no position to complain about any alleged delay by Applicant.

The likelihood that the English Court would consider evidence submitted after trial ends, however, does not mean that it would consider evidence submitted many months later, after a decision, and any appeal. In fact, the English Proceeding will very likely end before the Court here is even able to render a decision on Google's Motion for Relief, which would make it impossible for the English Court to consider additional evidence even if it were inclined to do so.

1    Directly on point is *In re Application of Proctor & Gamble Co*., 334 F. Supp. 2d 1112, 1117

2    (E.D. Wisc. 2004), which held that the fact that "the appeal may become moot if the § 1782(a)

3    discovery is completed prior to the appeal's resolution" was outweighed by the likelihood that the

4    applicant "will be unable to use the discovery effectively if it is not obtained prior to fast approaching

5    deadlines in the foreign actions." Here, Google has had its day in court, with English Court deadlines

6    fast approaching injury is likely to result should a stay issue. Google cannot meet its burden of

7    demonstrating that a stay should be granted, the balance of hardships tips sharply in favor of

8    Applicant.

9    **3.       The Public Interest Favors Denial of a Stay**

10    Finally, the public interest favors denial given the strong public interest in deciding disputes

11    on their merits, after considering all of the relevant evidence. *See In re Application of Proctor &*

12    *Gamble Co*., 334 F. Supp. 2d at 1118 (public interest favors denying a stay of 1782 discovery

13    "because doing so furthers the search for the truth in the foreign actions"). Here, a stay will deprive

14    the English Court of valuable evidence. On the other hand, Google has once moved to quash, and

15    Judge DeMarchi issued a well-reasoned Order examining every issue Google now raises. "A stay is

16    not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation

17    and internal quotes omitted).

18    The public interest is reflected in Section 1782's specific purpose, authorizing this Court to

19    order discovery against residents of this district for use in foreign legal proceedings. Granting a stay

20    will undermine that very public interest by preventing Applicants, like Ms. Akhmedova from

21    obtaining 1782 discovery until a later date. Here, a date which will almost certainly be after the

22    English Proceedings have ended. Denying a stay, in contrast, will promote the public interest in

23    ensuring that the foreign tribunal will have the benefit of the evidence that Temur has so far fought

24    to hide.

25    **(i)       Good Cause**

26    Google contends it must only show good cause for this Court to grant its requested stay. But

27    a party moving for a discovery stay only upon a showing of good cause faces a heavy burden and

28    needs to make a "strong showing" as to why discovery should not be provided. *Blakenship v. Hearst*

1    *Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The moving party must demonstrate a "particular and

2    specific need for the protective order, as opposed to making stereotyped or conclusory statements[.]"

3    *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).  In other words, a party "must

4    make a clear showing of hardship or inequity to justify a blanket stay of discovery pending resolution

5    of a challenge on the pleadings." *In re Valence Tech. Sec. Litigation*, No. C 94-1542-SC, 1994 WL

6    758688, *2 (N.D. Cal. Nov. 18, 1994).   Here, Google submits no affidavit or declaration

7    substantiating the irreparable harm it will allegedly face should the stay not issue.  Its claims of

8    irreparable harm should the stay not issue are illusory and speculative.

9         In fact, Google devotes a mere 33 lines of its Motion contending good cause exists (including

10   citations to case law). Mtn. at 4:13-5:20. Google's failure to put forth evidence of harm acts as a

11   waiver and is a concession that a stay would not shield it from annoyance, embarrassment, oppression,

12   or undue burden or expense.  *See e.g.* Fed.R. Civ. P. 26. And for the reasons articulated above, good

13   cause does not exist.

14        Google's good cause argument is premised on its contention it **may** face "the risk of legal

15   exposure" for violation of the SCA, and hence, a should a stay not issue. Google does not articulate

16   why it would face penalties for complying with a Court order.  Even Google concedes it is a mere

17   "possibility" that disclosure would be wrongful.[2] Mtn. at 4. Google cites no case law for its contention

18   that compliance with this Court's discovery order which holds that the "lawful consent" exception

19   applies to this production would expose it to liability under the SCA.

20        Moreover, Google does not explain why a stay would streamline the proceedings, promote

21   judicial efficiency, or accurate resolution of the English proceeding or this one. According to Google

22   the mere filing of an objection to Judge DeMarchi's Order establishes good cause.  This is not the

23   standard.  *See e.g. National Union Fire Ins. Co. v. Resource Development Services, Inc.*, No. C10-

24   01324, 2010 WL 3746290 (N.D. Cal. Sept. 18, 2010) (denying motion to stay discovery for failure

25   to meet necessary burden).  Google has not met its burden to establish good cause.

26

27   _____

28        [2]   Google also ignores that is has also already provided notice to the account holder and that
     no account holder objected to disclosure.

Applicant's Opp. to Stay                                                    Case No. 20-mc-80156

## IV. CONCLUSION

Google's requested stay is an improper attempt to run out the clock by preventing Applicants from obtaining the 1782 discovery that this Court has ordered it to produce until after the underlying Proceedings have ended. There is no public interest in allowing a non-party that has been ordered to provide discovery to dictate when it will provide evidence and when it will not. The balance of hardships favors Applicant, and Google fails failed to make the necessary strong showing of likely success on the merits.

For the foregoing reasons, Applicant respectfully requests that the Court deny Google's Motion to Stay and order it to produce documents immediately, just as Judge DeMarchi has already done.

DATED:  December 7, 2020          HOLLAND & KNIGHT LLP


                                        s/ Dan Kappes
                                 Attorneys for Applicant
                                 *Tatiana Akhmedova*