# EXHIBIT A

**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE APPLICATION OF TATIANA )
AKHMEDOVA,                    )
                              )
          Applicant,          )
                              )   **NO. 20-mc-80156 JD**
REQUEST FOR DISCOVERY         )
PURSUANT TO 28 U.S.C. § 1782. )
                              )

San Francisco, California
Wednesday, December 9, 2020

**TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**

**APPEARANCES BY ZOOM WEBINAR:**

For Movant Google, LLC:
    PERKINS COIE LLP
    3150 Porter Drive
    Palo Alto, California  94304
  **BY:  JULIE SCHWARTZ, ATTORNEY AT LAW**

For Applicant Tatiana Akhmedova:
    HOLLAND & KNIGHT LLP
    31 West 52nd Street
    New York, New York 10019
  **BY:  JAMES H. POWER, ATTORNEY AT LAW**

Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
    Official Reporter

1   **Wednesday - December 9, 2020**                    **2:30 p.m.**

2                          **P R O C E E D I N G S**

3                              ---oOo---

4           **THE CLERK:** Calling Miscellaneous case 20-80156, In Re

5   Application of Tatiana Akhemdova.

6       Counsel, please state your appearances.  Mr. Power.

7           **MR. POWER:** James Power for petitioner Tatiana

8   Akhemdova.  I'm at Holland & Knight.

9           **MS. SCHWARTZ:** Julie Schwartz for movant Google, LLC,

10  from Perkins Coie LLP.

11          **THE COURT:** Okay.  All right.

12      It is a little bit late in the day today but also more

13  importantly a little bit late in the trial of the

14  United Kingdom so let me cut to the chase in the interest of

15  efficiency and just say that, you know, Ms. Schwartz, so you

16  have two statements by the owner of the account; one in the

17  United Kingdom, one in the United States.  Both of those are

18  court documents saying "I own the accounts and I give

19  permission for access."

20      The Stored Communications Act makes it clear that all

21  that's required is lawful consent, not Google consent; and the

22  trial is about halfway over, and this evidence has time value

23  that is rapidly wasting.  So I am having a hard time

24  understanding why you have not responded to the subpoena.

25  "You" being Google.

1          **MS. SCHWARTZ:**  Thank you, Your Honor.
2     Just to back up a little bit, this is not about what
3 Google perceives to be the only consent process for producing
4 the content of an account under the lawful consent exception.
5 The reason why Google is challenging this order is because the
6 order is very broad and it broadly holds that a certificate
7 that is signed under oath can establish lawful consent under
8 the Stored Communications Act.  It was not limited specifically
9 to the facts of this case and the facts of this case did not
10 demonstrate that there was a nexus between Mr. Akhemdov and the
11 account at issue.
12     So here what we had were statements that Temur Akhemdov
13 consented to the production of these accounts.  We're not
14 disputing that these statements were filed and that they were
15 under oath or anything like that; however, there is no evidence
16 before the Court tying this individual to the accounts
17 themselves.
18          **THE COURT:**  That's not true.  He said twice in two
19 different legal forms he owned the accounts.  Okay?  He is tied
20 to those accounts.
21     Now, Google may have doubts.  It doesn't matter.  He said
22 "I own the accounts."  He does not have to prove to Google's
23 satisfaction that they have passed muster from Google's
24 internal criterion.  That is not the test.
25     The test is whether as the owner of the account he's given

1  consent to access.  That's all that the Stored Communications
2  Act requires.  All those conditions were met.  So I do not
3  understand -- listen, we're not talking general principles
4  here.  We're talking only about the application of this
5  particular set of facts and the extraordinary efforts that the
6  account owner has gone to in two separate jurisdictions across
7  the globe to say, "Yes, open the account."  So what is the hold
8  up?
9          **MS. SCHWARTZ:**  Your Honor, the order put the burden on
10 Google to show that Mr. Akhemdov is not the account holder.
11 That is an incorrect application of the law.  The order should
12 have set forth the burden on the applicant and set forth the
13 facts that it shows lawful consent.  Instead it said that
14 Google did not introduce any facts showing that Mr. Akhemdov
15 was not the account holder.  That is incorrect under the Stored
16 Communications Act.  The person who is invoking the exception,
17 which here is --
18         **THE COURT:**  I think you're misconstruing the order.
19 The reason that the order says that is because the owner of the
20 account came in and said, "I own the accounts."  You-all on the
21 Google side came out and said, "Well, we have doubts."  The
22 response to that was, "If you have doubts, show me the
23 evidence."  That's all it was saying.  It's not putting any
24 undue or improper burden on you.
25      You have said, "Oh, in the face of two sworn declarations

