# EXHIBIT G

Pages 1 – 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable VIRGINIA K. DeMARCHI, Magistrate Judge

```
IN RE APPLICATION OF        )
TATIANA AKHMEDOVA,          )   NO. 20-MC-80156 VKD
                            )
            APPLICANT.      )   TUESDAY, NOVEMBER 24, 2020
_____)
                                SAN JOSE, CALIFORNIA
```

**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**

**APPEARANCES:**

For Movant:            PERKINS COIE, LLP
                       3150 Porter Drive
                       Palo Alto, California 94304
                 **BY: JULIE E. SCHWARTZ, ESQUIRE**

For Applicant:         HOLLAND & KNIGHT LLP
                       31 West 52nd Street
                       New York, New York 10019
                 **BY: JAMES H. POWER, ESQUIRE**

**Reported By:**           Diane E. Skillman, CSR 4909, RPR, FCRR
                       Official Court Reporter

        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | <u>Tuesday, November 24, 2020</u>                    <u>10:00 a.m.</u> |

2                    P R O C E E D I N G S

3                         o0o

4          **THE CLERK:**  Counsel, if I can get you to turn your

5    videos back on.

6          **THE COURT:**  Good morning.

7          **MR. POWER:**  Good morning.

8          **MS. SCHWARTZ:**  Good morning, Your Honor.

9          **THE CLERK:**  Come to order.  United States District

10   Court is now in session.  The Honorable Virginia K. DeMarchi

11   presiding.

12      Calling the matter of In Re Application of Tatiana

13   Akhmedova, case Number 20-MC-80156.

14          **THE COURT:**  Good morning.  May I have appearances,

15   please, starting with the Movant people.

16          **MS. SCHWARTZ:**  This is Julie Schwartz for Movant

17   Google, LLC.

18          **THE COURT:**  Good morning.  And for the Applicant?

19          **MR. POWER:**  This is James Power, Holland & Knight for

20   Applicant Tatiana Akhmedova.

21          **THE COURT:**  Good morning to you as well.

22      We are here on Google's motion to quash the subpoena from

23   Ms. Akhmedova.  I do have -- I've read all the papers and I do

24   have questions for each party.  I'll let you make whatever

25   additional arguments you'd like, but let me start first with

1    some questions for Google.

2        So, with respect to the Court considering the issue,

3    Google says that two of the accounts, the ones --

4            **COURT REPORTER:**  Excuse me, Your Honor.  This is

5    Diane, the court reporter.  There seems to be some paper

6    rattling around your microphone.  Does anybody else hear that?

7            **MR. POWER:**  I do hear it, and it's not me.

8            **COURT REPORTER:**  I'm sorry, Your Honor.

9            **THE COURT:**  All right.  I'm not sure why that is.

10   Thank you for bringing that to my attention.  I will make an

11   adjustment here.

12                    (Pause in the proceedings.)

13           **THE COURT:**  Let me try that.  Is it still a problem,

14   Ms. Skillman?

15           **COURT REPORTER:**  I hear it, but maybe slow down so

16   that I can pick --

17           **THE COURT:**  I need paper.  I can't function without

18   paper.

19           **COURT REPORTER:**  No, no.  Just slowing down and maybe

20   I can decipher it easier.

21           **THE COURT:**  All right.  Very well.

22       Okay.  What I was trying to ask is, with respect to the

23   two accounts that are linked to the temur.akhmedov.net email

24   address and the other account linked to the

25   temur@stecapital.net that Google describes as having been

1    deleted and purged, does that mean that there is no possible

2    way for Google to obtain the contents of those accounts?

3         **MS. SCHWARTZ:**  That is correct, Your Honor.  The

4    accounts have been deleted and the only thing that remains is

5    what we have already produced to counsel.

6         **THE COURT:**  All right.

7    So even if Mr. Akhmedov were able to somehow use his

8    credentials to recover those accounts, they are not

9    recoverable?

10        **MS. SCHWARTZ:**  That's correct, Your Honor.  The

11   content of the account is not recoverable.  Only the other two

12   accounts have -- are active at this time.

13        **THE COURT:**  Okay.  Thank you.

14   So, for the papers, it appears to me that the parties are

15   framing this dispute as a question of whether the account

16   holder has satisfied the statutory requirement of lawful

17   consent to disclosure of the information, and it seems like

18   that question has two parts:  First, is the account holder, in

19   fact, Mr. Akhmedov, and, second, has he provided the express

20   consent that the statute requires.

21   So let me start with the first -- the first part.  Because

22   it does seem that Google is disputing or questioning whether

23   Mr. Akhmedov is, in fact, the holder of these accounts.  Let's

24   just speak about the two accounts at issue right now, the two

25   accounts that remain.

1    So apart from Mr. Akhmedov's inability or unwillingness to
2    follow Google's verified consent procedure, is Google aware of
3    any facts that suggest that the account belongs to someone
4    other than Temur Akhmedov?
5        **MS. SCHWARTZ:**  Your Honor, Google is not aware of any
6    facts of who is, in fact, the account holder and therein lies
7    the problem.  The only way that Google is able to verify
8    account ownership is by having the account holder log into the
9    account.  The reason for that is that Google does not verify
10   any information that is input into the system when registering
11   an account.
12       **THE COURT:**  Okay.
13   But my question is a little bit different, which is,
14   Google, at least, purports that it took the steps of notifying
15   the account holders of those accounts; that a request for
16   disclosure had been made.  Did it receive any information back
17   that would cause it to think that Temur Akhmedov is not, in
18   fact, the account holder?
19       **MS. SCHWARTZ:**  No, Your Honor.  With respect to the
20   specific question of notice, Google did not receive any
21   responses or any filed motions to quash, as Your Honor knows,
22   in response to the notifications that it sent.
23   With that said, there are reasons why notice, standing
24   alone, is not sufficient to show that there is no other
25   account holder.  Part of that can be that the notices can go

1    to spam, they can be treated as phishing emails, or it could

2    go unread.  So it is problematic from Google's perspective to

3    rely on notice standing alone as indicia of who is the account

4    holder.

5         **THE COURT:**  Okay.

6         So on this question, again, of who the account holder is,

7    it does seem to be that Google's argument is, essentially,

8    that the only way for it to know whether someone is, in fact,

9    the account holder is for that person to do what is necessary

10   for the account holder to recover the information from the

11   account themselves; is that correct?

12        **MS. SCHWARTZ:**  That is correct, Your Honor.  That is

13   part of Google's argument.