1  by the account owner that he owns the account, we refuse to
2  agree with that."  And all the Court said, all the magistrate
3  judge said was, "Fine, if you have something you'd like to
4  share with me that's more than just mere supposition,
5  conjecture, or speculation, I'm happy to hear it."  That is
6  putting an appropriate burden on you, but it is not shifting
7  the burden under the Stored Communications Act.
8     Now, it may be the order needs some fine-tuning, I don't
9  know.  Here is the top priority.  There is a trial underway in
10 the United Kingdom.  I gather it is a rather sizable trial.
11 There's a lot of money at stake.  There's a lot of
12 international intrigue.  It sounds like a delightful case to be
13 involved in.  I'm sorry that I'm not.  Maybe I'm not sorry, I
14 don't know.  But it sounds like a really fascinating, unusual
15 case and the lynchpin here is that the son, I'll just call him
16 Temur, T-E-M-U-R, you know, is alleged to have conspired with
17 his dad to the great detriment of Mr. Power's client.
18     Is that fair, Mr. Power?
19         **MR. POWER:**  Yes, Your Honor.  That's a good summary.
20         **THE COURT:**  All right.  So she needs these documents
21 and, more importantly, a judicial colleague in the
22 United Kingdom has said he -- is it a male judge, Mr. Power?
23 Do you know?
24         **MR. POWER:**  It's a female judge, Your Honor.
25         **THE COURT:**  All right.  She has said -- a judicial

1  colleague of mine in the United Kingdom has said she wants to
2  see this evidence.  This will be of great help to her.  So you
3  need to get it in her hands.  Now, how much time do you need to
4  produce those e-mails?
5          **MS. SCHWARTZ:**  Your Honor, before we get to that, the
6  other side, they waited 10 days to file their opposition to our
7  applications -- to our motions, and we would like our just
8  opportunity to say why we do not agree with this and why if the
9  order is going to stand, it needs to be fine-tuned.  So at a
10 high level, there are very practical concerns with this order
11 here.
12     Google is already getting pushback from other people who
13 have read this order saying "I'm just going to give you a
14 statement."  How far does this line go?  If the order does
15 stand, it needs to be expressly limited to the factual
16 situation here.  It needs to set forth the facts upon which the
17 Court is finding lawful consent; and if the Court finds lawful
18 consent based on that, then, you know, Google will review that
19 and it will make decisions based on that.
20         **THE COURT:**  Ms. Schwartz, I don't think you're getting
21 the message.  I said, how much time do you need to produce
22 these documents?
23         **MS. SCHWARTZ:**  Thank you, Your Honor.
24     We could produce it imminently; however, we would like to
25 make the record on that.

1   **THE COURT:** "Imminently" is an empty word. Give me a
2   date and a time.
3       **MS. SCHWARTZ:** I don't have that information before
4   me, but I assume that we can produce it --
5       **THE COURT:** Then we'll set it for -- you will produce
6   these documents by -- when do you need these, Mr. Power?
7       **MR. POWER:** I think Aon is standing by so by the end
8   of tomorrow. That should provide enough time to transfer the
9   files electronically directly to Aon as per the magistrate's
10  order.
11      **THE COURT:** And how big is this? Do you have any
12  sense of how big all this is?
13      **MR. POWER:** I mean, we don't know. It's e-mails. I
14  think technology allows it to be produced quite quickly.
15      Now, if Google comes back and says that the file is too
16  big, they need another 12 hours till Friday, I think, you know,
17  we're not looking to make things difficult. We just want them
18  to hit "Send" to the people that are waiting for it.
19      **THE COURT:** All right. Let me just ask this. I don't
20  want to have to have you back in here in 8 hours or 12 hours.
21  So you've asked -- there are two e-mail addresses and your
22  client has received permission from the United Kingdom judge to
23  get the contents of both those e-mail addresses, like
24  everything in them?
25      **MR. POWER:** Yes.