14        **THE COURT:**  Okay.  Right, but I'm just focusing on

15   who is the correct account holder.

16        And what I wanted to put a fine point on is, for the

17   purposes of this dispute, is Google taking the position that

18   it is entitled under the SCA to specify the nature and form of

19   consent that satisfies the lawful consent requirement of the

20   assessment?

21        **MS. SCHWARTZ:**  Google's position in this proceeding

22   is that, based on the language of the statute and the case

23   law, the Court has to look at the particular situation

24   presented to it, and here Google has its own system.  And in

25   that system it has 1.5 billion more and more account holders

1    for Gmail alone.

2        So looking at that situation, by the nature of its

3    business, Google needs to have some sort of authentication or

4    process where it can actually verify that this is the account

5    holder.

6        The reason being is, that without that, Google could

7    receive paper consents in any number of situations, including

8    foreign actions that could potentially give access to

9    sensitive information in the United States.  So it is very

10   important for Google to be able to have verification based on

11   access in order to allow access to that account.

12       So Google's position is not that it dictates necessarily

13   what lawful consent is; however, its position is that lawful

14   consent here should be consistent with Google's verification

15   process in light of the fact that it cannot verify account

16   ownership any other way.

17       **THE COURT:**  All right.

18       Turning to the question of the other part of consent,

19   whether it's express or, you know, leads to deceptive

20   (phonetic) or implicit, let's assume that the accounts are, in

21   fact, Temur Akhmedov's accounts, he is the account holder.  I

22   still understand Google to be arguing that his consent is not

23   express, it is somehow implicit of perspective.

24       I don't see that.  How does -- I mean, looking at the

25   mandate, what the English court calls the mandates, the

1   statements identifying the accounts, and looking at the

2   stipulation that you filed in this action, how does Google

3   argue that those are anything other than express consents?

4          **MS. SCHWARTZ:**  Thank you, Your Honor.

5       So this brings us to the *Negro* case, which is the

6   California Court of Appeal case that both parties have cited.

7       So, in *Negro*, the Court talked about the different types

8   of consent.  Lawful consent, standing alone, is not defined by

9   the statute, so there has had to be some analysis of what

10  exactly that means.  In *Negro*, the Court parsed out different

11  types of consent.  So, implied in law would be, for example, a

12  court declaring that an account holder consents without

13  anything more.  Express or actual consent in that case was

14  using Google's verified consent process.  And separately, the

15  Court doubted whether implied-in-fact consent could constitute

16  lawful consent.

17         **THE COURT:**  Let me pause you there.

18      I read that case.  Express consent was not defined as

19  using Google's consent process.  The express consent was

20  defined by looking at the content of the consent in the email

21  which said I consent to the disclosure of this information.

22      The Court was not focused on the process, but focused on

23  the content of the expression of consent.  So what is it about

24  the content, assuming you have no issue about who the account

25  holder is, what is it about the content of Mr. Akhmedov's

1    expression of consent that causes Google to think it is not

2    express consent, but is somehow implied as constructive?

3            **MS. SCHWARTZ:**  Yes.  So moving along to

4    implied-in-fact consent, the reason why Google is taking the

5    position that this is not express consent but rather is

6    implied is because there's no actual verification, again, of

7    who the account holder is.  That was not an issue --

8            **THE COURT:**  I am sorry.  I'm assuming we know the

9    account holder is Mr. Akhmedov.  I'm trying to isolate the one

10   issue.

11       We assume -- I agree you're not -- you are not agreeing

12   with me.  We're just assuming, for purposes of the argument,

13   that he is the account holder, and he has given the statements

14   in the mandate and he's given the stipulation in this

15   particular proceeding, both of which I read as expressions of

16   consent to disclosure.

17       So what am I missing that causes Google to think it is

18   somehow implied or constructive and, therefore --

19           **MS. SCHWARTZ:**  The consent would be implied from the

20   form and the statements themselves.  However, there are other

21   statements that cast doubt on the fact that he is, in fact,

22   the account holder.  Those are indicia of account ownership

23   that any regular account user would have --

24           **THE COURT:**  I'm sorry.  I don't mean to keep

25   interrupting you, but I'm not focusing on whether he's the

1    account holder or not.  I am assuming he is the account

2    holder.

3         What is not -- I understand Google is making two

4    arguments.  You can tell me that you are not making two

5    arguments.  Your only argument is he's not the account holder.

6    If he were, these are express consent statements.  Since you

7    have doubt he's the account holder, you can't rely on it.  If

8    that's your only argument, let me know.  But I understand your

9    argument is in two parts:  He's not the account holder or he

10   may not be the account holder, you can't tell, and his consent

11   is not expressed.

12        So we have to assume for purposes -- my purposes of this

13   argument that he is the account holder, what makes the

14   statement not express consent?

15            **MS. SCHWARTZ:**  Your Honor, express consent in this

16   context would be through the account.  And I think that that's

17   the distinction that we are making here.  Because Google's

18   position is that there cannot be express consent based on a

19   statement because there's no determination that he is the

20   account holder.

21        Your Honor is saying that if we assume he is the account

22   holder but Google cannot assume that, and that is the premise

23   of its argument.

24            **THE COURT:**  Okay.  I think it collapses into the same

25   thing.  So at least that's helpful.

1       All right.  Now I have a question about the non-content

2   production that I understand has already been made by Google.

3   And there's an argument in your papers that somehow the

4   application was that the non-context production might be

5   helpful in facilitating an expression of consent that Google

6   would find acceptable for its purposes.  But it's not clear to

7   me what information in a non-content production Google felt

8   would enable this process.

9       So can you show me what that is, what it is specifically

10  that Google believes is the secret sauce that makes this all

11  work?

12          **MS. SCHWARTZ:**  Absolutely, Your Honor.

13      This actually brings me to the focus of Google's argument

14  here today, which is that the Court need not decide the

15  sensitive SCA issue today.  The reason is, is that this can be

16  decided on the basic premise that non-party discovery should

17  not be taken until party discovery is completed.

18      So here we have indications in the record that

19  Mr. Akhmedov simply will not produce the data; not that he

20  cannot access it.  One of the ways that he could potentially

21  access the information if he is, in fact, the account holder

22  is by regaining access to the account using his phones.  Part

23  of the non-content production may be disclosure of phone

24  numbers that are recovery phone numbers.