1    **THE COURT:**  Okay.  And you don't have any sense -- I
2    mean, this is like 10 years of e-mails?  10 weeks of e-mails?
3    **MR. POWER:**  Again, I don't know.  It's probably
4    several years but, regardless, my understanding from a
5    technical perspective is that's irrelevant because it's not
6    going to take long.  This isn't like plugging in a cable and
7    trying to transfer it to a zip drive.  They're going to
8    download it just as if the client -- the subscriber went onto
9    Google's account and downloaded everything.  It would take a
10   mere 30 minutes to an hour I understand --
11   **THE COURT:**  Is that right?
12   **MR. POWER:**  -- for a data transfer.
13   **THE COURT:**  Oh, okay.
14       Is there any reason to disagree with that, Ms. Schwartz?
15   **MS. SCHWARTZ:**  Your Honor, we don't anticipate that it
16   would be particularly burdensome to produce the content of
17   these accounts.
18   **THE COURT:**  All right.  Well, let's get that done.
19       So, now, we need to take a two-step process here.  You
20   know, the heart of the order is perfectly fine.  The lawful
21   owner of the accounts has consented and Google has no right and
22   no prerogative to stand in the way of that production and
23   certainly does not make -- has no right to require the person
24   who's claimed ownership to jump through Google hoops when the
25   statute just says "lawfully consents" and that has been amply

1  established in this case.
2       Now, if there are other things that need to be fine-tuned,
3  we can do that in a reasoned and reasonable fashion over time.
4  That's fine.  I don't have a problem with that.  So if you're
5  worried that there are things, Ms. Schwartz, in the order that
6  are too broad beyond the immediate production obligations, then
7  I'll be perfectly happy to take a look at that.  That may be
8  true.  I don't know.  I really didn't reach any conclusions
9  about that; and if you want to -- you know, if you two want to
10 provide more briefing on it, that's perfectly fine.
11      But there is a trial underway and a judge in the
12 United Kingdom has asked for this evidence and has said in so
13 many words that it is vital for the dissolution of the case.
14 Google is not going to stand in the way of the wheels of
15 justice rolling to their conclusion in a sister jurisdiction.
16      All right.  So have those in Mr. Power's hands -- I'm
17 sorry, Mr. Power, you referred to they're going to be given to
18 AI somebody?
19           **MR. POWER:**  Yeah.  It's an IT company that's been sort
20 of the intermediary in London.  They're going to just transfer
21 it directly to Aon, which is a technology company that's been
22 authorized by the court in the U.K.  That company will then
23 gather the data and share it with Temur's counsel before it's
24 even produced into the evidence in the court.  So it's as if
25 they're standing in Temur's shoes.

1       So, yes, they have the e-mail address.  Aon has reached
2  out to Google and they're ready to accept it in the manner in
3  which the judge ordered that it be transferred.
4       **THE COURT:**  All right.  This is all according to what
5  the United Kingdom judge has ordered; is that right?
6       **MR. POWER:**  That's correct, Your Honor.
7       **THE COURT:**  Okay.  All right.
8       Okay.  Ms. Schwartz, you will have those files into
9  counsel's hands -- the subpoenaing party's hands I'll just say
10 by 5:00 p.m. California time tomorrow.
11      Now, how do you two want to approach the other, you know,
12 issues that may be of concern in the order?  Do you want to do
13 additional briefing?  What would you like to do?
14      Let me start with you, Ms. Schwartz.
15      **MS. SCHWARTZ:**  Thank you, Your Honor.
16      First of all, I have not spoken with my client yet about
17 the production deadline.  Would it be possible to get until the
18 end of the week because -- or at least two days because at this
19 time their trial is not expected to end until the end of the
20 month, and it seems reasonable to give me at least an extra day
21 to be able to --
22      **THE COURT:**  Oh.  I thought I got a document saying it
23 was ending next week.  Is that not right?
24      **MR. POWER:**  I believe that's still the case.
25      Judge, I don't see any reason for delay.  I mean, we'd ask

```
 1  that it be produced tomorrow.  Obviously if Google comes back
 2  and says for whatever reason they absolutely could not
 3  hit/press "Send" to send the information, then that's a
 4  different story and then I guess we can carry it over till
 5  Friday; but we certainly -- the folks in the U.K. are expecting
 6  this information and want to use it as soon as practical --
 7          THE COURT:  Okay.
 8          MR. POWER:  -- because it has to be reviewed.
 9  Remember, it also has to be reviewed by Temur's counsel.
10          THE COURT:  Oh, listen, there's nothing worse than a
11  big data drop in the middle of a trial.
12          MR. POWER:  Yeah.
13          THE COURT:  I mean, I have been there on both ends,
14  litigants -- or lawyer and judge.
15          MR. POWER:  With respect to -- Judge, with respect
16  to -- may I just -- with respect to the other portions and the
17  review --
18          THE COURT:  Just one moment.
19     So you both advised me, this is a joint statement, Docket
20  Number 37, that the case is going to close, you know, starting
21  around December 15th.
22     So it's December 9th, Ms. Schwartz.  There's no time to
23  wait.  So you get that done by 5:00 o'clock tomorrow.
24          MS. SCHWARTZ:  Okay, Your Honor.
25     With respect to the second question you asked me, at the
```