25      Mr. Akhmedov claimed that he didn't even know what phone

1    numbers were associated with the accounts.  So part of the

2    non-content production was to see if there were any phone

3    numbers or emails that he could use to actually get access to

4    his accounts and not involve Google.

5              **THE COURT:**  Were there?

6              **MS. SCHWARTZ:**  Your Honor, that was for the other

7    party to review --

8              **THE COURT:**  You don't know.

9              **MS. SCHWARTZ:**  -- and determine.

10   I do not know standing here today.

11             **THE COURT:**  Okay.

12             **MS. SCHWARTZ:**  Yes, Your Honor.

13   The reason why this is important is because Google is

14   standing here today in the U.S. subject to a foreign

15   declaration that it does not even know, you know, what the

16   standards of proof are or anything like that.  And there are

17   sensitive issues about what constitutes lawful consent, issues

18   that may have an impact on Google's operations, issues that --

19   like I mentioned before, implicate whether Google will be

20   required going forward to rely on a paper consent from a

21   foreign court or from -- in any other number of legal process

22   that it receives.  And obviously Google receives a lot of

23   legal process.

24   But the Court does not need to touch that issue because

25   standing here today, Mr. Akhmedov has not demonstrated that he

1      has done all that he can to produce this information.

2          And in the solicitor's words, Applicant solicitors in the

3      English proceeding note that he has not even taken the most

4      basic step of regaining the SIM cards for his phone so he can

5      recover access to the account.

6          Granted, their trial is coming up on the 30th, but that is

7      not Google's making.  Google provided this information back in

8      August and said that if you even do a Section 1782 request, we

9      will require this verified consent.  This is a very important

10     operational point of Google's process.

11         And instead of having the Court in England, which is the

12     best suited to sanction Mr. Akhmedov if he doesn't comply, or

13     whatever sanctions are available such as issue preclusion,

14     they came to Google, again, although the process was

15     demonstrably in their own evidence not complete.  Google tried

16     to assist again with the subscriber information production.

17     They did not use that information to try to get access to the

18     account.  So, Your Honor --

19                      (Simultaneous colloquy.)

20         **THE COURT:**  -- records before the English court.  It

21     seems like there's been quite a bit of effort by the Applicant

22     to obtain this discovery in the English proceeding and, in

23     fact, the English court has said as a remedy, you must provide

24     consent for your information to be provided to Google.

25         And it will go to the independent forensic examiner, or

1    whatever that entity does, and that's the remedy the English

2    court has already ordered.  So it seems to me Google is in

3    quite a different position from those cases where, as a

4    non-party, it's seen asked to produce discovery that could

5    have been easily obtained from the parties of the proceedings.

6    It is quite a different scenario.

7        And I do want to be clear about your argument here.  I

8    read your papers to be very explicitly saying that Google does

9    not say that if an exception to the SCA prohibition on

10   production applies, it is free to disregard a subpoena.

11       I just want to be very clear about that; Google is not

12   saying that it has the option, the discretion to simply

13   disregard a subpoena if you apply for it to the Court if the

14   prohibition nondisclosure is subject to it.

15       Have I got Google's position correct?

16           **MS. SCHWARTZ:**  I would like to clarify that position.

17       That position is with respect to whether the disclosure is

18   voluntary if the Court finds an exception applies.

19       However, of course, a subpoena is subject to all sorts of

20   objections.  And those objections need to be litigated before

21   a provider can be compelled to provide discovery.  So, for

22   example, if there were privileged information in an account,

23   that something like that would not be waived.

24           **THE COURT:**  Right.  Of course.  So I'm --

25                       (Zoom froze.)

1          **COURT REPORTER:**  Your Honor --

2          **THE COURT:**  -- you've made a couple of other

3    objections outside of the SCA context.

4          **MS. SCHWARTZ:**  Yes.

5          **THE COURT:**  Assuming it is valid, your papers were

6    very careful to say that although the argument is open to you

7    to say that the SCA describes a service provider's obligations

8    in permissive and discretionary terms, Google is not, in fact,

9    taking that position.

10         **MS. SCHWARTZ:**  Google is not taking that position.

11   However, it is taking the position that the discovery must be

12   sought from Mr. Akhmedov first in the English proceeding.  And

13   it also has other objections such as relevance and overbreadth

14   and undue burden that it is not waiving.

15      However, it is not taking that particular position on the

16   construction of the statute standing here today.

17         **THE COURT:**  Let's get to those additional objections.

18   Because as I read the papers -- it wasn't entirely clear what

19   objections you were making because one of them is in a

20   footnote in the opening motion and in the reply brief, which,

21   you know, generally doesn't really rise to the level of an

22   objection in my book, but let's see.

23      So, putting aside the point that one should not unduly

24   burden a non-party with discovery that could be obtained from

25   the party, you have two footnote 5s:  One in the motion, one

1    in the reply brief that say, oh, the subpoena is overbroad.

2       Okay.  So if the subpoena were narrowed, hypothetically it

3    were narrowed to identify particular assessments of categories

4    of information, does not not require Google to actually go and

5    review the account and take all -- under all kinds of

6    burdensome analysis as opposed to simply saying, here's the

7    entirety of the contents of the account, you go and figure out

8    what's relevant and what's not.

9       **MS. SCHWARTZ:**  There is case law out there that says

10   a provider should not be forced to sift through evidence and

11   figure out what's relevant and what is not.  That's absolutely

12   correct, Your Honor.

13      However, what we were saying here is, that the request was

14   unbounded by time limit, or type, or anything like that.  And

15   we did a non-content header production from accounts, and for

16   that reason, they could have been able to go through and see

17   if there was even any email exchanges that looked like they

18   wanted, for example.  However, they did not narrow any request

19   or review the production as far as we know in any substantive

20   way.

21      **THE COURT:**  All right.

22      In terms of the other objections that are made, are there

23   any other objections apart from the ones that are in

24   Footnote 5 and the ones that -- they are in your SCA

25   discussions that has to do with the question of not taking

1  discovery from the non-party and parties -- are there any

2  other objections apart from the preservation order that Google

3  is relying on?

4      **MS. SCHWARTZ:**  Your Honor, this is essentially an

5  undue burden argument.  And it relates very much to the

6  non-party discovery points.

7      And we would just emphasize that Google is a company here

8  in California.  It receives much legal process, obviously huge

9  volume of legal process.  It has to have operationally a way

10  to verify that people consent to the production of their

11  accounts.