1  last hearing counsel agreed that there's no reason not to make
2  this incredibly limited to this current order and that there
3  should not be any waiver of Google's right to raise these
4  arguments in the future.
5      Again, I want to reiterate, this isn't about --
6      **THE COURT:** There's no question about that. Don't
7  worry about that.
8      **MS. SCHWARTZ:** Okay.
9      **THE COURT:** This is not -- I have the sense that you
10 think that a Titanic-size vessel is about to sail out of the
11 harbor never more to turn around.  That's not -- we're just
12 talking about one subpoena in one case.  Okay?  No one is
13 walking away here with a mortal wound to any arguments that
14 they wish to raise tomorrow.  You could have the same thing
15 tomorrow and you're perfectly free to say whatever you want.
16 This is not tying Google's hands in any way outside of this one
17 production deadline.  That's all we're talking about.
18     **MS. SCHWARTZ:** Okay.  Thank you, Your Honor.
19     And we also want to make clear that any language in the
20 order about Google dictating the process or saying that only
21 its process is acceptable is not Google's position, and that is
22 not -- that should not be reflected in the order because that
23 is being quoted back to us already.  People are saying, "Hey,
24 Google" --
25     **THE COURT:** Oh, I'm not -- no, no.  I just ruled from

1  the bench.  There's not going to be any follow-up written
2  order.  So your order is from the bench produce those documents
3  in their entirety by 5:00 p.m. tomorrow.
4      Now, after that, we can work on -- if there's anything
5  else you'd like to discuss about the magistrate judge's order,
6  I'd be happy to take it up at that point.  We can do -- you can
7  propose whatever you'd like, Mr. Power can respond, and then I
8  will decide what to do.
9      But the immediate task is there is a literal clock ticking
10  in a trial in the United Kingdom and this is vital evidence by
11  everybody's estimation, and we cannot let the value of that
12  evidence evaporate because Google is worried about downstream
13  effects.  Google will handle those in an organized and
14  reasonable fashion after the court and the litigants in the
15  U.K. get their evidentiary needs satisfied.
16          **MS. SCHWARTZ:**  Okay.  Thank you, Your Honor.
17      Just to be clear for purposes of meeting and conferring,
18  our request would be that we meet and confer with counsel to
19  figure out how to approach this, whether we need to file
20  separate briefing or whether we can come to an agreement.
21      And separate and apart from that -- well, I suppose that's
22  really the request here --
23          **THE COURT:**  That's fine.
24          **MS. SCHWARTZ:**  -- that we be able to meet and confer.
25      And also I'd like to understand the legal grounds for

1  this.  Are you granting the -- or are you denying the motion to
2  quash based on the *de novo* standard or is it a different
3  standard?
4          **THE COURT:**  Either way, you lose so let's put it that
5  way.
6          **MS. SCHWARTZ:**  Okay.  Thank you.
7          **THE COURT:**  Okay.  We don't have to fine-tune that.
8  Listen, you know, I've written at some length on the review of
9  magistrate judge orders.  I don't think either of you cited it.
10 It's a case -- in fact, it was a DMCA subpoena.  It's called *In*
11 *Re DMCA Subpoena to Reddit*.  I don't believe either one of you
12 somehow picked it up, which is kind of surprising; but you will
13 see in there that I have -- and this is just a couple months
14 ago -- I have written at some length on what the appropriate
15 standard of review is in exactly this context, a motion to
16 quash a third-party subpoena.  Okay?
17     So we will work all that out later, but -- I was being a
18 bit glib a moment ago, but either under a *de novo* or clearly an
19 erroneous review, the production order stands.  Okay?  And
20 that's all we're talking about right now, just the production
21 order of these two files for this litigant.  That's it.  Okay?
22         **MS. SCHWARTZ:**  Okay.  Thank you, Your Honor.
23     So to confirm, we will meet and confer about amending the
24 order to appropriately reflect what Your Honor believes that
25 the holdings were.