12      The Storage Communications Act is obviously a very serious

13  law.  It has basically set forth Fourth Amendment protections

14  to emails, and the purpose is to prevent unauthorized

15  disclosures.  If Google produces emails without authorization,

16  it could be subject to a civil action.  And it would have the

17  burden of defending itself.

18      If the Court holds today that a subscriber or an account

19  holder can simply throw up their hands and come back to Google

20  and say, I want production of this, here's a paper, that would

21  change the playing field for Google potentially, and it would

22  require it to rely on the representations of people that

23  perhaps aren't as obvious as Mr. Akhmedov in Mr. Akhmedov's

24  arguments.

25      And Google does not concede that it is, in fact, his

1   account.  But at the same time, he is in an English

2   proceedings, he has signed mandates that are not from the U.S.

3   courts.  The English court has said come to Google, but the

4   English court is in the best position to say, Mr. Akhmedov,

5   get the SIM cards.

6       And the SIM cards are the best way to actually recover

7   access to the accounts and he can get it himself.  And we are

8   sitting here on the eve of trial; but at the same time, this

9   is about money judgments, this trial can be continued and

10  these efforts can be exhausted.

11      However, the Storage Communications Act is a United States

12  law that applies to Google, and there's no reason to even

13  interpret it here today because these efforts have not been

14  exhausted.  And they need to be exhausted because this has

15  broader implications potentially than just this case standing

16  here today.

17      **THE COURT:**  Is there any burden on Google that you

18  see in the material apart from its concern that it may be

19  subject to civil liability if, in fact, Mr. Akhmedov is not

20  consenting to the production of his accounts?

21      **MS. SCHWARTZ:**  Google's position is, it is an undue

22  burden as a matter of law, which is what's set forth in the

23  cases regarding non-party discovery.

24      **THE COURT:**  Apart from the actual effort that needs

25  to be taken, there's nothing in your papers that describes

1    that it would be a difficult process, or it would take along

2    time -- you are not arguing burden in that sense.

3          **MS. SCHWARTZ:**  Google is not arguing burden in that

4    sense.  However, looking at this more broadly, if Google is

5    subject to subpoenas with consent forms that could increase

6    operational burden.

7          **THE COURT:**  I appreciate that.  It does seem the case

8    law is quite fact specific in the circumstances in which

9    authorization consent is found and situations in which it is

10   not.  And it strikes me as -- I can see why Google would be

11   concerned and it is to Google's credit to want to comply

12   exactly with the SCA; that the burden that you are describing

13   in this case it would appear unlikely.

14      Are you -- is Google concerned about civil liability from

15   Mr. Akhmedov?

16         **MS. SCHWARTZ:**  Google is concerned about civil

17   liability generally, but also protecting access to accounts

18   and unauthorized disclosures.

19      So Google cannot rely on representation unless it actually

20   has access.  Whether or not they could ultimately be liable is

21   a separate issue from whether the Court can order discovery

22   that may violate the law.

23      So, Google takes the position that this does not

24   constitute lawful consent and that it should not be ordered

25   regardless of what happens down the road.

1        **THE COURT:**  All right.  Thank you very much.  I think

2   I understand your arguments on those matters.

3        Just a quick question on the preservation obligations.  In

4   some places Google is asking to support limit obligations to

5   produce -- preserve evidence to four accounts and not anything

6   broader than that because it would just be too difficult for

7   Google to figure out what it is, that seems to be an argument

8   that's well taken.  It doesn't sound like it would be -- I

9   will ask Mr. Power about his view, but is there particular

10  language that Google's asking for with respect to that?

11       **MS. SCHWARTZ:**  Your Honor, given that we have

12  produced on the two accounts that do not have content, we'd

13  ask they be excluded from any preservation order.  And for the

14  remaining two, depending on the outcome of this, Google had

15  requested the preservation just be limited to whatever Google

16  has in the accounts at this time.

17       **THE COURT:**  Okay.

18       There's no particular language that you're asking -- the

19  way it is currently written is, it says... let me find it

20  here.

21                    (Pause in the proceedings.)

22       **MS. SCHWARTZ:**  We would ask it be narrowed to the

23  preservation of the two accounts that remain at issue, and

24  that the obligation expires once the -- once any production

25  has been made should that happen.

1          **THE COURT:**  So right now it says, preserve documents,

2      information and evidence, electronic or otherwise, in its

3      possession, custody or control that contain information

4      potentially relevant to the subject matter of Ms. Akhmedova's

5      request.

6          So if I limit that to in possession, custody or control...

7      limited to the contents of the four accounts specifically

8      identified in the subpoena to say now limit it to the contents

9      of the two accounts that are specifically identified in the

10     subpoena that still exists and you're asking for an expiration

11     date.

12          **MS. SCHWARTZ:**  Yes, Your Honor.

13          **THE COURT:**  Okay.

14          So none of that was in the papers, but let me raise that

15     with Mr. Power and get the Applicant's view on that as well.

16          Is there anything else you would like to add?

17          **MS. SCHWARTZ:**  Yes, Your Honor.

18          I wanted to point out that in *Negro*, it specifically says

19     that implied-in-fact content -- consent is problematic because

20     it increases operational burden on providers.  They need

21     express consent because they can look at something, verify it,

22     and be done with it.  That's why they doubted that

23     implied-in-fact or implied-in-law consent could be valid.

24          Here, what's happening is Google is being forced to look

25     at all of the evidence and figure out whether this person is,

1   in fact, the account holder.  That is essentially

2   implied-in-fact consent, and that puts Google in a position

3   that it has to look, as Your Honor noted, fact specifically at

4   each declaration that it receives or each situation that it

5   has.

6        Operationally speaking, the safest, most efficient way is

7   to have account verification through Google's account.  And in

8   this situation, it's necessary given Mr. Akhmedov's pattern of

9   lying and dishonesty and fraud and deceit, anybody could be

10  the account holder.  Anybody.  And anybody who has a gmail

11  account would want more for that.  They would want some sort

12  of verification through account recovery that this is the

13  account holder.

14       I wouldn't want somebody with my name sending an email and

15  saying I'm the account holder even if it were under penalty of

16  perjury.  I wouldn't want that at all.

17       But, Your Honor, I urge you, we do not have to get to this

18  issue, we do not have to get to the Stored Communications Act

19  at this time.  There is time for the English court, who is

20  apparently accepting motions by email -- requests by email to

21  just continue the trial and see if this can get resolved

22  through account recovery.

23       This is an English proceeding, an English dispute.  It is

24  very important for them to handle it and not to implicate

25  Google, a company sitting here in California in the United

1    States that is subject to these laws and should not be

2    required to take on any slight amount of SCA liability just

3    because somebody represents they are the account holder and

4    does not take the steps to prove it.  Google should be

5    entitled to that.

6         **THE COURT:**  That's an interesting argument given that

7    the statute doesn't take into account at all Google's

8    operation specifically or any other service provider's

9    operation specifically.  All the statute requires is lawful

10   consent.  It doesn't say lawful consent as dictated by the

11   service provider in the form that the service provider thinks

12   is best for its business.

13        And I do have to keep in mind also, not only the

14   requirements of the SCA, but the requirements of 28 U.S.C.

15   1782, which is also an important policy to this country.  It

16   memorializes an important policy of this country.  And I have

17   quite a different view of what's happening in the industry

18   based on the record --

19                         (Zoom froze.)

20        **COURT REPORTER:**  I'm sorry --

21        **THE COURT:**  So I do appreciate the concerns, and,

22   again, I do think it is very much to Google's credit that it

23   is careful about these issues.  But if Google had any --

24   anything at all apart from the facts that its particular

25   process had not been complied with to suggest that these

1    accounts belong to someone else, I would take that very, very

2    seriously, but I don't have anything in the record that

3    suggests that.

4           **MS. SCHWARTZ:**  Yes, Your Honor.

5           **THE COURT:**  So I really -- that's why I was focusing

6    so intently on that issue.

7           **MS. SCHWARTZ:**  Yes, Your Honor.

8       Section 1782 also says the discovery must be conducted in

9    accordance with the federal rules.  Here the federal rules

10   require that discovery be directed to parties and not

11   non-parties first.  So I realize that we are being circular

12   here --

13          **THE COURT:**  Yes, we are.  I do appreciate that point.

14      Let me -- let me give Mr. Power --

15          **MS. SCHWARTZ:**  One final comment, Your Honor.

16      If Your Honor is inclined to grant this, we would

17   appreciate it if this is limited to the very specific facts of

18   the case because, as mentioned, this has a broader impact and

19   Google still requires verification of accounts.

20          **THE COURT:**  I don't generally make my orders so broad

21   to sweep in, you know, everything that's not before me, but I

22   do appreciate the point, and I thank you for that remark as

23   well.

24      Okay.  Let me turn to Mr. Power.  First, I just want to

25   question the accounts.  So, you know, I know how Google makes

1    the order narrow or at least the resolution of the motion to

2    quash express some limitation that the only accounts at issue

3    are the two that have not been disputed.

4         Does the Applicant concur in that narrowing --

5             **MR. POWER:**  Yeah --

6             **THE COURT:**  -- or --

7                     (Simultaneous colloquy.)

8             **MR. POWER:**  Yes, Your Honor.  And may I -- I'll tell

9    you why.

10        We had included those two email addresses along -- there's

11   four email addresses that we expressly stated.  Two are -- we

12   concede are -- I guess were shut down.

13        In my declaration, which was -- attached to my declaration

14   in the opposition to the motion to quash, and I will point to

15   it as an exhibit, document 21-1.  These are the disclosure

16   statements made to the English court.  They are dated 31

17   July 2020 by Mr. -- Temur, the son, Ms. Akhmedova's son,

18   Temur.

19        He specifically states, and that's on page 4 of 4, and

20   this is why -- it also goes to the ownership.  There is no

21   absolutely no question these are his accounts.

22        So, he says -- and it's the bottom of the page, he says,

23   in addition to the documents listed on that continuation

24   sheet, I have also had access to documents in the following

25   accounts, which documents I am no longer able to access by

reason that I no longer have access to those email accounts as

they have been closed.  And he references the

temur@akhmedov.net, temur@stecapital.

    This is important because this is even before Google

notified us that the accounts had been closed and purged.

Here, you have Temur disclosing the accounts and having inside

special information, knowledge that they had been closed.  In

other words, corroborating evidence, one, that he knew of

these accounts, he used them and he knew they were closed, and

then later after the subpoena, Google came to us and said,

yes, these accounts are, in fact, closed.

    So we do -- Google has verified the very statements of

Mr. Akhmedov that these accounts are closed, and we accept

that.

    It's news to me that they are purged.  I don't really know

what that means.  I'm not a technical guy.  So, I mean, if

they are purged and Google is making a representation that

they can't access, we are happy to move on to the other two

accounts.

            **THE COURT:**  Okay.

            **MR. POWER:**  So both Temur and Google are

independently confirming those are his accounts and they have

been closed.

            **THE COURT:**  Okay.

    And what -- you mentioned with respect to the khyshen --

1    the khyshen@gmail.com accounts that there were, in fact,

2    communications from that account to Ms. Akhmedova.

3           **MR. POWER:**  Yes, Your Honor.

4           **THE COURT:**  And I believe you also mentioned that

5    there are native copies of emails from some but not all of the

6    accounts connected to.  And I am wondering if you could

7    describe for the Court when the accounts -- I'm sorry, when

8    the emails to Ms. Akhmedov (sic) were sent from the khyshen

9    account --

10          **MR. POWER:**  Sure.

11          **THE COURT:**  -- and also what the significance, in

12   your view, is of the native copies of emails received in

13   Mr. Akhmedov's possession.

14          **MR. POWER:**  Sure.

15      Let me start by -- the khyshen email address.  It has been

16   known for some time amongst all the folks that have been

17   dealing with Temur over the last several years that this is

18   the account that he has used personally to conduct business,

19   to communicate with his mother, to communicate with third

20   parties, to communicate with lawyers.

21      We have another case going on, it's another 1782 in the

22   U.S.  We have another action going on in the Marshall Islands

23   where we got information from the flag state.  It's a --

24          **THE COURT:**  A what?

25          **MR. POWER:**  Flag state.  Governmental entity that

1   registers a big yacht.  This is a large yacht that Temur is

2   associated with.

3       So independently, Temur has been emailing this government

4   agency, which I've seen personally.  I've got the documents in

5   my own possession.  Khyshen, which is from Temur,

6   communicating for the purposes of independently dealing with

7   this yacht, should it be registered, where should we move it.

8       So we have irrefutable evidence that over a long period of

9   time, dealing with numerous third parties that Khyshen is

10  precisely linked with Temur.  There is no evidence -- we asked

11  and they said they don't have any evidence.  There is no

12  evidence that this is not his accounts.  It is pure

13  speculation.

14      Certainly it would be a futile exercise for us to go

15  spending all this time and effort going through this long

16  elongated English process, exhausting all remedies there, only

17  to go searching for emails that we didn't believe were his.

18  It makes no sense.  We wouldn't do it.  It's not happening

19  here.

20      In terms of the other email, let me go for both the native

21  format, in London, again, exhausting all the remedies that

22  they possibly could before having to reach this effort in the

23  United States to get the information directly from Google,

24  Temur himself made these disclosures.  I mean, he identified

25  these accounts.  He told the Court I have native formats with

his lawyers.

     In other words, he was communicating with his lawyers in London.  When you communicate, they had the ability to get native format.  In other words, actual metadata that just was his as opposed to just hard copy, a printout of an email you know, that somebody can use some whiteout and use a Xerox machine and make fraudulent copies.

     Again, it's absolute irrefutable evidence supported in London that these were his email addresses, which is why the Court, again, was so willing and desirable for us to pursue this option in the United States as a last resort because nothing -- they were unable to get these emails in London after having, as a matter of law, in London establishing these were his accounts.

     So it's not really for Google to second-guess a full Court proceeding in London establishing that it's his account. Google doesn't say --

          THE COURT:  Let me stop you there.

     Has the English court made specific findings regarding Temur Akhmedov's email accounts?  In other words --

          MR. POWER:  The English --

          THE COURT:  I see there is the disclosure statements where he makes the representation in response to the Court order requiring him to do so, but has the English court otherwise made findings based on those representations?

1            **MR. POWER:**  Well, I mean, I don't know if they had a

2     specific evidentiary hearing, but I think as part of this

3     procedure he disclosed it, he stipulated to it.  He offered

4     evidence to the Court that his lawyers had these independent

5     communications with Temur through email addresses.

6            There is evidence before the Court that he was

7     communicating with his mom.  You know, hey, mom, here's my

8     email.  I'm going to send you, you know, whatever, you know,

9     dust off his bank, you know, his banking relationships were

10    communicated through with these emails.  That would hardly

11    suggest that it's not him.  Emails with his father.  So these

12    are all presented to the Court.

13           I would say the Court did -- certainly made an implicit

14    finding that these were his by saying, yes, as part of the

15    1782 request and the email that was provided by the Court

16    saying, yes, we definitely welcome these email addresses,

17    information associated with these email addresses.  I can't

18    believe --

19            **THE COURT:**  I'm particularly looking at the order

20    that's attached to the papers at document 21-3.  This is the

21    Court's order.  I'm not entirely sure what the date is because

22    it seems to be missing the date.

23           But it's at pages-- it starts at page 6.  It is ordered

24    that:  Paragraph 17 says, the Tenth Respondent, Mr. Akhmedov,

25    shall forthwith withdraw his Motion to Intervene, that is

1    Motion to Intervene before this Court, and provide express

2    written consent to the grant of the relief sought in the 1782

3    application with some qualifications.

4         **MR. POWER:**  Yeah.

5         **THE COURT:**  So that he can limit it to a particular

6    date, which gets to one of the points Ms. Schwartz made.  My

7    question is, this order seems to have been based on the letter

8    to the Court from the Applicant -- from the Applicant in the

9    English proceeding complaining about Mr. Akhmedov's failure to

10   comply with prior court orders that relate specifically to

11   these email accounts.  I'm trying to connect the dots on that

12   point.

13        **MR. POWER:**  Well, certainly -- obviously there was an

14   ongoing effort for some time.  We knew who was -- I mean, our

15   counsel in London gathered evidence, including from his mother

16   and from his father and from the lawyers who produced these

17   emails with Temur, right?  There was an independent production

18   of some emails with khyshen and Temur Akhmedov 1993 from third

19   parties.  That's how obviously these emails were identified

20   and associated.

21       They had then gone to Temur -- Temur, look, you need to

22   produce these.  He said, okay, well, let me try and produce

23   them.  There were -- you know, all the reasons why he couldn't

24   produce them, you know, whether he didn't have SIM cards, no

25   longer the phones, every reason possible that he was no longer

1   able to access this.

2        Now, we take that -- that's the representation he made

3   under oath to the Court.  The Court then said, okay, well,

4   since you can't do this, what -- you know -- we were

5   complaining because we said he's not producing it.

6        And then in response, he said, I'm not producing it not

7   because I don't want to produce it, because it's technically

8   and physically impossible for me to access these accounts.

9   And that is what the Court -- that is what was litigated in

10  London.  There was a finding by the Court that he can't access

11  these accounts or that -- you know, there was no way to prove

12  a negative.

13        We asked Google -- I mean, this is -- I need to get back

14  to something.  We have been trying to work with Google.  We

15  asked Google, look, if you have any evidence that anybody

16  accessed these accounts, let us know.  Google said, no, we

17  have no evidence that they accessed the account.  So there's

18  no evidence that anyone responded to Google's emails.

19        So all of the records that we have asked Google to say,

20  look, it's hard for us to prove something that we don't know;

21  all we can say is, the representation in the findings that

22  have been made in London that he cannot access these accounts

23  though he has given express consent for us to go to Google to

24  get these accounts.  And that's what we're doing.

25        So I think we have exhausted every single remedy available

1    in London.  To merely say we are going to sanction him doesn't

2    get us the emails.  I don't think that's the only relief we

3    are entitled to.  We are entitled to the relief by his express

4    consent to get -- to act as -- it's him.  Remember, it's as if

5    he's going into this account and Google is pressing a button,

6    which we have already confirmed from Google -- I mean, there's

7    no burden whatsoever there.

8        It's as if a person goes into the account and accesses it

9    himself.  He's given the explanation why he can't.  The Court

10   has accepted that in the foreign jurisdiction, and now we are

11   coming here to seek these records.

12       So to answer your question, I think, to go full circle is,

13   yes, there was certainly evidence presented to the Court and

14   consideration done by the English Judge that these are his

15   accounts and there is an explanation of why he can't access

16   them and, therefore, authorizing us to proceed to come to the

17   United States to get them with his express consent to get

18   these documents through the only left -- the only means left

19   to do so.

20           THE COURT:  You were perceiving what is the role of

21   Aon, independent forensic examiner --

22           MR. POWER:  Yeah --

23           THE COURT:  -- with respect to the material that

24   would be produced from the subpoena.

25           MR. POWER:  Yeah.  I mean, again, you know, a lot of

1    this stuff is looked at in the first instance.  It was --

2    because it's as if -- because this order is structured as if

3    Temur is actually getting the documents.  Aon is essentially

4    stepping in the shoes of Temur; we're not getting them

5    directly.  The English counsel isn't getting them directly.

6    It's as if Temur -- it replaced Aon for Temur.

7        It goes from Google to Aon, and then from Aon to Temur's

8    counsel to review, and then Temur's counsel.  Then, if there's

9    any privileged information or what have you, then it gets

10   disclosed to the Court and to English counsel for Tatiana.

11       So Aon is a technical adviser.  The Court ordered --

12   again, in terms of trying to cross every "T" and dot every "I"

13   in London, the Court appointed Aon as a technical adviser to

14   actually work with Temur.  And they worked -- they were trying

15   to collaborate, working together to try and access the

16   accounts.

17       Aon was on the phone with Google's help center in Santa

18   Clara, California, or wherever it is.  And, you know, they

19   were all working together to try to achieve this.  And because

20   they are missing critical information, whether it's technical

21   SIM cards, whether it's knowledge of phone numbers, or other

22   email addresses where they might send a password to or no

23   longer active, you know, Aon basically confirmed, yeah,

24   there's no way to access this anymore.

25       And that's what Temur says, that's what the Court found.

1    We can argue all day long whether he's got a SIM card hidden

2    under his bed or not; that doesn't change the facts --

3              THE COURT:  Let me just ask, will -- is part of Aon's

4    responsibility to make an assessment about whether the

5    contents of the accounts being produced are, in fact, Temur

6    Akhmedov's or whether there are indicia that they are, in

7    fact, the accounts of someone else?

8              MR. POWER:  The answer to that is, there's no need to

9    do that because there's no issue that they are not his

10   accounts.  In other words, the only person who's saying they

11   are not his accounts is Google without having any evidence

12   that they are not his accounts.

13             THE COURT:  Okay.  I got it.

14                    (Simultaneous colloquy.)

15             THE COURT:  Aon's mandate is from the English court.

16   They collect the information and they simply give it to --

17             MR. POWER:  Temur's counsel.

18             THE COURT:  Temur's counsel.

19             MR. POWER:  Yes.

20             THE COURT:  And Temur's counsel does a review.

21             MR. POWER:  For any privileged information.

22      For example, there's emails -- we know there's emails

23   between Temur, the khyshen email, and his lawyers, because his

24   lawyers produced some.  So there might be others.  He may have

25   been emailing another lawyer.

1        Look, let them go through that process to make sure

2   there's nothing there.  We are not asking Google to do a

3   privilege search.  They dump it to the -- basically this is a

4   production of Google -- of the Google accounts to the

5   subscriber through Aon.  That's what this is.  That's how we

6   view it, that's how we structured it, that's how Google asked

7   us to do this.

8            **THE COURT:**  Okay.

9            **MR. POWER:**  Not counsel, counsel came in later, but

10   when we were talking with Google itself through Aon and

11   through sort of finding a practical solution to this.

12            **THE COURT:**  All right.

13       So let's -- if I may, I would like to ask you about this

14   preservation obligation which, you know Google says -- you

15   comment on in your opposition.  I assume you would concur that

16   their preservation obligation can be limited because they

17   requested in their papers four accounts and now there's an

18   additional request that the preservation obligation be limited

19   to just two accounts and that it permeates upon disclosure of

20   the contents of the accounts if that's what's ordered to Aon.

21       Is that all acceptable?

22            **MR. POWER:**  I have no problem with that.

23            **THE COURT:**  Thank you.

24       Is there anything else you would like to argue either in

25   response to what Ms. Schwartz argued or anything else?

1          **MR. POWER:**  Again, I think I want to state what we

2     believe is the obvious, that express consent has been given by

3     Temur.  I don't think you can get any more express than what's

4     been given.

5          I do agree with Google's position that they're basically

6     saying it can't be -- you cannot have consent unless it's

7     consent in which we say it is under our own rules.  I don't

8     think the Stored Communications Act creates -- allows Google

9     to create that unique requirement.

10         Now, look, of course I understand they want to protect

11    themselves.  We are 100 percent trying to work with them.  We

12    understood, we even put those -- if you look at the mandates,

13    we talked to Google.  They gave us the very language to

14    include in Temur's consent order.

15         So they would say, look, they are definitely worried about

16    not having an order from the Court.  I say, well, good.  We

17    will go to the Court, let the Court give you an order.

18    There's no reasonable person would think that if a United

19    States Court in the U.S. pursuant to an order and an express

20    consent said this is -- this is appropriate, Google, send the

21    documents, they have zero liability from Temur.

22         Now, are they saying that there's a .001 chance there

23    could be somebody in the world other than Temur that owns

24    these accounts?  I think that's purely speculation.  But,

25    however, I would be more than happy to say let's come up with

1    an order that covers Google's, you know, interest.

2         Let Google send an email out when they hit the button,

3    right?  If a Court were to issue an order, say that Google

4    should send another email out to these inactive accounts that

5    haven't been accessed and there's no evidence that they've

6    been accessed, just like Temur says, say, you know, we have

7    been ordered to produce these records, we are going to be

8    sending these right now in this document dump, if you have an

9    issue, you need to come to the Court and make an application

10   in five days.  You know, give the world one last chance.

11        We don't want Google to expose themselves any more than

12   they have to in this very case.  I don't care about all these

13   other people that want to sue Google.  We followed by

14   textbook; in this case, we ran down every option as suggested

15   by Google's own folks.  And so I think we stand firm that we

16   did everything there is to be able to access this in

17   accordance with the law and to, you know, consider the

18   interest of Google too.

19        You know, I think Google -- and, again, I get it.  They

20   want to say every case is going to be a burden.  This case is

21   not one.  I think if there is a limited order in this case,

22   they are free to argue all these things in every other case

23   without any form of waiver whatsoever.

24             **THE COURT:**  All right.  Thank you very much.

25        Anything else briefly you would like to say, Ms. Schwartz?

1          **MS. SCHWARTZ:**  Yes.

2          **THE COURT:**  I don't need you to repeat.

3          **MS. SCHWARTZ:**  Thank you, Your Honor.  I would like

4    to address the points that are made by counsel.

5          So, first of all, he talks about whether consent has been

6    demonstrated here.  Whether consent, which is an exception to

7    the SCA, has been demonstrated is a burden that is on the

8    person who is invoking the benefit of the exception.

9          If Google were sued, that would be Google.  However, here,

10   it is Applicant.  Applicant has the burden of showing there is

11   lawful consent.  All that is before the Court today is a

12   signed consent form and a stipulation withdrawing a Motion to

13   Intervene to the extent that it is opposing Google's

14   application.

15         Counsel talks about emails from his mom to his lawyers.

16   All of these things, all of these emails were before a foreign

17   court, a foreign court who reviewed it, made an adjudication,

18   and provided consents to this Court.  What this Court is

19   essentially doing is allowing the English court to supplant

20   its determination of the evidence if it orders that there is

21   lawful consent here.

22         However, there could be multiple situations.  For example,

23   a court in Russia saying, well, we looked at the account and

24   it looks like the account holder, so we are going to have them

25   sign consents and that can be express consent.  That cannot be

1    the case.  It cannot be the case that a foreign court can say

2    that this is the account holder, that no evidence is provided

3    to the Court in the United States, and Google is required to

4    take on any form of Stored Communications Act liability, even

5    a .01 chance, which counsel concedes that there very well may

6    be.  That is exactly why Google requires verification.

7         Your Honor, if this were, in fact, a court that is less

8    trustworthy or perhaps orders discovery based on facts that

9    this Court would not find sufficient, this could potentially

10   implicate accounts with sensitive information in this country.

11   This issue does not have to be met right now.  It does not

12   have to be addressed.

13        The Court can simply find that Temur Akhmedov can buy a

14   SIM card in the English proceeding, recover access to his

15   accounts, and produce his own data if they are, in fact, his

16   accounts.  There is no reason to interpret the Stored

17   Communications Act in a way that could potentially leave open

18   the possibility that foreign courts can make a determination

19   that the Court just adopts and rubber stamps here in the

20   United States.

21             **THE COURT:**  Is that what the Applicant is asking me

22   to do, rubber stamp?  You think the Applicant is asking me to

23   mandate by Mr. Akhmedov's exclusion that has been made --

24             **COURT REPORTER:**  Excuse me, Your Honor.  You need to

25   repeat what you said.

1           **THE COURT:**  You think the Applicant is asking me to

2     rubber stamp the finding in the English court?

3           **MS. SCHWARTZ:**  Yes, Your Honor.  He's citing evidence

4     that was solely before the English court.  And on that

5     evidence, he is saying there is lawful consent.  But that

6     court in England found that there was lawful consent based on

7     the emails that were sent between parties.  Those emails are

8     not before the Court.  The Court has not made that

9     determination.

10          **THE COURT:**  I'm focusing on the mandate, the things

11    that I have been asking about from the beginning are the

12    mandates.  Maybe they were initially prepared at the behest of

13    the English court, but the mandates are before me.

14          **MS. SCHWARTZ:**  I'm sorry, Your Honor, the mandates

15    are --

16          **THE COURT:**  The mandates are before me.  The mandates

17    are in the record before this Court.

18      I am not simply relying on a declaration of counsel that

19    says they exist.  They are before me.  No one has called them

20    into question.  In fact, Mr. Power now tells me that they

21    include language that was recommended by Google.

22      I do have the English court's orders directing that the

23    mandates be prepared, and I do have a stipulation before me.

24    So I don't think the Applicant is asking me to simply take the

25    English court's word for it.  This is not an Application for

1    discovery from the English court, which, of course, would be

2    inappropriate under 1782, it comes from the U.S. Government.

3    This is an application based on a party to the proceeding.

4    And it is based on written consent from another party to the

5    proceeding about what he claims are his accounts.

6        I don't have any information in the record that suggests

7    that any of that is not true.  So I'm just -- so I don't -- I

8    don't want to circle back around on these arguments a third

9    time.

10        On the record that's before me, I'm going to deny the

11    Motion to Quash to the extent it relates to production of

12    contents of the two email accounts that are still active.

13        I will grant the motion to modify the preservation order,

14    but what I'm not clear on is precisely the language Google is

15    advocating.  I would like to be really clear on that.  I know

16    how to write it so that it is limited to the two accounts, but

17    with respect to the timing, if you want me to just make it --

18    trigger a time of Google's completion of production to Aon, I

19    can do that, but if there needs to be a specific date, I need

20    to know what that is.

21        Is there a specific date?

22            **MS. SCHWARTZ:**  Thank you, Your Honor.  We would

23    welcome the opportunity to submit a proposed order if that

24    would be helpful that modifies the language.

25            **THE COURT:**  Yes.  You are welcome to do that.

1    I do intend to issue the order today.  So I would ask you

2    do that; confer with Mr. Power if you want to do this with

3    agreed language, confer with Mr. Power about it.  I'm trying

4    to avoid --

5                        (Zoom froze.)

6            **COURT REPORTER:**  Your Honor --

7            **THE COURT:**   -- for errors because we have already

8    had that before, but I will issue the order today.  So if you

9    would like to propose specific language, please try to get it

10   in.

11           **MS. SCHWARTZ:**  Thank you, Your Honor.

12    I realize we are done with argument, but I would like to

13   clarify that Google's language was in their consent form that

14   would be emailed through the accounts.  So it's disingenuous

15   to say that Google proposed it as a mandate.  And the mandate

16   is attached to a counsel declaration.

17           **THE COURT:**  Okay.  I appreciate that.

18    I do think that Mr. Power was simply saying the content of

19   the statement were what Google requested.  He's not suggesting

20   that you, Google, suggested that a mandate would be

21   sufficient.  Obviously, that was not Google's position.  And I

22   understand it's not Google's position.

23    Okay.  Thank you all for your briefing and for your

24   argument on this matter.  I appreciate your time, and I will

25   issue a written statement.  Thank you very much.

1          **MR. POWER:**  Thank you, Your Honor.

2          **MS. SCHWARTZ:**  Thank you.

3          **THE CLERK:**  Court is adjourned.

4

5          (Proceedings concluded at 10:57 a.m.)

6

7

8                    **CERTIFICATE OF REPORTER**

9          I, Diane E. Skillman, Official Reporter for the

10   United States Court, Northern District of California, hereby

11   certify that the foregoing is a correct transcript from the

12   record of proceedings in the above-entitled matter.

13

14                 *Diane E. Skillman*

15          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

16             Wednesday, December 9, 2020

17

18

19

20

21

22

23

24

25