1     **THE COURT:** I don't understand what that means. Let
2  me play it back. Okay?
3     **MS. SCHWARTZ:** Okay.
4     **THE COURT:** You're going to produce. Your objections
5  to the order of the magistrate judge are overruled.
6     And you have raised something else that I don't know what
7  it is, but you have raised concerns that, as you put it, things
8  might be over -- some language might be overbroad or something.
9  You tell me. I don't -- if there are still things you want to
10 talk about with respect to the magistrate judge's order, for
11 example, we put to rest the production issue but now you want
12 to say, "Well, maybe the magistrate judge shouldn't have said X
13 because that's going to be something that comes up in other
14 cases because it's phrased in a way that causes us concern as a
15 legal matter, not just as a business matter but as a legal
16 matter," that's fine. I'll take a look at that. We've got
17 plenty of time to do that and we'll do that, as I've said
18 several times, in a reasoned and organized fashion.
19    Now, we don't have to do that under the evidentiary gun
20 that the documents are subject to, but you two work that out.
21 Okay? So I don't have anything to do with that. You just tell
22 me what you'd like me to decide.
23    **MS. SCHWARTZ:** Okay.
24    **THE COURT:** And you two -- I think it's a very good
25 idea you get together with Mr. Power and you talk about what --

1  you don't have to agree.  You know, Ms. Schwartz, you just say
2  "I think these are the issues."  And, you know, Mr. Power is
3  not going to veto anything.  You can bring up anything you
4  want.  And Mr. Power might say, "Well, I have these two," and
5  then I might say "That's fine.  I'll just wait to see your
6  brief," or whatever.  But we have plenty of time to do it.
7  There's no rush on dealing with the other aspects of the order
8  and that's fine.  Okay?  But you two work that out.
9        **MS. SCHWARTZ:**  Okay.  Thank you, Your Honor.  I just
10 wanted to clarify.
11       **THE COURT:**  When I say "work it out," I don't mean --
12 just share it.  Just share it with each other, and then you can
13 decide what you want to do.
14     Now, the work-out part actually would be, okay, so, let's
15 say, Ms. Schwartz, you have this conversation, there are two
16 issues or whatever you want to raise.  Then you can talk about
17 a briefing schedule.  Any schedule you want is probably going
18 to be fine with me.  All right?  I don't -- we don't have to
19 get hung up on it.
20     So if you want to do it after the holidays or before,
21 whatever, it's up to you.  I mean, I can't guarantee I'm going
22 to decide before the holidays; but if you want to wait until
23 after the holidays before you do it, you want to do
24 simultaneous briefs, whatever you want to do should be just
25 fine for me.

1        **MS. SCHWARTZ:**  Okay.  Thank you, Your Honor.

2        **THE COURT:**  All right.

3        **MS. SCHWARTZ:**  I wanted to clarify just to make sure
4   that we're not waiving any rights with respect to -- given that
5   you're overruling the objection.  So we will meet and confer on
6   modifying the language of the order, and we will report back to
7   you.  Thank you very much.

8        **THE COURT:**  Yeah.  I mean, I feel like I said this
9   about eight times, but let me just in closing, you are not
10  waiving any rights to attack other portions of the order.
11  Okay?  All right.

12       **MS. SCHWARTZ:**  Thank you.

13       **THE COURT:**  That's the best I can formulate it.
14       All right.  Mr. Power, anything else?

15       **MS. SCHWARTZ:**  And just to be --

16       **THE COURT:**  I'm sorry?  What's that?

17       **MS. SCHWARTZ:**  Just to be very clear, that is
18  appreciated because this does impact Google's processes, and it
19  does think this is an important issue for user privacy and it
20  wants to be able to defend against requests where it does not
21  appear that lawful consent has been provided.

22       **THE COURT:**  Well, that's different.  In this case
23  lawful consent was provided.

24       **MS. SCHWARTZ:**  Right.  In other cases.

25       **THE COURT:**  Yes.  This is the kicker.

1    **MS. SCHWARTZ:**  Understanding that is your ruling in
2 this matter right now; however, we want to protect against
3 litigants throwing this in our face with language that does not
4 need to be part of the order.
5    **THE COURT:**  All right.  Anything else for today,
6 Mr. Power?
7    **MR. POWER:**  No, Your Honor.
8    **THE COURT:**  Okay.  Ms. Schwartz, anything else for
9 today?
10    **MS. SCHWARTZ:**  I think I'm good.  Thank you very much,
11 Your Honor.
12    **THE COURT:**  Okay.  All right.  Good luck.  I'm looking
13 forward to seeing how that comes out.
14    All right.  Thank you.
15    **MR. POWER:**  Thank you.
16    **MS. SCHWARTZ:**  Thank you.
17    **MR. POWER:**  Have a good day, Your Honor.
18        (Proceedings adjourned at 2:53 p.m.)
19              ---oOo---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Thursday, December 17, 2020

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter